

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INTERNATIONAL UNION OF PAINTERS AND          :          CIVIL ACTION
ALLIED TRADES DISTRICT COUNCIL NO. 21        :
HEALTH AND WELFARE FUND                      :          NO.
2980 Southampton-Byberry Road                :
Philadelphia, PA 19154                       :
                                             :
                                             :          20        629
              and                            :
                                             :
INTERNATIONAL UNION OF PAINTERS AND          :
ALLIED TRADES DISTRICT COUNCIL NO. 21        :
ANNUITY FUND                                 :
2980 Southampton-Byberry Road                :
Philadelphia, PA 19154                       :
                                             :
              and                            :
                                             :
INTERNATIONAL UNION OF PAINTERS AND          :
ALLIED TRADES DISTRICT COUNCIL NO. 21        :
JOB RECOVERY FUND                            :
2980 Southampton-Byberry Road                :
Philadelphia, PA 19154                       :
                                             :
              and                            :
                                             :
FINISHING TRADES INSTITUTE OF THE            :
MID-ATLANTIC REGION                          :
2980 Southampton-Byberry Road                :
Philadelphia, PA 19154                       :
                                             :
              and                            :
                                             :
INTERNATIONAL UNION OF PAINTERS AND          :
ALLIED TRADES DISTRICT COUNCIL NO. 21        :
INDUSTRY ADVANCEMENT FUND                    :
2980 Southampton-Byberry Road                :
Philadelphia, PA 19154                       :
                                             :
              and                            :
                                             :
INTERNATIONAL UNION OF PAINTERS AND          :
ALLIED TRADES DISTRICT COUNCIL NO. 21        :
VACATION FUND                                :

FILED
FEB 03 2020
KATE BARKMAN, Clerk
By_____Dep. Clerk

'FEB - 3 2020



2980 Southampton-Byberry Road                    :
Philadelphia, PA 19154                           :
                                                 :
        and                                      :
                                                 :
INTERNATIONAL UNION OF PAINTERS AND              :
ALLIED TRADES DISTRICT COUNCIL NO. 21            :
SCHOLARSHIP FUND                                 :
2980 Southampton-Byberry Road                    :
Philadelphia, PA 19154                           :
                                                 :
        and                                      :
                                                 :
INTERNATIONAL UNION OF PAINTERS AND              :
ALLIED TRADES DISTRICT COUNCIL NO. 21            :
JOB ORGANIZATION PROGRAM TRUST FUND              :
2980 Southampton-Byberry Road                    :
Philadelphia, PA 19154                           :
                                                 :
        and                                      :
                                                 :
JOSEPH ASHDALE,                                  :
in his official capacity as a Trustee of the     :
International Union of Painters and Allied Trades :
District Council No. 21 Health and Welfare Fund  :
2980 Southampton-Byberry Road                    :
Philadelphia, PA 19154                           :
                                                 :
        and                                      :
                                                 :
                                                 :
INTERNATIONAL UNION OF PAINTERS AND              :
ALLIED TRADES DISTRICT COUNCIL NO. 21            :
2980 Southampton-Byberry Road                    :
Philadelphia, PA 19154                           :
                                                 :
                Plaintiffs,                      :
                                                 :
        v.                                       :
                                                 :
BLUE COLLAR BUILDERS, LLC                        :
2310 Big Oak Road                                :
Langhorne, PA 19047                              :
                                                 :
                Defendant.                       :

## COMPLAINT

### The Parties

1. Plaintiffs International Union of Painters and Allied Trades ("IUPAT") District Council No. 21 ("DC21") Health and Welfare Fund, IUPAT DC21 Annuity Fund, IUPAT DC21 Job Recovery Fund, Finishing Trades Institute of the Mid-Atlantic Region, IUPAT DC21 Industry Advancement Fund, IUPAT DC21 Vacation Fund, IUPAT DC21 Scholarship Fund, and the IUPAT DC21 Job Organization Program Trust Fund (hereafter collectively, "Plaintiffs Funds") are employee benefit plans pursuant to Section 3(3) of the Employee Retirement Income Security Act (hereafter, "ERISA"), 29 U.S.C. Section §1002(3), with their principal office located at 2980 Southampton-Byberry Road, Philadelphia, PA 19154, within this judicial district. Plaintiff Funds are due and owing relief being sought from Blue Collar Builders, LLC as set forth below.

2. Plaintiff Joseph Ashdale, a trustee of Plaintiff Health and Welfare Fund, acts as a fiduciary on behalf of Plaintiff Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), for the purposes of collecting delinquent contributions, and brings this action in such capacity on behalf of all Plaintiff Funds having been so authorized by the Trustees of each of the Plaintiff Funds.

3. Plaintiff, International Union of Painters and Allied Trades District Council No. 21 (hereafter, "Plaintiff Union"), is an unincorporated labor organization within the meaning of Section 3(5) of the Labor Management Relations Act of 1947 (hereafter "LMRA"), as amended, 29 U.S.C. §185 with its principal office located at 2980 Southampton-Byberry Road, Philadelphia, PA 19154. Plaintiff Union brings this action in its capacity as collective bargaining agent for the covered employees of Defendant, Blue Collar Builders, LLC.

4.     Defendant, Blue Collar Builders, LLC, (hereinafter, "Defendant") is a limited liability company doing business at 2310 Big Oak Road, Langhorne, PA 19047.

5.     Defendant is engaged in interstate commerce within the meaning of Section 2(6) of the LMRA, as amended, 29 U.S.C. §152(6), and has employed members of Plaintiff Union pursuant to a collective bargaining agreement in the Commonwealth of Pennsylvania.

6.     Defendant is an Employer within the meaning of Section 2(2) of the National Labor Relations Act and Section 301 of the LMRA, as amended, 29 U.S.C. §§152(2) and 185, and Section 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§1002(5) and 1145.

### Jurisdiction & Venue

7.     Jurisdiction of the District Court is invoked pursuant to Section 301 of the LMRA, as amended, 29 U.S.C. §185, in that the Defendant is an employer within the meaning of the LMRA, and party to a collective bargaining agreement which forms the basis and substance of the matters at issue in this litigation; and 28 U.S.C. §1337, providing for original jurisdiction in civil actions that arise out of an Act of Congress regulating commerce.

8.     Jurisdiction of the District Court is invoked pursuant to the provisions of Section 502 and Section 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§1132 and 1145, in that Defendant is an employer as defined by ERISA. The Eastern District of Pennsylvania is the proper venue under ERISA section 502(e)(2), 29 U.S.C. §1132(e)(2), because the Plaintiff funds are administered in this judicial district.

### **Cause of Action**

**Defendant's Outstanding Obligations Owed to Plaintiffs Pursuant to Sections 502 and 515 of ERISA**

9.     Plaintiffs hereby incorporate the allegations of paragraphs 1 through 8, as if set forth fully herein.

10.    Plaintiff Union and Defendant are parties to a collective bargaining agreement(s), which requires that Defendant make certain contributions on a timely basis to Plaintiff Funds and remit certain payments to Plaintiff Union based upon the performance of covered work by its employees who are members of Plaintiff Union. A true and correct copy of the Collective Bargaining Agreement is attached hereto as Exhibit A.

11.    Defendant, like all other contributing employers to Plaintiff Funds, is required to submit monthly reports setting forth the hours worked by eligible employees covered under the collective bargaining agreement(s), and to timely remit contributions to Plaintiff Funds, at rates commensurate with those required under the collective bargaining agreement(s), for all hours worked. The collective bargaining agreement(s) further note that liquidated damages and interest shall be assessed to untimely and/or unpaid fringe benefit contributions until the employer cures its delinquency. A true and correct copy of the IUPAT District Council No. 21 Health and Welfare Fund Delinquency Policy by which assessments of interest and liquidated damages are governed is attached hereto as Exhibit B.

12.    Notwithstanding the obligations contained in said collective bargaining agreement(s), Defendant has failed to timely remit the required fringe benefit contributions. Defendant employed workers for whom it failed to timely remit required benefit contributions for the periods of November 2018 through January 2020. As a result of the Defendant's untimeliness in payment of the required benefit contributions owed to the Plaintiffs, a delinquency for the total amount of **$8,637.95**, which is inclusive of liquidated damages in the amount of $8,596.24 and interest in the amount of $41.71, remains owed to the Plaintiffs

13.     Further, in accordance with the collective bargaining agreement(s) with Plaintiff Union, Defendant is also required to submit to auditing of its books and records at reasonable intervals for the purpose of determining the accuracy of the contributions made by the Employer to the Plaintiff Funds. *See* Exhibit A, pages 26-27.

14.     On January 28, 2020, the Plaintiff Funds completed, through an independent auditor, an audit of Defendant's payroll records for the contribution periods of November 1, 2017 through December 31, 2019.

15.     As detected by the audit, Defendant employed workers for whom it failed to remit required benefit contributions for the abovementioned audit periods, which has resulted in an additional audit delinquency owed in the amount of **$70,304.90**, which includes audit principal due and owing in the amount of $55,886.54, liquidated damages in the amount of $11,177.31, interest accrued to present in the amount of $2,022.43, and the cost of audit in the amount of $1,219.62. A true and correct copy of the revised audit is attached hereto as Exhibit C.

16.     Defendant was notified of these respective delinquencies, but has failed, or refused, to make appropriate and timely payments as required.  True and correct copies of the Notices sent by Plaintiffs' Counsel, dated September 18, 2019 and November 12, 2019, are attached hereto as Exhibit D.

17.     These amounts may change as Defendant makes payments, partial payments and/or fails to make payments due as a result of additional or prior work performed, or additional delinquencies are uncovered, in accordance with the collective bargaining agreement(s).

18.     Plaintiffs are entitled to a provision permitting immediate registration in another District of any judgment entered in this action.

**WHEREFORE**, Plaintiffs request this Court to grant judgment against Defendant and in favor of Plaintiffs, and to award relief as follows:

        a.      Judgment in the amount of **$78,942.85**, or such other amounts as may be due and owing when this cause of action reaches judgment, as provided for by Section 502 of ERISA;

        b.      Reasonable counsel fees, interest to run at rate of 6%, and costs of suit, as provided for by Section 502 of ERISA;

        c.      Injunctive relief ordering Defendant to remit employer reports, contributions and other required payments in a timely fashion; and

        d.      Other relief as the Court deems just and proper.

Respectfully submitted,
**SPEAR WILDERMAN, P.C.**

BY:_____

MARTIN W. MILZ
SYRETTA J. MARTIN
230 South Broad Street, Suite 1400
Philadelphia, PA 19102
(215) 732-0101
Attorneys for Plaintiffs

Dated: February 3, 2020

# COLLECTIVE BARGAINING AGREEMENTS

Between

**District Council No. 21
International Union of Painters
and Allied Trades AFL-CIO-CLC**

and the

**Associated Master Painters and Decorators Inc. of Philadelphia and Vicinity**

and the

**Interior Finish Contractors Association of Delaware Valley**

and the

**Architectural Glass and Metal Association of Philadelphia and Vicinity**

and the

**P.D.C.A. of Northeast Pa.**

and the

**P.D.C.A. of Harrisburg**

and the

**Keystone Contractors Association**

and

**All Independent Employers and Associations**

**Starting, May 1, 2017 (Painters)
Starting, May 1, 2018 (Drywall, Glaziers & Upstate)**

**See Duration clause, Article 27, for EXPIRATION DATES**

1



# TABLE OF CONTENTS

| | | |
|---|---|---|
| Article | 1 | Recognition |
| Article | 2 | Union Security |
| Article | 3 | Check-off Administrative Dues |
| Article | 4 | Function of Management |
| Article | 5 | Contract Increases & Territories |
| Article | 6 | DC Representative |
| Article | 7 | General Work Conditions |
| Article | 8 | Picketing |
| Article | 9 | Subletting of Contract |
| Article | 10 | Preservation of Work |
| Article | 11 | Grievance & Arbitration |
| Article | 12 | Security of Funds |
| Article | 13 | Various Funds |
| Article | 14 | Pinpointing Funds |
| Article | 15 | Industry Advancement Funds |
| Article | 16 | DC #21 Apprenticeship |
| Article | 17 | State Safety Code Compliance |
| Article | 18 | Compensation Insurance Coverage Work Injury |
| Article | 19 | Acts, Relations, Rulings, Legal Jurisdiction |
| Article | 20 | Promotion for Better Journeypersons & Industries |
| Article | 21 | More Favorable Terms |
| Article | 22 | Drug & Alcohol Policy |
| Article | 23 | Specific Provisions & conditions For All Crafts by Zones, Painter, Wallcoverers Zone 1 & 5 |
| Article | 24 | Specific Provisions & conditions For All Crafts by Zones, Painters, Wallcoverers & Drywall Finishers Zones 2, 3 & 4 |
| Article | 25 | Specific Provisions & conditions For All Crafts by Zones Drywall Finishers, Zones 1 & 5 |
| Article | 26 | Specific Provisions & conditions For All Crafts by Zones Glaziers, Zones 1 through 6 with zones 2, 3 & 4 in a separate book |
| Exhibit A | | SIZE SCHEDULE |
| Article | 27 | Duration |

2

# Articles of Agreement

This Agreement is made and entered into this first (1ˢᵗ) day of May 1, 2017 between the ASSOCIATED MASTER PAINTERS AND DECORATORS, INC. OF PHILADELPHIA AND VICINITY  AND entered into this first day of May 1, 2018 between the INTERIOR FINISH CONTRACTORS ASSOCIATION OF DELAWARE VALLEY, ARCHITECTURAL GLASS AND METAL ASSOCIATION OF PHILADELPHIA AND VICINITY, P.D.C.A. OF NORTHEAST PA, P.D.C.A.- HARRISBURG AND KEYSTONE CONTRACTORS ASSOCIATION, hereinafter called the "EMPLOYER", and DISTRICT COUNCIL # 21 OF THE INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO-CLC, ᴏꜰ EASTERN PENNSYLVANIA, SOUTHERN NEW JERSEY, AND THE STATE OF DELAWARE, ʜᴇʀᴇᴀꜰᴛᴇʀ called the "COUNCIL".

**Now, Therefore, This Agreement Witnesseth:**

## ARTICLE 1

## Recognition

1.1      **Recognition:**
The Union recognizes the ASSOCIATED MASTER PAINTERS AND DECORATORS, INC. OF PHILADELPHIA AND VICINITY, INTERIOR FINISH CONTRACTORS ASSOCIATION OF DELAWARE VALLEY, ARCHITECTURAL GLASS AND METAL ASSOCIATION ᴏꜰ PHILADELPHIA AND VICINITY,  P.D.C.A. OF NORTHEAST PA, P.D.C.A.- HARRISBURG, KEYSTONE CONTRACTORS ASSOCIATION, AND ALL INDEPENDENT EMPLOYERS & ASSOCIATIONS as the exclusive collective bargaining representative and agent under the terms of this Agreement for all of its present and future members. THE ASSOCIATED MASTER PAINTERS AND DECORATORS, INC. OF PHILADELPHIA AND VICINITY, INTERIOR FINISH CONTRACTORS ASSOCIATION OF DELAWARE VALLEY,  ARCHITECTURAL GLASS AND METAL ASSOCIATION ᴏꜰ PHILADELPHIA AND VICINITY, P.D.C.A. OF NORTHEAST PA, P.D.C.A.- HARRISBURG, KEYSTONE CONTRACTORS ASSOCIATION, AND ALL INDEPENDENT EMPLOYERS and any other Association this Union may recognize, do recognize the COUNCIL as the bargaining representative of the

3

Painters, Decorators, Wallcoverers, Drywall Finishers, Glaziers, and Apprentice EMPLOYEES of the EMPLOYERS.

**1.2**   **NLRB Status:**
Inasmuch as the Union has demanded recognition from the EMPLOYER as the exclusive bargaining representative of the EMPLOYEES in the bargaining unit described herein under Section 9(a) of the National Labor Relation Act, and has submitted proof thereof in the form of signed and dated authorization cards, and the EMPLOYER is satisfied that the Union represents a majority of its EMPLOYEES in the bargaining units described herein, the EMPLOYER hereby recognizes the Union as the exclusive collective bargaining representative of its EMPLOYEES on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the EMPLOYEES' exclusive representative as a result of an NLRB election requested by the EMPLOYEES. The EMPLOYER agrees that during the life of this Agreement it will not request a NLRB election and expressly waives any right it may have to do so.

## ARTICLE 2

## <u>Union Security Clause</u>

**2.1**   **Membership:**
It is agreed that after the EMPLOYEE, who by the nature of his work comes within the provisions of this Agreement and who shall have worked for any EMPLOYER for not less than seven (7) days, such EMPLOYEE shall be required to then become and remain a member of the Union in good standing, and the Union shall make membership therein continuously available to such EMPLOYEE on the same terms and conditions as are generally applicable to the other members of the Union.

**2.2**   **Discharge of EMPLOYEE:**
Any EMPLOYEE who fails or refuses to become a member of the Union after seven (7) days from the date of commencement of work with any EMPLOYER shall, upon written notice from the Union, be discharged by his current EMPLOYER.

# ARTICLE 3

## Check-Off Administrative Dues

3.1   **Agreement of Check-Off**
Every EMPLOYER, signatory to this Agreement, hereby agrees to check-off from wages of any EMPLOYEE by such EMPLOYER during the term of this Agreement, administrative dues in the then amount specified in this Agreement and/or Union's by-law and to remit said amount to the Administrator in the following manner.

3.1.1   Upon signing of this Agreement the Union will notify the EMPLOYER in writing of the amount of administrative dues specified and will submit to the EMPLOYER a copy of the By-Laws or the appropriate By-Laws.

3.1.2   For each payroll period, the EMPLOYER will deduct from the wages of each EMPLOYEE the amount specified, based on Gross Wages and Fringe Benefits paid during said payroll period, and will accumulate said deduction at the end of the month.

3.1.3   All payments and/or transmittals of funds required under this Article shall be paid to the Administrator not later than the thirtieth (30th) day following the end of the month in which the check-off occurred. All such payments shall be made in accordance with the payment and collection procedures hereinafter set forth in Article 13.

3.2   **Outside of #21's Area:**
The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to the agreement, comply with all of the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction and executed by the employers of the industry and the IUPAT affiliated Unions in the jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievance set forth therein; provided however, that where no affiliated Union has an agreement covering such out-of-area work, the Employer shall perform such work in accordance with this agreement; and provided further that employees from within the geographic jurisdiction of the Union party to this agreement who work in an

5

outside jurisdiction at the Employer's request (but not employees who travel to the jurisdiction to seek work or who respond to a job alert issued by the IUPAT) shall receive (a) contributions to their home benefit funds at the rate called for in their home agreement and (b) (i) wages equal to the higher economic package minus the amount of contributions paid under (a), or (ii) wages equal to their home wages and a contribution to a defined contribution retirement plan equal to [the higher economic package] minus [the amount of contributions paid under (a) plus the home wages]. This provision is enforceable by the District Council or Local Union in whose jurisdiction the work is being performed, either through the procedure for settlement of grievance set forth in its applicable collective bargaining agreement or through the courts and is also enforceable by the Union party to this agreement, either through the procedure for settlement of grievances set forth in this agreement or through the courts. On a monthly basis, the Employer shall provide the affiliated Union is whose area the work is performed with documentation that it has made fringe benefit contributions to the home funds for all employees brought into the jurisdiction by the Employer.
**Drywall Finishers ONLY:** See Article 25.10.7

3.3 **EMPLOYER'S Obligation:**
The obligation of the EMPLOYER under 3.1 and 3.3 shall apply only as to EMPLOYEES who have voluntarily signed a valid dues deduction authorization card.

3.4 **Time of Employment**
At the time of employment of any EMPLOYEE, the EMPLOYER will submit to each such EMPLOYEE, for his voluntary signature, a dues deduction authorization card in duplicate; one copy of which is retained by the EMPLOYER and the other returned to the Union; the form to be supplied to such EMPLOYER by the Union.

3.5 **Submittal Form:**
On or before the thirtieth (30th) day of each month, the EMPLOYER will submit to the Union, a list of all EMPLOYEES covered by the Agreement who have not signed a dues deduction card, together with the number of hours worked by each such EMPLOYEE during the month previous.

6

**3.6**    **Political Action Fund:**
It is recognized that the District Council 21 has a Political Action Fund and is entitled to voluntary contributions by its members. Upon receipt of written authorization from an EMPLOYEE, the EMPLOYER agrees to deduct payments in the amount specified in the wages of said EMPLOYEE, and forward such monies to the Political Action Fund, in a manner consistent with Article 3.

## ARTICLE 4

## Function of Management

**4.1**    **Management Rights:**
In the exercise of its functions of management, the EMPLOYER shall have the right, to plan, direct and control operations of all its work, hire EMPLOYEES, direct the working forces in the field, assign EMPLOYEES their jobs, discharge, suspend or discipline for proper cause, (proper cause for discharge includes but is not necessarily limited to incompetence, insubordination, habitual tardiness or absenteeism), transfer, promote or demote EMPLOYEES, lay off EMPLOYEES because of the lack of work, or for other legitimate reasons, require EMPLOYEES to observe the EMPLOYER'S and/or contracting entities, rules and regulations not inconsistent with this Agreement, institute a fair and consistent drug policy, regulate the amount of equipment used and the use of equipment and other property of the EMPLOYER, decide the number of EMPLOYEES needed; provided, however, that the EMPLOYER will not use its rights for the purpose of discrimination against any EMPLOYEE.

## ARTICLE 5

## Contract Increases & Territory covered in Zones

**Zone 1 (Phila. Metro) Painters, Drywall Finishers, Wallcoverers, Glaziers:**
Territory: Pennsylvania Counties of: Philadelphia, Montgomery, Bucks, Delaware, And Chester.

Negotiated Increases for contract Duration *Zone 1*: Painters & Wallcoverers (distribution to be determined by Union)

|  | 1st Year | 2nd Year | 3rd Year | 4th Year | 5th Year |
|---|---|---|---|---|---|
| Regular | $2.00 | $2.00 | $1.75 | $1.75 | $1.75 |

7

| | | | |
|---|---|---|---|
| Bridge | $2.25 | $2.25 | $1.65 |
| Industrial | 80%wages | 80% wages | $1.65 |

Negotiated Increases for contract Duration *Zone 1*: Drywall Finishers (distribution to be determined by Union) – **PHILADELPHIA ONLY**

| | 1st Year | 2nd Year | 3rd Year |
|---|---|---|---|
| Regular | $1.60 | $1.60 | $1.55 |

Negotiated Increases for contract Duration *Zone 1:* Drywall Finishers (distribution to be determined by Union) – **4 COUNTY AREA ONLY**

| | 1st Year | 2nd Year | 3rd Year |
|---|---|---|---|
| Regular | $1.00 | $1.00 | $1.00 |

Negotiated Increases for contract Duration *Zone 1*: Glaziers (distribution to be determined by Union)

| | 1st Year | 2nd Year | 3rd Year |
|---|---|---|---|
| Regular | $2.55 | $1.60 | $1.60 |

**Zone 2   (Wilkes-Barre, Scranton)   Painters, Drywall Finishers, Wallcoverers**
Territory:  Pennsylvania Counties of: Bradford, Carbon, Clinton, Columbia, Lackawanna, Luzerne, Lycoming, Monroe, Montour, Northumberland, Pike, Schuylkill, Snyder, Sullivan, Susquehanna, Tioga, Union, Wayne and Wyoming

Negotiated Increases for Contract Duration *Zone 2*: (distribution to be determined by Union)

| | 1st Year | 2nd Year | 3rd Year | 4th Year |
|---|---|---|---|---|
| Painters | $1.42 | $1.25 | $1.25 | $1.25 |
| Industrial | $1.42 | $1.25 | $1.25 | $1.25 |
| Bridge | $1.42 | $1.25 | $1.25 | $1.25 |
| Drywall | $1.42 | $1.25 | $1.25 | $1.25 |

Mkt. Recovery: to be determined----------------------------------------------

**Zone 2 (Scranton, Wilkes-Barre, Northumberland) Glaziers:**
Territory: Pennsylvania Counties of: Bradford, Susquehanna, Wayne, Lackawanna, Monroe, Pike, Wyoming, Tioga, Columbia, Union, Sullivan, Lycoming, Montour, Clinton, and Luzerne.

Negotiated Increases for Contract Duration *Zone 2:* (Distribution to be determined by Union)

| | |
|---|---|
| Regular | See Scranton Agreement (Sterling Glass) |
| | May 1, 2018 thru April 30, 2019 |

8

**Zone 3 (Allentown-Lehigh Valley) Painters, Drywall Finishers, Wallcoverers:**

Territory: Pennsylvania Counties of: Lehigh, Northampton, and Berks.

Negotiated Increases for Contract Duration *Zone 3*: (distribution to be determined by Union)

|  | 2nd Year | 3rd Year | 4th Year | 5th Year |
|---|---|---|---|---|
| Painters | $1.42 | $1.25 | $1.25 | $1.25 |
| Industrial | $1.42 | | | |
| Bridge | $1.42 | | | |
| Drywall | 70% of Philadelphia (All 3 Years) | | | |

Mkt. Recovery: to be determined--------------------------------------------------

**Zone 3 (Allentown Reading) Glaziers:**

Territory: Pennsylvania Counties of: Lehigh, Northampton, Schuylkill, Berks, Colombia and Carbon.

Negotiated Increases for Contract Duration *Zone 3:* (Distribution to be determined by Union)

Regular          See Allentown/Reading Agreement (Hutt's Glass)
                 June 1, 2016 thru April 30, 2019

**Zone 4 (Harrisburg) Painters, Drywall Finishers, Wallcoverers:**

Territory: Pennsylvania Counties of: Adams, Cumberland, Dauphin, Franklin, Lancaster, Lebanon, Perry and York.

Negotiated Increases for Contract Duration *Zone 4*: (distribution to be determined by Union)

|  | 1st Year | 2nd Year | 3rd Year |
|---|---|---|---|
| Painters | $1.50 | $1.50 | $1.50 |
| Bridge | $1.50 | $1.50 | $1.50 |
| Industrial | $1.50 | $1.50 | $1.50 |
| Drywall | $1.25 | $1.15 | $1.10 |

9

**Zone 4 (Harrisburg) Glaziers:**

Territory: Pennsylvania Counties of: Franklin, Adams, Cumberland, Perry, Dauphin, Juniata, Snyder, York, Lancaster and Lebanon.

Negotiated Increases for Contract Duration _Zone 4:_ (Distribution to be determined by Union)

Regular  See Harrisburg Agreement (Hershocks, Inc., Harrisburg, Eastern)
                 May 1, 2017 thru April 30, 2022

## Zone 5   (State of Delaware) Painters, Drywall Finishers, Wallcoverers, and Glaziers

Territory: Whole State

Negotiated Increases for Contract Duration _Zone 5_: (distribution to be determined by Union)

|            | 1st Year  | 2nd Year  | 3rd Year | 4th Year | 5th Year |
|------------|-----------|-----------|----------|----------|----------|
| Regular    | $2.00     | $2.00     | $1.75    | $1.75    | $1.75    |
| Bridge     | $2.25     | $2.25     | $1.65    |          |          |
| Industrial | 80% wages | 80% wages | $1.65    |          |          |

Glaziers Regular (Same as zone 1)
Mkt. Recovery: to be determined ------------------------------------------------

Negotiated Increases for Contract Duration _Zone 5_: Drywall Finishers (distribution to be determined by Union)

| Drywall  | 1st Year | 2nd Year | 3rd Year |
|----------|----------|----------|----------|
| Regular  | 76% of Philadelphia (All 3 Years) | | |

## Zone 6 (Southern N.J.)  Glaziers only

Territory: Southern New Jersey counties of: Gloucester, Atlantic, Camden, Salem, Cumberland, Cape May, and parts of Ocean and Burlington. (See dividing lines below)
Pennsylvania and New Jersey Boundaries:  New Hope, PA to Newtown, PA to Emilie, PA to Florence, NJ to Bustleton, NJ to Columbus, NJ to Jobstown, NJ to Pemberton, NJ to Ongs Hat, NJ to Chatsworth, NJ to Whiting, NJ to Pinewald, NJ to Ocean Gate, NJ to Seaside Heights, NJ. Everything south of these boundaries is the geographic jurisdiction of Glaziers Local Union 252 in the state of New Jersey.

**Negotiated Increase same as zone 1**

10

# ARTICLE 6

## Council Representatives

**6.1**     **District Council 21 Representatives:**
District Council's Representative only, in their capacity, shall be permitted to visit a job, or a shop, to ascertain if the terms of this Agreement are being complied with.

**6.1.1**     **No Restriction to Jobs:**
In the event that a Representative needs a pass or special permit to get on a job site because of security regulations, the EMPLOYER will assist in getting the Representative on the job. The Representative will not be restricted by the EMPLOYER in any way in the performance of his duties. If it is beyond the EMPLOYER'S control, then District Council # 21 will explore other avenues.

# ARTICLE 7

## General Work Rules

**7.1**     **Productivity:**
In recognition of increased competition from Non-Union subcontractors, it is understood that EMPLOYEES must begin and end the working day according to this contract, and the lunch periods must not be extended. Those who violate this understanding, or those who fail to report without sufficient notice, can be subject to discharge. It is the aim of the EMPLOYER and all of the EMPLOYEES to be as productive as possible, in order to help preserve future job security.

**7.2**     **Ratio:**
The contractor or the EMPLOYER party to this Agreement, when engaged in work outside the geographical jurisdiction of the Union party to this Agreement, shall employ not less than fifty percent (50%) of the workers employed on such work from the members of the Local Union or District Council where the work is being performed.

**7.3**     **Jurisdictional Conditions:**
The EMPLOYER party hereto shall, when engaged in work outside the geographic jurisdiction or zone of the Union party to the Agreement, comply with all of the lawful clauses of the

11

Collective Bargaining Agreement in effect in said other geographic jurisdiction or zone and executed by the EMPLOYER'S of the industry and the affiliated Local Unions in that jurisdiction or zone, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievances set forth therein; provided however, that as to EMPLOYEES employed by such EMPLOYER from within the geographic jurisdiction or zone of the Union party to this Agreement and who are brought into an outside jurisdiction, such EMPLOYEES, shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction which ever favorable to such EMPLOYEES, and fringe benefit contributions on behalf of such EMPLOYEES shall be made solely to their home funds in accordance with their governing documents and the difference between the benefit contributions required by the home funds and the away funds, if any, shall be paid to the employees as additional wages. This provision is enforceable by the Local Union or District Council in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in this applicable Collective Bargaining Agreement and through the courts and is also enforceable by the Union party to this Agreement, both through the procedure for settlement of grievances set forth in this Agreement and through the courts.

**7.3.1**   **Evading obligations:**
The EMPLOYER shall not be permitted to evade its obligations thereunder by setting up an additional 'home' or 'branch' office or plant in an area outside District Council 21's territory.

**7.4**   **Coffee Break:**
There shall be a 15-minute coffee break per shift. This also applies to night shift.

## ARTICLE 8

## Picketing

**8.1**   **Painters, Drywall Finishers, Wallcoverers**
EMPLOYEES covered by this Agreement shall have the right to respect any legal primary picket line validly established by any bona fide labor organization, and the Union party to this agreement has the right to withdraw employees covered by this agreement whenever the Employer party to the agreement is

12

involved in a legitimate primary labor dispute wit any bona fide organization.

## ARTICLE 9

### Subletting of Contracts
### All Zones Painters, Drywall Finishers, Wallcoverers

**9.1**     **Subcontracting**
The EMPLOYER shall not contract out or subcontract any work covered by this Agreement to any sub-contractor or other person unless that sub-contractor or other person is a party to a Collective Bargaining Agreement with a District Council or Local Union affiliated with the International Union of Painters and Allied Trades, AFL – CIO.

**9.2**     **Glaziers Sub-Contracting Only**
The COUNCIL agrees to recognize existing past practice with regard to subcontracting and agrees that it will not bring any actions against any member of AGMA who utilizes such practice even though they may not have done so in the past.

## ARTICLE 10

### Preservation of Work Clause

**10.1**     **Protection of Work:**
To protect and preserve, for the EMPLOYEES covered by this Agreement, all work they have performed and all work covered by this Agreement, and to prevent any devise or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the EMPLOYER performs on-site construction work of the type covered by this Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the EMPLOYER, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

**10.2**   **Disputes:**

All charges of violations of Section 13.1 of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement on the handling of grievances and the final and binding resolution of disputes. As a remedy for violations of this Article, the Joint Trade Board or Arbitrator shall be able, at the request of the Union, to require an EMPLOYER to pay 1) to effected EMPLOYEES covered by this Agreement, including registered applicants for employment, the equivalent of wages those EMPLOYEES have lost because of the violations, and 2) into the affected Joint Trust Funds to which this Agreement requires contributions, any delinquent contributions that resulted from the violations. The Joint Trade Board or Arbitrator shall be able also to provide any other appropriate remedies, whether provided by law or this Agreement. The Union shall enforce a decision of the Joint Trade Board or Arbitrator under this Article only through arbitral, judicial, or governmental (for example, the National Labor Relations Board) channels.

**10.3**   **Enforcement of Award:**

If, after an EMPLOYER has violated this Article, the Union and/or the trustees or one or more Joint Trust Funds to which this Agreement requires contributions institute legal action to enforce an award by an Arbitrator or the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award, the EMPLOYER shall pay any accountants' and/or attorneys' fees incurred by the Union and/or the Joint Trust Funds, plus costs of the litigation, that have resulted from such legal action. This section does not affect other remedies, whether provided by law or this Article that may be available to the Union and/or the Joint Trust Funds.

# ARTICLE 11

## Grievances and Arbitration

**11.1**   **Jurisdiction of Procedures:**

All complaints, disputes, controversies, claims or grievances (hereinafter referred to as a dispute) arising between the parties to the Agreement involving questions of interpretation, application, or breach of any part of this Agreement, or arising out of the contractual relations between the parties and their respective members shall, be resolved in the following manner:

14

**Step 1**     In the first instance, the job or shop steward shall file a grievance with the foreman on the job. The company has five (5) working days to answer this grievance. If the grievance cannot be resolved at this step it shall proceed to step two.

**Step 2**     The Business Representative of District Council 21 will meet with the foreman on the job. If the grievance cannot be resolved at this step within five (5) working days it shall proceed to step three.

**Step 3**     The Company Representative will meet with a committee appointed to hear this grievance at District Council 21's office. The committee will render its opinion within three (3) working days of the meeting. If the Company does not agree with this opinion it has two (2) working days to write its reasons why it disagrees with the opinion of the Committee. If the Committee disagrees with the written response by the Company, the Business Manager/Secretary Treasurer, will proceed to step four (4) and file for a Joint Trade Board Meeting.

**Step 4**     The Joint Trade Board will be made up of three members of District Council 21, and three members of the Association that best represents this grievance. From the time either party files for a "Joint Trade Board Meeting", the Board must convene within five (5) working days. The Joint Trade Board must render its decision within three (3) working days. The decision of the Joint Trade Board will be binding and final on the parties. If the EMPLOYER refuses to comply with a final and binding decision issued at the Joint Trade Board level, the District Council will have the right to direct EMPLOYEES of such EMPLOYER to refrain from work. If the "Joint Trade Board" cannot resolve the grievance, at this level: either party can file for arbitration with (AAA) American Arbitration Association, within ten (10) working days.

During the pendency of the Board's decision, there shall be no cessation of work of any type or description nor shall the EMPLOYER lock out any EMPLOYEE.

## ARBITRATION

**Step 5**     The American Arbitration Association will submit a panel of Arbitrators from whom the parties shall select an Impartial Chairman in accordance with the Rules and Regulations of the

15

American Arbitration Association to hear the dispute. The decision of the Impartial Chairman shall be final and binding upon all parties to the proceedings and to this Agreement.

**11.2**   **48-hour rule:**
If an EMPLOYER fails to comply with an Arbitration Award within forty-eight (48) hours after it has been rendered, the Union shall have the right, aside from other legal remedies available to it, to direct the EMPLOYEES of such EMPLOYER covered by this Agreement to refrain from working for such EMPLOYER as long as he has failed to comply with the Arbitration Award, and such action by the Union and the EMPLOYEES shall not be considered a breach or violation of this Agreement.

**11.3**   **Cost**
Each party shall pay one-half (1/2) the costs of arbitration including administrative fees and the cost of an arbitrator. This shall not include the legal fees of any party using the services of an attorney or any other professional service, which shall be the responsibility of the party(s) engaged. The exception being, as pertaining to any and all fees as outlined in Article 13.

**11.4**   **Termination of Agreement:**
In the event it has been determined by the appropriate body that any EMPLOYER, party to this Agreement, has violated it, in any respect, depending on the severity of the offenses, then this Agreement shall be terminated as to such EMPLOYER, and the Union is privileged to withdraw the workers from the employment of that EMPLOYER.

All matters considered beneficial to the painting, wallcovering, drywall finishing and glazing industries, not presently provided for in this Agreement, shall be referred to the Joint Trade Board for consideration and appropriate action.

**11.5**   **Non-Members of Associations:**
The parties hereto agree that the arbitration procedure outlined above will be available for any dispute which may rise between the Union and EMPLOYER who is not a member of the ASSOCIATED MASTER PAINTERS AND DECORATORS, INC. OF PHILADELPHIA AND VICINITY, INTERIOR FINISH CONTRACTORS ASSOCIATION OF DELAWARE VALLEY, ARCHITECTURAL GLASS AND METAL ASSOCIATION OF PHILADELPHIA AND VICINITY, P.D.C.A. OF NORTHEAST PA, AMERICAN

16

SUBCONTRACTORS ASSOCIATION OF CENTRAL PENNSYLVANIA, P.D.C.A.- HARRISBURG and any or all Independent EMPLOYERS and Associations the Union may recognize, but who has agreed to accept and be bound by the arbitration procedures and machinery set forth above.

When a non-member signator of this Agreement is charged with violating any of the provisions or conditions of this Agreement or any other Agreement District Council No. 21 is a party to, indenture or condition related to the Collective Bargaining Agreement between the parties hereto, they shall be given the right to designate another non-member signator to the Agreement, in good standing, to sit in the place and stead of one Chapter designated member of the Board, for the purpose of hearing and determining the particular charge or charges; in such an event the Chapter shall temporarily remove one of its appointed members of the Board to give effect to the aforementioned objective. The non-member signator designee shall be vested with the same powers and authority as held by the other member of the Board.

## ARTICLE 12

## Security of Funds

12.1    Upon signing an EMPLOYER to this Collective Bargaining Agreement, the EMPLOYER must submit to the Union a complete list of all EMPLOYEES and jobs; also, proof of having proper Worker's Compensation and Unemployment Insurance.

12.2    ALL Painting, and Wallcovering EMPLOYERS are required to post a security bond; the original shall be filed with the District Council # 21 office. The amount of the bond for EMPLOYERS averaging 1 to 15 EMPLOYEES shall be $30,000.00, 16 to 35 EMPLOYEES shall be $50,000.00 and over 35 EMPLOYEES $75,000.00.

**ALL Glazing & Drywall Finishing EMPLOYERS ONLY Bonding of Fringe Benefits and Employee Deductions Only**
Bonding limits based on average manpower over last 12 months. If 12 months not available Prior 6 months.
If No prior history, Employer estimated average for year.
When current Employer bonds expire, new bonds will be provided as follows:

17

**Monthly Payer**
**(January due by the end of February)**

Journeypersons & Apprentices
| | |
|---|---|
| 1-5 | $ 20,000 |
| 6-10 | $ 40,000 |
| 11-15 | $ 60,000 |
| 16-20 | $ 80,000 |
| 21-30 | $100,000 |
| 31-40 | $125,000 |
| Over 40 | $150,000 |

**Bi-Monthly Payer**
**(January 1 -15, due January 31st**
**January 16-31, due February 15th)**

Journeypersons & Apprentices
| | |
|---|---|
| 1-5 | $ 10,000 |
| 6-10 | $ 20,000 |
| 11-15 | $ 30,000 |
| 16-20 | $ 40,000 |
| 21-30 | $ 50,000 |
| 31-40 | $ 62,500 |
| Over 40 | $ 75,000 |

Bonds will be issued on a yearly basis and will only be modified on renewal.

**Memorandum of Understanding:**
Council will work to modify Painter, Glazier and Drywall Employers bonds to these levels, so all Employers in CBA maintain the same level of Bonding.

Employers and Council will work to increase bonding rates in year 2 of this Agreement as follows:

**Bonding of Fringe Benefits and Employee Deductions Only**
Bonding limits based on average manpower over last 12 months.
If 12 months not available Prior 6 months.
If No prior history, Employer estimated average for year.
When current Employer bonds expire, new bonds bill be provided as follows:

18

Bonds will be issued on a yearly basis and will only be modified on renewal.

**Monthly Payer**
**(January due by the end of February)**

Journeypersons & Apprentices

| | |
|---|---|
| 1-5 | $  40,000 |
| 6-10 | $  80,000 |
| 11-15 | $120,000 |
| 16-20 | $160,000 |
| 21-30 | $200,000 |
| 31-40 | $250,000 |
| Over 40 | $300,000 |

**Bi-Monthly Payer**
**(January 1-15, due January 31st**
**January 16-31, due February 15th)**

Journeypersons & Apprentices

| | |
|---|---|
| 1-5 | $  20,000 |
| 6-10 | $  40,000 |
| 11-15 | $  60,000 |
| 16-20 | $  80,000 |
| 21-30 | $100,000 |
| 31-40 | $125,000 |
| over 40 | $150,000 |

Employers and Council shall both help fund an account within the H&W Fund through excess of bond cost and or H&W contributions. *(except drywall finishers)*

Employers and Council shall work to develop plan to establish an Insurance policy / Bond Facility/ Bond Pool / Bonding stop-loss policy / etc. that may help Employers obtain the increased Bond levels with a goal that will limit or exclude the need for Employer Owner's personal guarantees on these Bonds.

It shall be understood that both Employers and Council shall work together to help reduce the risk to the Funds by increasing Bond levels.  In doing so, both Employers and Council shall not create an Undue Hardship/Burden on the other.

19

**12.3**  For All Painting EMPLOYERS, in lieu of a minimum bond or letter of credit, the EMPLOYER eligible for the minimum coverage must deposit the sum of $ 1,000.00 Per Man Per Week, by certified check to be held in escrow by the Fund Office, until such time the EMPLOYER shall produce a bond based on the above scale, or no longer employs District Council # 21 members.

For All Glazing & Drywall Finishing EMPLOYERS, in lieu of a minimum bond or letter of credit, the EMPLOYER eligible for the minimum coverage must deposit the sum of $ 1,500.00 Per Man Per Week, by certified check to be held in escrow by the Fund Office, until such time the EMPLOYER shall produce a bond based on the above scale, or no longer employs District Council # 21 members.

Example:      5 Journeypersons & or apprentices
              Payment due the following week.

Calculation:  $15,000.00 total to cover 2 weeks

**12.3.1**  EMPLOYERS working under these circumstances may be required by the Union to pay fringe benefits and deductions on a weekly basis.

**12.4**  Vacation Fund escrow will also be retained (per Article 13.4.1)

**GLAZIERS & DRYWALL FINISHERS ONLY**

**ARTICLE 13**

**Various Funds**

**13.1**  **Health & Welfare Funds:** (1) The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. District Council No. 21 Welfare Fund. The Trust Agreement provides, *inter alia,* for the receipt of contributions by the Welfare Fund for the purpose of providing group health, medical surgical disability and other related welfare benefits to eligible workers and their families, in such form and amounts as the Trustees of the Welfare Fund may determine in conformity with the discretion

20

vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the Welfare Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

**13.2     The I.U.P.A.T. Union and Industry Pension Fund and Annuity:**

**13.2.1**     The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. Union and Industry National Pension Fund ("Pension Fund"). The Trust Agreement provides *inter alia,* for the receipt of contributions by the I.U.P.A.T. Union and Industry National Pension Fund for the purpose of providing pension and other related benefits to eligible workers and their families, in such form and amounts as the Trustees of the I.U.P.A.T. Union and Industry National Pension Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the Pension Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

**13.2.2**     Contributions shall be paid on behalf of any EMPLOYEE starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

**13.2.3**     The payments to the Pension and Annuity Fund required above shall be made to the I.U.P.A.T. Union and Industry National Pension Fund which was established under an Agreement and Declaration of Trust dated April 1, 1967.

**13.2.4**     The EMPLOYER hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as EMPLOYER Trustees, together with their successors. The EMPLOYER further agrees to be bound by all actions taken by the Trustees pursuant to the Agreement and Declaration of Trust.

**13.2.5**     All contributions shall be made at such time and in such manner as set forth in this Agreement. The Trustees shall have the authority to have an independent certified public accountant audit the payroll and wage records of the EMPLOYER for the

21

purpose of determining the accuracy of contributions to the Pension Fund.

**13.2.6**    If an EMPLOYER fails to make contributions to the Pension Fund within thirty (30) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the EMPLOYER shall be liable for all costs for collecting payments due, together with attorneys' fees and such liquidated damages as may be assessed by the Trustees. The EMPLOYER'S liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

**13.2.7**    The Pension Plan adopted by the Trustees of the Pension Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the EMPLOYER at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

**13.3**    **The I.U.P.A.T. District Council 21 Annuity Fund:**

**13.3.1**    The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. District Council 21 Annuity Fund. The Trust Agreement provides *inter alia,* for the receipt of contributions by the I.U.P.A.T. District Council 21 Annuity Fund for the purpose of providing pension and other related benefits to eligible workers and their families, in such form and amounts as the Trustees of the I.U.P.A.T. District Council 21 Annuity Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the Annuity Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

**13.3.2**    Contributions shall be paid on behalf of any EMPLOYEE, starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

22

**13.3.3**   The payments to the Annuity Funds required above shall be made to the I.U.P.A.T. District Council 21 Annuity Fund which was established under an Agreement and Declaration of Trust dated June 1, 1972.

**13.3.4**   The EMPLOYER hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as EMPLOYER Trustees, together with their successors. The EMPLOYER further agrees to be bound by all actions taken by the Trustees pursuant to the Agreement and Declaration of Trust.

**13.3.5**   All contributions shall be made at such time and in such manner as set forth in this Agreement. The Trustees shall have the authority to have an independent certified public accountant audit the payroll and wage records of the EMPLOYER for the purpose of determining the accuracy of contributions to the Annuity Fund.

**13.3.6**   If an EMPLOYER fails to make contributions to the Annuity Fund within thirty (30) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the EMPLOYER shall be liable for all costs for collecting payments due, together with attorneys' fees and such liquidated damages as may be assessed by the Trustees. The EMPLOYER'S liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

**13.3.7**   The Annuity Plan adopted by the Trustees of the Annuity Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the EMPLOYER at all times to treat contributions to the Annuity Fund as a deduction for income tax purposes.

**13.3.8**   Funds are paid to the Painters District Council 21 of Northeastern Pennsylvania Annuity Fund for the members covered by Article 24 (L.U. 2018, L.U. 1269).

**13.4**   **Vacation Fund:** (1) The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration or Trust, and all amendments thereto, governing establishment and

23

operation of the I.U.P.A.T. District Council No. 21 Vacation Fund. The Agreement provides, *inter alia,* for the receipt of contributions by the Vacation Fund for the purpose of providing vacation benefits to eligible workers and their families, in such form and amounts as the Trustees of the Vacation Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the Vacation Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

13.4.1   A certified check for no less than Five Hundred Dollars ($500.00) and no more than Two Thousand Five Hundred Dollars ($2,500.00) shall be deposited with the Administrator of the Vacation Fund by each EMPLOYER. The Board of Trustees of the Vacation Fund shall determine the amount due from each EMPLOYER, predicated on the basis of one-twelfth (1/12) of the yearly amount of funds submitted by the EMPLOYER to the Vacation Fund in the preceding year. In addition to any other remedies available to the Vacation Fund as set forth is this Article, an EMPLOYER who is delinquent in submitting contributions to the Vacation Fund shall have the delinquent monies withdrawn from its certified check and will be required to resubmit a new check in full covering this delinquency.

13.5   **Training and Education Fund:**
The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. District Council 21 Fund (hereinafter referred to as The FTI Fund). The Trust Agreement provides, *inter alia,* for the receipt of contributions by the FTI Fund for the purpose of establishing and administering a Training Program as the Trustees of the FTI Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the FTI Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

13.6   **National Apprenticeship Fund:** The EMPLOYER agrees to contribute the sum of ten cents ($.10) per hour for each hour for which an EMPLOYEE receives pay to the National Apprenticeship Fund. Trustees of said Fund shall remit said sum

24

to the National Painting and Decorating and Drywall Apprenticeship and Manpower Training Fund at such regular periods of time, and in the manner and form as shall be determined by the Trustees of the National Apprenticeship Fund from time to time.

**13.7**   **The District Council 21 Scholarship Fund:**

**13.7.1**   The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the District Council 21 Scholarship Fund ("Scholarship Fund"). The Trust Agreement provides *inter alia*, for the receipt of remittance by the Scholarship Fund for the purpose of providing educational relief to eligible workers and their families, in such form and amounts as the Trustees of the Scholarship Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to remit for each EMPLOYEE covered by this Agreement to the Scholarship Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

**13.7.2**   Remittances shall be paid on behalf of any EMPLOYEE, starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

**13.7.3**   The EMPLOYER further agrees to be bound by actions taken by the Scholarship Fund Trustees pursuant to the Agreement and Declaration of Trust.

**13.7.4**   All remittances shall be made at such time and in such manner as set forth in this Agreement. The Trustees shall have the authority to have an independent certified public accountant audit the payroll and wage records of the EMPLOYER for the purpose of determining the accuracy of deductions and remittances to the Scholarship Fund.

**13.7.5**   If an EMPLOYER fails to make remittance to the Scholarship Fund within thirty (30) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the EMPLOYER shall be liable for all costs for collecting payments due, together with attorneys' fees and such liquidated damages

25

as may be assessed by the Trustees.  The EMPLOYER'S liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike' clause which may be provided or set forth elsewhere in this Agreement.

**13.8**    **Board of Trustees:**
As to each Fund referenced in Sections 13.1 through 13.15 of this Article, the EMPLOYER hereby irrevocably designates as its representatives on the Boards of Trustees such Trustees as are now serving, or will in the future serve, as EMPLOYER Trustees, together with their successors appointed and/or elected in accordance with provisions set forth in the Agreement and Declaration of Trust for each Fund. The EMPLOYER further agrees to be bound by all actions taken by the Trustees of each respective Fund pursuant to each such Agreement and Declaration of Trust, and to be further bound by any and all rules and regulations duly adopted by each Board of Trustees. The Welfare Fund, Vacation Fund and FTI Fund shall each be administered, pursuant to an Agreement and Declaration of Trust, by a Board of Trustees composed of an equal number of representatives selected by the AMPD, IFCA, and AGMA, and or other Associations that the Council may acknowledge, by its Board of Directors, and by District Council No. 21 in accordance with its Bylaws. A copy of the Trust Agreements, together with Amendments thereto, shall be made available upon request by the parties and shall be considered a part of this Agreement as if set forth herein at length. The said Trust Agreements and any Amendments thereto, shall provide for annual audits of each respective Fund. The payments by the EMPLOYERS of contributions to each respective Fund shall be made monthly, on or before a date and in a manner and form that shall be prescribed by the Trustees. Each EMPLOYER shall be bound to provide such information to each Fund as its Board of Trustees may require in order to verify the amount(s) of contributions due and owing by such EMPLOYER.

**13.9**    **Auditing of Books:**
Each or any of the Funds referenced in this Article may engage a certified public accounting firm to periodically audit the books and records of any contributing EMPLOYER (or contractors working in this area) for the purpose, of verifying contributions due and owing to the respective Fund and/or liabilities for contributions due and owing to such Fund. The EMPLOYER shall make available to any Fund auditor all books and records

26

requested by the auditor and/or Board of Trustees, including, but not limited to; payroll, wage, general ledger, cash disbursement records, compensation insurance audits, and any other pertinent records deemed necessary for the purpose, of ascertaining and/or verifying payments and/or determining liabilities. Such records shall be made available to Fund auditors upon reasonable notice. In the event such audit shall disclose for any period a deficiency in the payment reported owed and/or paid to the Fund(s) of five percent (5%) or more of the amount that should have been paid for such period under this Agreement, the cost of the audit shall be borne by the EMPLOYER. A confirmation report from the Funds will be available annually upon request by any EMPLOYER pertaining to its payments into the Funds, Industry Advancement Program and Check-Off Administrative Dues.

13.10    The benefit programs adopted by each respective Board of Trustees shall be described in a Summary Plan Description (if one is required by law) and made available to all eligible participants of each Fund.

13.11    Each EMPLOYER agrees to furnish the Board of Trustees of each respective Fund with information necessary and appropriate to verify required contributions on reporting forms to be provided by each respective Fund. Such information shall be reported each month and shall include, but not be limited to, the names, classifications, Social Security numbers of the EMPLOYEES, and the number of hours worked by each EMPLOYEE during the period or periods for which the contributions are being made.

13.12    All EMPLOYERS from jurisdictions other than the jurisdiction of District Council No. 21 shall be subject to the above provisions contained in this Agreement and the gross payroll contributions when performing work within the geographical jurisdiction of District Council No. 21, including IAP contributions which shall be paid to the appropriate association representing that trade.

13.13    **Delinquencies/Collection Procedures/Rights and Remedies of the Union and Fringe Benefit Funds:** In addition to any rights, remedies or obligations set forth in this Agreement, each EMPLOYER shall have the obligations and the Union, and each Fringe Benefit Fund shall have the rights and remedies set forth below:

27

**13.13.1**   All reports to the Union with respect to check-off and administrative dues, as well as amount due and owing must be filed with and paid to the Administrator of the Union and/or each respective Fund by the earlier of the thirtieth (30th) day or last calendar day of each month following the month in which the contributions and/or check-off became due and owing.

Liquidated Damages of Seven Hundred Fifty Dollars ($750.00) for failure to file a timely remittance report and not make a timely payment shall automatically be levied upon the delinquent EMPLOYER; Liquidated Damages of Five Hundred Dollar ($500.00) shall be levied on the delinquent EMPLOYER in circumstances where a report is submitted in a timely manner, but the EMPLOYER has failed to pay the appropriate contribution to the Union and/or Fund and interest shall start to accrue on the delinquent amount from the due date at the rate then charged by the IRS for delinquent taxes under Section 662(a) of the I.R.C., plus one (1) percentage point in excess of such rate.  Upon written petition and showing of need by an EMPLOYER who has had a collective bargaining agreement with District Council # 21 for at least two (2) years, a twenty (20) day extension for payment will be granted by the Business Manager / Secretary Treasurer. All liquidated damages paid pursuant to this Section shall be distributed pro rata to the Union (dues); the Association (IAP contributions) and the respective Funds based upon the amount of the delinquent obligation owed to each entity. Nothing contained herein shall be construed as a limitation on the right of any Fringe Benefit Fund to impose liquidated damages and/or costs of collection proceedings on a "delinquent" EMPLOYER in accordance with provisions set forth in ERISA or applicable law.

**13.13.2**   In the event the wage payments, Fringe Benefit (Fund) contributions, Union Administrative Dues (Check-off) or any other payments required by any provision in this Collective Bargaining Agreement are not transmitted to the EMPLOYEES, the Union or the appropriate EMPLOYEE Benefit Fund, as the case may be, in a timely manner, in accordance with provisions set forth herein, or in the event the reporting forms relating to Union assessments and/or EMPLOYEE Benefit Fund contributions are not submitted in a timely manner as provided herein, the EMPLOYER shall be considered as "delinquent." In addition to the liquidated damages set forth in (13.13.1) above, the "delinquent" EMPLOYER shall be obligated to pay any assessments and/or interest on the debt that may be required

28

under rules, regulations or procedures governing delinquent contributions established by the Trustees of the Various Fringe Benefit Funds identified in this labor contract and not inconsistent with this Agreement or as may otherwise be imposed by law. Each EMPLOYER shall be bound and governed by any rules, regulations or procedures adopted by any of the Boards of Trustees or any of the Fringe Benefit Funds to which contributions are due and owing under this Agreement. The rules, regulations or procedures adopted by the Trustees of the Various Fringe Benefit Funds may require payment by a delinquent EMPLOYER of liquidated damages, assessments, interest on the debt (in an amount determined by the Trustees or by applicable law) and shall also assess against a delinquent EMPLOYER audit fees incurred during the collection, including, but not limited to counsel fees and costs. Such charges and expenses shall be paid to that entity to whom such contributions and payments are owed. The Co-Chairman of the Joint Trade Board may require any "delinquent" EMPLOYER or any EMPLOYER who has demonstrated a pattern of delinquency to submit its contributions on a weekly basis, notwithstanding any provisions set forth in this labor Agreement. In addition, the Board of Trustees of the Various Fringe Benefit Funds are empowered to adopt rules and regulations requiring any "delinquent" EMPLOYER or any EMPLOYER that has demonstrated a pattern of delinquency to furnish to the Board of Trustees a bond or other appropriate surety in an amount sufficient to protect the respective Fund(s) from any financial loss that may result from future delinquencies by any EMPLOYER that is, or has been, delinquent in its obligations to the Fund. The amount of any such bond or other surety shall be in the sole discretion of the Board of Trustees, and the Board in determining the amount of any such bond, may consider the costs related to the collection of future delinquencies, as well as contribution amounts.

13.13.3   In addition to all other remedies available to the parties and/or the various Fringe Benefit Funds with respect to "delinquent" EMPLOYERS, the Union may treat any failure by an EMPLOYER to satisfy a delinquency as a breach of this Agreement. In such event, the Union may, in addition to any other remedy that may be available to it, and without being limited by any "no strike" obligation that may appear in this Agreement or be implicit in its terms, remove its members from any job(s) of such delinquent EMPLOYER. A removal of manpower by the Union, pursuant to this provision, shall not be

construed as a "termination" of this Agreement with respect to any affected EMPLOYER.

**13.14    The International Union of Painters and Allied
           Trades Labor-Management Cooperation Initiative**

**13.14.1**   Commencing with the 1st day of May 1997, and for the duration and any renewal of this Agreement, the EMPLOYER agrees to make payments to The International Union of Painters and Allied Trades Labor Management Cooperation Initiative ("Fund") for each EMPLOYEE covered by this Agreement, as follows:

**13.14.2**   For each hour or portion thereof, for which an EMPLOYEE receives pay, the EMPLOYER shall make the then current contribution of $.05 to the Fund.

**13.14.3**   For the purpose of this Article, each hour worked for, including hours attributable to show up time, and other hours for which pay is received by the EMPLOYEE in accordance with the Agreement, shall be counted as hours for which contributions are payable.

**13.14.4**   Contributions shall be paid on behalf of any EMPLOYEE starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

**13.14.5**   The EMPLOYER and Union signatory to this Agreement agrees to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

**13.15    District Council 21 Labor Management Fund**

**13.15.1**   Commencing with the 1st day of May 2018, and for the duration and any renewal of this Agreement, the EMPLOYER agrees to make payments to District Council 21 Labor Management Fund for each EMPLOYEE covered by this Agreement, as follows:

**13.15.2**   For each hour or portion thereof, for which an EMPLOYEE receives pay, the EMPLOYER shall make the then current contribution of $.07 for Painters & Drywall Finishers & $.09 for Glaziers to the Fund.

**13.15.3**   For the purpose of this Article, each hour worked for, including hours attributable to show up time, and other hours for which

30

pay is received by the EMPLOYEE in accordance with the Agreement, shall be counted as hours for which contributions are payable.

13.15.4  Contributions shall be paid on behalf of any EMPLOYEE starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

13.15.5  The EMPLOYER and Union signatory to this Agreement agrees to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

13.16   The EMPLOYER hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as EMPLOYER Trustees, together with their successors.

13.17   All contributions shall be made at such time and in such manner, as the Trustees require, and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

13.18   If an EMPLOYER fails to make contributions to the Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the EMPLOYER shall be liable for all costs of collection of the payments due together with attorney fees and such liquidated damages as may be assessed by the Trustees. The EMPLOYER'S liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

31

# ARTICLE 14

## Pinpointing Funds

## Fund One

### Job Organization Program: Eligibility and Rules
### Painters, Wallcoverers

**14.1**    **Purpose:**
The EMPLOYER and District Council No. 21 agree to establish the District Council No. 21 "JOB ORGANIZATION PROGRAM" for the purpose of providing subsidies on specific jobs in order to enable contractors who are signatory to this Agreement to bid more competitively on certain projects in the marketplace. To implement the Jobs Organization Program ("JOP"), the EMLOYER and District Council No. 21 further agree as follows:

**14.2**    **Trust Fund:**
The EMPLOYER and District Council No. 21 shall establish a Trust Fund to be known as the "International Union of Painters and Allied Trades, District Council No. 21 Jobs Organization Program Trust Fund."

**14.3**    **Purpose of Trust Fund:**
The purpose of the Jobs Organization Program Trust Fund shall be to provide, in accordance with the Jobs Organization Program Trust Agreement, financial subsidies for eligible contractors. The Jobs Organization Program Trust Fund shall be the sole and exclusive source of funding for all subsidies, expenses and other charges and liabilities incurred by operation of the Jobs Organization Program and shall not be liable for such charges in excess of the assets in the Fund.

**14.4**    **Guidelines:**
The Jobs Organization Program Trust Agreement shall provide that the following guidelines and rules must be satisfied:

**14.4.1**    There must be Non-Union competition bidding on the project.

**14.4.2**    The project is within District Council 21's territorial jurisdiction and scope of work covered in this Collective Bargaining Agreement.

32

**14.4.3**   The EMPLOYER making application must be signatory to District Council 21's Collective Bargaining Agreement and utilize members of said bargaining unit. EMPLOYERS signed to project Agreements are not eligible to apply for JOP subsidies.

**14.4.4**   The EMPLOYER making application must not be delinquent in any fringe benefit reporting and contribution obligations at the time of application and at the start of the approved project or shall have reached an appropriate Agreement, satisfactory to the Trustees, in resolution of any outstanding delinquencies.

**14.4.5**   Only the District Council shall have the authority to approve a subsidy with respect to a project.

**14.4.6**   Subsidized hours granted under the Jobs Organization Program will only apply to members of District Council No. 21 and then only to the EMPLOYEES that are based in that zone. These subsidies will not apply and/or be used for change order work but only to the original contract.

**14.4.7**   Only the hours worked on an approved JOP project will be subsidized and then only up to the amount approved by the District Council.

**14.4.8**   The EMPLOYER will report the start of a JOP project. There will be a job steward placed and appointed by the District Council at the start of any JOP project. When the project requires more than five (5) workers, 50% of the additional workers starting with the sixth, will be assigned by the District Council from the "out of work register", qualifications prevailing.

**14.4.9**   JOP subsidies shall not be unreasonably denied by the District Council. The District Council shall respond to any JOP application within five (5) working days. To obtain the pinpointing subsidy, the EMPLOYER must notify District Council 21 that the EMPLOYER has been awarded the relevant contract within thirty (30) days after the pinpointing subsidy application is approved by District Council 21. An EMPLOYER can request a thirty (30) day extension of time to provide notice of the contract award and said extension will be automatically approved. For good cause shown, an EMPLOYER can request an additional extension of time to provide notice of the contract award. If the EMPLOYER fails to notify District Council 21

33

that the EMPLOYER has been awarded the relevant contract within the prescribed time, including any approved extensions of time, the relevant pinpointing subsidy will be automatically terminated.

**14.4.10**   If any EMPLOYER is found to have abused the JOP subsidies more than once in any given year, said EMPLOYER will not be eligible for JOP subsidies for a period of up to one year. A third finding of abuse will suspend said EMPLOYER'S use of JOP subsidies for the remaining term of the Agreement.

**14.4.11**   Nothing contained herein shall prevent the Trustees from adopting additional rules and regulations not inconsistent with or in conflict with the foregoing.

## Fund Two

### Pinpointing Fund Glaziers

**14.5**   **Purpose:**
The COUNCIL and A.G.M.A. agree to continue and maintain a jointly managed Pinpointing Fund.   Where pinpointing has been approved for a project, the EMPLOYER shall not be required to make contributions for Health & Welfare, Annuity, D.C. 21 Apprentice, National Apprentice, I.U.P.A.T. Pension and the HRA Fund for that project.   Apprentice hours shall be pinpointed for Health & Welfare, Annuity, D.C. 21 Apprentice, National Apprentice, and the HRA Fund.   The I.U.P.A.T. Pension shall not be pinpointed in the case of Apprentices.

**14.6**   **Amount:**
The EMPLOYER agrees to pay into the Pinpointing Funds in the following amount per hour paid; Effective May 1, 2018,  two dollars and sixty Cents ($2.60) per hour worked.

34

## ARTICLE 15

### Industry Advancement Funds
### Fund One (Glazier Zones 1thru 5, Painters Zones 2,3,4,
### Drywall Finisher Zones 1 thru 5, Wallcoverers Zones 2,3,4)

15.1 **Recognition:**
The Industry Advancement Funds (I.A.F.) shall be established for the sole purpose and intent of promoting, advancing and protecting the industry and shall be managed solely by the individual Associations. No part of the Funds or property of the I.A.F. may be used to undermine the COUNCIL, its Collective Bargaining Agreements, and its right to represent EMPLOYEES, to encourage or support litigation against the COUNCIL or to support EMPLOYER negotiations with the COUNCIL for successor Collective Bargaining Agreements.

15.2 **Payments to I.F.C.A. I.A.F.**
**EMPLOYERS covered by the I.F.C.A. – District Council Collective Bargaining Agreement shall make contributions to the I.F.C.A. I.A.F. at the rate of $.20 per hours worked.**

15.3 **Payments to A.G.M.A. I.A.F.**
EMPLOYERS covered by the A.G.M.A. – District Council Collective Bargaining Agreement shall make contributions to the A.G.M.A. I.A.F. at the rate of $.30 per hours worked.

15.3.1 **A.G.M.A. Representation: (For Glaziers ONLY)**
EMPLOYEES covered herein shall not be permitted to work for an EMPLOYER unless such EMPLOYER shall first agree to be bound by the provisions of a Collective Bargaining Agreement with District Council 21. EMPLOYERS that agree to be bound by A.G.M.A. – District Council 21 Collective Bargaining Agreement shall be deemed to have authorized A.G.M.A. to represent such EMPLOYER as its collective bargaining representative in contract negotiations and for all matters relating to such Agreement.

15.4 **Payments to P.D.C.A. - Harrisburg**

15.4.1 **Industrial Work**
Each Employer shall make a contribution to the Delaware Valley Industrial Painters Alliance, Inc. Industry Advancement Fund (Industry Advancement Fund) at a rate

35

of Two Cents ($.02) for each hour worked by each employee who is engaged in performing industrial painting or coating work of any kind including, without limitations, bridge, tank or structural steel painting or coating services. The Administrator of the Funds shall collect the Industry Advancement Fund monies and remit these contributions to the Delaware Valley Industrial Painters Alliance, Inc. (DVIPA) on a monthly basis together with a report detailing the amounts collected from each Employer.

This Industry Advancement Fund shall be established and administered by the DVIPA, which shall use monies from this Fund to pay for programs and expenses intended to support and advance the Industrial Painting and Coating Industry. The Industry Advancement Fund also shall be used to pay the operating costs of the DVIPA, including expenses associated with the promotion of stability of relations between labor and management, conducting of safety campaigns, public relations campaigns, and education programs, the DVIPA's costs of collective bargaining, the DVIPA's cost of the representation it receives in the adjustment of grievances and in arbitration, and such other programs and expenses as will be beneficial to the Industrial Painting and Coating industry.

### 15.4.2  Commercial Work

Each Employer shall make a contribution to the Painting And Decorating Contractors of America, of Harrisburg, Industry Advancement Fund (Industry Advancement Fund) at a rate of Two Cents ($.02) for each hour worked by each employee who is engaged in performing commercial painting or coating work of any kind including, without limitation, painting or coating of office buildings, warehouses, schools, hospitals, malls, apartment buildings, hotels, motels and restaurants. The Administrator of the Funds shall collect the Industry Advancement Fund monies and remit these contributions to the Painting and Decorating Contractors of America, of Harrisburg on a monthly basis together with a report detailing the amounts collected from each Employer.

This Industry Advancement Fund shall be established and administered by the P.D.C.A. -- Harrisburg, which shall use monies from this Fund to pay for programs and expenses intended to support and advance the Commercial Painting and Coating Industry. This Industry Advancement Fund also shall

36

be used to pay the operating costs of the P.D.C.A. – Harrisburg, including expenses associated with the promotion of stability of relations between labor and management, conducting of safety campaigns, public relations campaigns and education programs, the P.D.C.A. – Harrisburg's costs of collective bargaining, the P.D.C.A. – Harrisburg's cost of the representation it receives in the adjustment of grievances and in arbitration, and such other programs and expenses as will be beneficial to the Commercial Painting and Coating Industry.

15.5    **Payments to P.D.C.A. – N.E. PA**
EMPLOYERS covered by the P.D.C.A. N.E. PA – District Council Collective Bargaining Agreement shall make contributions to the P.D.C.A. N.E. PA I.A.F. at the rate of $.25 per hours worked.

15.5.1   D.V.I.P.A. Industrial and Bridge Painting Fund
Each Employer shall make a contribution to the Delaware Valley Industrial Painters Alliance, Inc. (Industry Advancement Fund) at a rate of $.20 for each hour workers by each EMPLOYEE who is engaged in performing industrial painting or coating work of any kind including, without limitation, bridge, tank, or structural steel painting or coating services. The Administrator of the Funds shall collect the Industry Advancement Fund monies and remit these contributions to the Delaware Valley Industrial Painters Alliance, Inc. (DVIPA) on a monthly basis together with a report detailing the amounts collected from each Employer.

15.6    **Payments to Keystone Contractors Association**
EMPLOYERS covered by the Keystone Contractors Association – District Council Collective Bargaining Agreement shall make contributions to the Keystone Contractors Association I.A.F. at the rate of $.09 per hours worked.

## Fund Two (Painters Wallcoverers Zones 1 & 5)

15.7    The Employers shall establish and administer an Industry Advancement Program for the A.M.P.D. and all Independent Employers and Associations party to this Agreement.

15.8    The purpose of the Industry Advancement Program is to provide for activities which will promote and benefit the Painting, Decorating, Wallcovering and Drywall Finishing industries. Such activities may include but shall not necessarily be limited

37

to: accident prevention; education; research into new methods and materials; public relations; industry relations with third parties including engineers, architects, government officials, suppliers, manufacturers, and insurance and bonding representatives; labor relations including, but not necessarily limited to: Collective Bargaining negotiations, grievance proceedings, and arbitration: management participation in Pensions, Health and Welfare, and other similar Funds; market development; standardization of contracts and specifications.

15.9    The activities of the Industry Advancement Program shall be financed by a Fund consisting of monies contributed to the EMPLOYERS by each and every EMPLOYER who is party to this Agreement.

15.10   The EMPLOYER agrees to contribute to the EMPLOYEES fifteen cents ($0.15) for each and every hour worked by each and every one of its EMPLOYEES covered by this Agreement. Such contribution shall be made to the EMPLOYERS monthly on or before the 30th day of the following calendar month and shall be accompanied by a written report which shall be in a form approved by the EMPLOYERS.  See Article 13, Section 13.13.1, Funds Report.

15.11   If an EMPLOYER fails to make a contribution required by this Article, the Union shall have the right aside from any other legal remedies available to it, to direct the EMPLOYEES of such EMPLOYER covered by this Agreement to refrain from working for such EMPLOYER as long as such EMPLOYER is in default under this Article.

15.12   The I.A.P. Funds, at the regularly scheduled Joint Trade Board meeting, will present, for discussion, joint programs for the furthering the Trade industry(s) covered by this Agreement.

15.13   All painting contractors when performing industrial or bridge painting work, should operate under the terms of the D.V.I.P.A. Agreement and should make their Industry Fund contributions to the D.V.I.P.A.  I.A.F.

# ARTICLE 16

## District Council 21 Apprenticeship
## And Journeyperson Training

16.1 **Standards:**
The Finishing Trades of the Mid-Atlantic Region (hereinafter referred to as the FTI) is hereinafter recognized as the official training provider for IUPAT District Council 21. All documents regarding training issues are created and approved by the staff and Trustees of the FTI. Nothing in these documents shall be interpreted as being inconsistent with existing or subsequent Collective Bargaining Agreements establishing higher standards. In the event of a conflict, the higher standards, whether in the Apprenticeship Documents or the Collective Bargaining Agreement, shall prevail.

16.2 **EMPLOYERS participation:**
All EMPLOYERS must participate in the Apprenticeship Program and will employ apprentices as directed by the Trustees of the FTI. It is further agreed that all apprentices must attend training classes as part of their Apprenticeship Training Program. The schedule for these classes shall be determined by the FTI.

16.3 **Training Fund:**
The FTI will consist of an equal number of members designated by the Associations and by District Council 21, with the right of each party to replace any of their designees. Refer to "Recognition" clause – Article 1.

The FTI shall be authorized to determine expenditures necessary for the proper functioning of the Training Program, such as a Coordinator, instructors, materials, equipment and such other items for personnel and training as deemed necessary.

Revenue for the Training Fund shall be provided by a contribution of the then current amounts provided herein per hour, per EMPLOYEE, paid by EMPLOYERS. This Payment shall be made in accordance with Article 13, Section 13.13.1

The FTI Trustees are hereby authorized to adopt such rules and procedures as it deems necessary and same shall bind all signatories to this Agreement.

39

**16.4**     **Ratio of Employment:**
Consistent with proper supervision, training, safety, and
continuity of employment throughout the Apprenticeship, the
ratio of apprentices to journey workers shall be one apprentice to
three journey workers (1 to 3) of fraction thereof, or at a higher
ratio determined by District Council 21

**16.4.1**   **\*Fraction thereof is defined as:**
"The EMPLOYER may place one Apprentice on the job-site for
one, two or three journey workers'; two apprentices for four,
five or six journey workers'; three apprentices for seven, eight
and nine journey workers, and follow this procedure thereafter."

**16.5**     No EMPLOYER shall be permitted to employ an apprentice
unless approval is given by the Training Fund upon application.

**16.6**     <u>**Apprentice Wage Rates:**</u>

In subsequent years of this contract, Apprentices will be given the
appropriate percentage of the Journeypersons total increase based on the
current term of the Apprentice.   Distribution of the increase is determined
by the Union.

**Glaziers:** \*All Zones (1-5)
Term 1 = 50%
Term 2 = 60%
Term 3 = 70%
Term 4 = 85%

Glazier Apprentices shall advance to each next term on the anniversary of
their start date so long as the requirements stated in the FTI Standards
have been met.

**Drywall Finishers:** \*All Zones (1-5)
Term 1 = 53%
Term 2 =65%
Term 3 = 80%
Term 4 = 90%

**Painters, Wallcoverers:** \*All Zones (1-5)
Term 1 = 53%
Term 2 = 65%
Term 3 = 80%
Term 4 = 90%

*All zones are defined in Article 5.

**16.7**    District Council 21 Apprenticeship Training and Journeyperson
Education for Glazing/A.G.M.A. Contributing EMPLOYERS:

In order to accomplish the goals, objectives and expectations of
the settlors of the Training Fund [the District Council and the
various Associations], the Trustees are directed to use part of the
trust assets to promote Apprenticeship and employment within
the glazing industry.  Efforts are needed to increase the number
of qualified individuals applying to be Apprentices and
Journeypersons in the glazing industry, and consequently , the
Trustees are directed to establish programs to promote and
communicate the advantages of being an Apprentice and
Journeypersons in the glazing industry, to display the skills
taught in the glazing industry, and to promote to the general
public both the training provided by the Training Fund, and the
benefits and rewards to the public of that training.

In order to effectuate this policy, the Trustees of the Training
Fund are directed to establish a suitable written expense policy
governing the expenditure of funds to promote these purposes.
The Trustees shall provide copies of such written expense
policies to the settlors, and all parties to this Collective
Bargaining Agreement.

It is also the understanding of the parties to this Agreement that
the funds contributed by signatory EMPLOYERS to the
Finishing Trades Institute and the Training Fund shall not be
used to train Apprentices or Journeypersons who will be
employed by EMPLOYERS in the Glazing Industry that are not
signatory to a Collective Bargaining Agreement providing for
contributions to the Finishing Trades Institute and/or the
Training Fund shall adopt and implement a Scholarship Loan
Agreement Program which will require Apprentices and
Journeypersons employed by signatory EMPLOYERS to repay
the cost of training, either by service following training within
the Union sector on the industry, or by actual repayment of the
cost of training if the individual goes to work for a non-
signatory EMPLOYER in the Glazing Industry.  The cost of
training shall include the reasonable value of all Finishing
Trades Institute and Training Fund materials, facilities and
personnel utilized in training.

41

## ARTICLE 17
## State Safety Code Compliance

17.1    All tools and equipment will meet and be used in conformity with all provisions of Federal Safety Codes.

17.2    EMPLOYEE willfully misusing said equipment, especially personal protective equipment designed for his or her safety, could be discharged by the EMPLOYER pending notification of his or her Union.

17.3    (For Glaziers Only) First Aid Kits shall be provided by the Employer in every Company vehicle, gang box and shop.

## ARTICLE 18
## Compensation Insurance Coverage

18.1    **Compensation Insurance Coverage:**
EMPLOYER shall be responsible for providing Workers' Compensation Insurance to his EMPLOYEES pursuant to the provisions of the Workers' Compensation Act of Pennsylvania and in any other state in which the EMPLOYEE may be working.

18.2    **Notification of Injury:**
All EMPLOYERS must, when a worker is injured as a result of an accident while working on a job, notify District Council No. 21 within 24 hours thereafter giving full report as to when, where and the extent of injuries sustained insofar as the facts will permit.

18.3    The Foreman or Steward shall notify the COUNCIL and their EMPLOYER of any accident on the job. If for any reason there is not a Foreman or Steward on that job the member who is present on that job must notify the COUNCIL and their EMPLOYER

18.4    **Work Injury: (Zones 1, 5 & 6 - Glaziers Only)**

Any EMPLOYEE seriously injured on the job must be accompanied by either an EMPLOYER, designated employee or member employee for medical treatment as expeditiously as possible.  The accompanying employee shall be paid for any time lost up to a regular day of pay.

42

A new Alternative Dispute Resolution Workers' Compensation Program (ADR Program) shall be established and language drafted that is mutually acceptable to both parties at a later date.

## ARTICLE 19

## Acts, Relations, Rulings, Legal Jurisdiction

19.1    **Saving Clause**
Any Provisions here in this Agreement contained that are contrary to or held to be in violation of any Federal, State or Municipal law now in force and effect, or that may be hereafter enacted and effective, shall have no force and effect for the duration of such violation, it being intended, however, the remaining lawful provisions hereof shall be unaffected.

## ARTICLE 20

## Promotion for Better Journeypersons and Industries

20.1    It is agreed that the advancement of a better qualified journeyperson is to be promoted at all times.

20.2    It is agreed that a standing Industry Committee made up of Labor and Management be appointed and meet at such times that are mutually agreed upon to discuss joint problems of the Industries of Painting, Wallcovering, Drywall Finishing, and Glazing and to make such recommendations to the EMPLOYER Associations and the District Council.

20.3    An organized glazing journeyperson shall be defined as any individual who has experience in the glazing industry, has passed the required proficiency evaluation exam, and has been given final approval by at least one (1) labor and one (1) management Craft Committee member.  An "organized" individual shall be required to complete an OSHA 30 course within ninety (90) days of his/her acceptance.  The Craft Committee may require additional training for any or all organized journeypersons that it deems necessary.

20.4    **Drywall Finishers ONLY:** A program shall be offered by the District Council (or Local Union) Apprenticeship Program for advanced or upgraded journeyperson training for all journeypersons working under this Agreement.  Journeypersons

43

shall be required to take such courses in accordance with the following rules:

**20.5**   **Drywall Finishers ONLY:** An organized drywall finisher journeyperson shall be defined as any individual who has experience in the drywall finishing industry, has passed the required proficiency evaluation exam, and has been given final approval by at least one (1) labor and one (1) management Craft Committee member. An "organized" individual shall be required to complete an OSHA 30 course within one hundred and eighty (180) days of his/her acceptance. The Craft Committee may require additional training for any or all organized journeypersons that it deems necessary.

## ARTICLE 21

## More Favorable Terms

**21.1**   **More Favorable Terms:**
The COUNCIL agrees that should it enter into any Agreement with an individual EMPLOYER or group of EMPLOYERS to provide wages or working conditions more favorable to the EMPLOYER than are included in this Agreement, such more favorable wages and working conditions shall automatically be included in this Agreement.

## ARTICLE 22

## Drug & Alcohol Policy

**22.1**   The Union and the Employer agrees that a committee made up of both Union and EMPLOYERS, will meet for the purpose of establishing an industry wide Drug & Alcohol Policy with mandatory testing. If such a policy is established, the Union will take all necessary steps to make its membership aware of this policy in advance of its implementation. There is no set time limit for establishing this Policy.

**Painters & Wallcoverers ONLY: See Article 23.23.2.**

**Drywall Finishers ONLY: See Article 25.18.**

44

# SPECIFIC PROVISIONS & CONDITIONS FOR ALL CRAFTS BY ZONES

**Article 23 through 26 take precedence over and supersede any conflicting provisions in Articles 1 through 22 when EMPLOYERS are employing members of the foregoing trades in the foregoing zones**

## Article 23- PAINTER, WALLCOVERERS, ZONES 1 & 5

**23:      SPECIFIC PROVISIONS & CONDITIONS FOR EMPLOYING PAINTERS & WALLCOVERERS IN ZONES 1 & 5 ONLY.** Paragraphs 23.1.11, 23.1.13.1 & 23.1.16.8 only apply to those EMPLOYERS who regularly employ the foregoing trades in the foregoing zones and belong to the Association which negotiated with the Union over the provisions in Article 23.

23.1    **Scope of Work:**
**Painters:**
The work jurisdiction of the Painters and Decorators shall include but not necessarily be limited to the description provided in the I.U.P.A.T. General Constitution, but will also include all types of coatings in conjunction with painting, waterproofing, masonry restoration, metal polishing/refinishing, decorating, sealing, caulking, lead removal and/or abatement, encapsulating, lining, fire-proof, etc.; including any and all preparations, such as cleaning, patching, caulking, blasting, stripping, and/or all removal necessary to apply any and all coatings interior and/or exterior.

23.2    **Tools and Equipment:**
All tools, material and equipment including the debris caused thereby, pertaining to the work and the preparation thereof which is covered under this Agreement, including but not limited to compressors, hoppers, power tools, and all mechanical and hand tools used for surface preparation and surface finishing, the loading and unloading thereof, shall be handled and/or performed by EMPLOYEES covered by this Agreement.

45

**23.3**    **Wallcoverer:**
The work jurisdiction of the Wallcoverer shall include but not necessarily be limited to the description provided in the I.U.P.A.T. General Constitution but will also include all papers, vinyl's, flexible woods, fabrics. Borders, metals, installed on walls, ceilings and columns installed, stretched and stapled on adhesives of any kind.  Installation of fabric covered panels made of plastic and wood pre-finished products of micore, fiberglass, etc. acrovyn and various plastic wallcoverings including wainscot caps, corner moldings and accessories.  Wall carpets installed with adhesives, stretched, stapled or adhered by any method.

## Work schedule

**23.4**    **Hiring of EMPLOYEES**

**23.4.1**    **Referrals and Registration of EMPLOYEE:**
The Council shall register and refer all qualified applicants for employment for the painting, decorating, and wallcovering industries and all work covered under this Agreement. The District Council will be the first source of referrals for qualified applicants for employment and will furnish the EMPLOYER with the required number of qualified EMPLOYEES needed that are registered on the out-of-work list posted at the District Council.

**23.4.2**    **Non-Discrimination:**
The selection of qualified applicants for referral to jobs shall be on a non-discriminatory basis and shall not be based on, or in any way affected by, Union membership, by laws, regulations, constitutional provisions or any other aspect or requirements, except as outlined in this Agreement.

**23.4.3**
The EMPLOYER and the Union agree that there shall be no discrimination against EMPLOYEES or applicants in violation of federal, state or municipal statutes.

**23.4.4**    **Special skills:**
When the EMPLOYER requests a qualified applicant with special skills and abilities, the Union shall refer, to the best of their ability, such EMPLOYEE who is qualified to perform the work.

46

**23.4.5    Rehire of steady EMPLOYEE:**
The EMPLOYER shall have the right to hire back at any time, steady EMPLOYEE. These designated EMPLOYEES will be registered with the Union once a year at the beginning of the year. Recall to work of these EMPLOYEES will not count as a turn in the 50/50 hiring system now in place, but all steady EMPLOYEES must register with the Union when they are laid off and rehired.

**23.4.6    Members Refusal to work:**
The Union will not be held responsible for any member's refusal to return to work for any previous EMPLOYER.

**23.4.7    Priorities in employment:**
The EMPLOYER agrees that priority in employment shall be given in the following manner.

**23.4.7.1**  EMPLOYEES previously employed by that EMPLOYER.

**23.4.7.2**  EMPLOYEES who have been employed within the industries by any EMPLOYERS having a collective Bargaining Agreement with the District Council 21 A.M.P.D, A.G.M.A, I.F.C.A, PDCA and any other/ EMPLOYER Association recognized by this Union.

**23.4.7.3**  EMPLOYEES otherwise employed in the industries and lastly to persons competent and qualified for employment.

**23.4.8    50/50**
It is understood and agreed that the hiring system will be a "shared hiring system" of 50/50 or 1 to 1. The first qualified member selected by the EMPLOYER will be referred by the District Council from the "out of work register." The next qualified member to be employed by said EMPLOYER will be selected by the District Council from the "out of work register" and will continue so on in an alternating manner for all hired EMPLOYEES, qualifications prevailing.

**23.4.9    Reject EMPLOYEE:**
The EMPLOYER shall have the right to reject an applicant for employment as long as it does not interfere with the member's rights and responsibility as a member of the I.U.P.A.T.

**23.4.10**   **Exhaustion of out of work list:**
If the registration list is exhausted and the District Council is unable to refer qualified applicants for employment to the EMPLOYER within 24 hours after receiving such request, (weekends and holidays exempt) the EMPLOYER shall be free to secure applicants from any sources available, without the referral procedure. The EMPLOYER must notify the District Council promptly of the names, addresses and Social Security numbers of any such hired EMPLOYEES.

**23.5**   **Reporting of jobs:**
The EMPLOYER must report to the District Council the start and/or re-start of any job before EMPLOYEES are sent to said job. The EMPLOYER must submit to the Council, a monthly report listing all new jobs, new EMPLOYEES and termination of EMPLOYEES.

**23.6**   **Work Day:**
The regular workday is to be any 8 hours between 6 A.M. to 6 P.M.  However, when a make-up day is desired, a 10-hour day may be worked when mutually agreed.  Present EMPLOYEES on the job will have first option to work.

**23.6.1**   **Make-Up Day Exterior:**
Due to inclement weather during the normal work week and through no fault of the Contractor, a makeup day (Saturday) may be used. The make-up day will be paid at straight time rate.

**23.6.2**   **Make-Up Day Interior:**
A make-up day may be used when due to no fault of the Contractor and mutually agreed upon between the EMPLOYER and District Council 21. Wages will be paid at straight time rate. Prior notice must be given to District Council 21.

**23.6.3**   **Work Week:**
The work week is forty (40) hours. The flexible work week will be Monday through Saturday.

**23.7**   **Overtime:**
Time worked in excess of eight hours per day (except when the ten-hour work day option is utilized) or more than 40 hours per week shall be paid at the overtime rate. This applies to Saturday and Sunday work, which shall be paid at the overtime rate except, when Saturday is being utilized as a make-up day.

48

**23.7.1**   **Overtime Rate:**
All overtime will be paid at time and a half.

**23.7.2**   **Holiday Rate:**
Any hours worked on holidays will be paid at double time.

**23.8**   **Four Tens:**
When the ten-hour day option is used, then all hours over ten hours in one day shall be paid at time and a half. Friday may be utilized as a make-up day; however, the employee may turn down working the make-up day.

**23.9**   **Saturday-Sunday Work:**
When Saturday and/or Sunday is required, the EMPLOYER shall notify the COUNCIL before 4:00 P.M. on the Friday preceding, with the understanding that the EMPLOYER be permitted to notify after that hour if an emergency came up after 4:00 p.m. If the EMPLOYER'S client fails to notify him to proceed with work on Saturday and/or Sunday in time for the EMPLOYER to so notify the COUNCIL, then the EMPLOYER shall fax the notice to the office of the COUNCIL, or work will not proceed.

**23.10**   **Payment of Fringes and Wages**
Wages shall be paid weekly. No more than five (5) days shall be retained by the EMPLOYER at any time. EMPLOYEES shall be paid on the job site. Check to be mailed if EMPLOYEE is absent. A new EMPLOYEE has the option to request and obtain an advance against retained earnings during the first week of employment. Whether wages are paid cash or check, EMPLOYEES shall be furnished with forms, e.g., check stubs, on which shall be noted worked and deductions made for the period.

**23.11**   **Bad Checks:**
When an EMPLOYEE is paid with a bad check, the EMPLOYER shall be made to pay cash thereafter for the duration of this Agreement. The EMPLOYEE will be paid the hourly rates until the EMPLOYER rectifies this offense.

**23.12**   **Fringe Calculations:**
The EMPLOYER agrees to pay fringes for each hour paid up to eight (8) hours and after eight (8) hours, fringes on each hour worked.

49

**23.13    Notice of Layoff:**
Notice of layoff shall be given one (1) hour before quitting time. When EMPLOYEE is laid off or quits, his check may be mailed at the next regular pay period.

**23.13.1   Layoff for Alleged Cause:**
When an EMPLOYEE is laid off by the EMPLOYER for alleged cause and is replaced by another EMPLOYEE on the same job, EMPLOYEE shall immediately report the matter to the Council for investigation. The matter will be handled under Article 11.

**23.14    Holidays:**
The holidays to be observed are: New Year's Day, Memorial Day, Independence Day, Thanksgiving Day, and Christmas Day. No work may be performed on Labor Day. Time worked on these days will be worked at the overtime rate.

## Wage provision

**23.15    Foreman:**
When three (3) to eight (8) EMPLOYEES (Effective January 1, 2018) are employed on a job one EMPLOYEE will be designated foreman and shall receive $1.00 above the then current base rate. When nine (9) to nineteen (19) EMPLOYEES are employed on a job the foreman shall receive $2.00 above the then current base rate.  When there is more than twenty (20) EMPLOYEES on a job a foreman shall then receive $3.00 above the then current base rate.

**23.15.1   EMPLOYEE Deductions:**
The EMPLOYER shall deduct the sum covering the Vacation Fund, $1.00 per hour, and $.20 per hour P.A.C. Fund and $.03 per hour for the DC # 21 Scholarship Fund (which are included in the Schedule A rates) from the net weekly pay (i.e. after taxes) and make a notation of such deduction on the EMPLOYEE'S pay envelope or check stubs. These deductions and payments are not applicable to overtime work.  These monies deducted shall be paid in accordance with Article 13 of this Agreement.

**23.15.2   Automatic Reduction:**
The rate of wages will be automatically reduced if it is mutually agreed that a portion of these increases be allocated to payments into the Various Funds. Payments for fringe benefits are provided under Article 13.

50

**23.15.3   Night work:**
Time worked on night work shall be paid at One Dollar ($1.00) per hour in addition to the basic rates.

**23.15.4   Show Up Time / Minimum Hours:**
When an EMPLOYEE reports to either the shop or a job site and is unable to work due to circumstances beyond the control of the EMPLOYER, then the EMPLOYEE shall be paid two (2) hours "show up time". Should that EMPLOYEE begin working, then EMPLOYEE shall be paid for the actual time worked.

**23.15.5   Pyramiding:**
There shall be no pyramiding of Premium Rates.

**23.15.6   Higher rates:**
It is agreed that when EMPLOYEES are working in a Zone where higher rates are paid; COUNCIL members are to be paid the higher rate.

**23.15.7   Room & Board:**
EMPLOYERS are to pay full board and fare to and from work out of town where such men do not return home daily. Men shall furnish itemized list of expenses to EMPLOYER. Pay for travel time not to exceed eight (8) hours of twenty-four (24) hour day.

**Defined Rates:**

**23.15.8**          **Industrial Rate**

**23.15.9**          **Bridge Rate**

**23.15.10**         **Commercial Premium Rate:**
                     **Steel, Spray, Epoxy, HiPAC-**
                     **Coatings, Catalyzed Epoxy,**
                     **Urethanes, Removers. Swing, Basket**
                     **Sandblasting,**


**Zone 1        $ 1.25 per hour above base rate**
**(Commercial Work only)**

**23.16   Parking for Wallcoverers Only:** (Zone 1)
The EMPLOYER will pay for parking the first day on the job and the last day on the job with parking receipts to be submitted.

## Work Rules Painters & Dry Wall Finishers

**23.17**   **Clothing Protection:**
EMPLOYER shall provide suitable space on the job site for the safeguarding of clothing of EMPLOYEES. The EMPLOYERS shall furnish to all EMPLOYEES protective apparel necessary to safeguard EMPLOYEES from health hazards, as prescribed for by Federal regulations

**23.17.1**   **Personal wash-up Facilities:** **(Industrial & Bridge only)**
Water and soap shall be provided to EMPLOYEES for use at noon time and quitting time; for each time they shall have five (5) minutes grace for washing up. Clean up time to be fifteen (15) minutes for EMPLOYEES working on the outside of a job. This time is to be used for personal clean up only.

**23.17.2**   **Furnishing of Equipment:**
EMPLOYER shall furnish and deliver all equipment for the use of EMPLOYEES.

**23.17.3**   **Cause for Dismissal:**
It shall be the responsibility of the EMPLOYEE to use all safety equipment provided by the EMPLOYER. Violators shall be subject to immediate dismissal for failing to do so.

**23.17.4**   **EMPLOYEES Tools: (All Crafts except Glazers)**
EMPLOYEES shall furnish putty knives and dusters and will furnish and wear clean white overalls on commercial and residential work.

## Work Rules Wallcoverers

**23.18**   **EMPLOYER Obligation:**
EMPLOYER shall furnish and deliver to and from job, all materials, stock, paper, paste, ladders, pasteboards, trestles and straightedges. EMPLOYER shall furnish sizing brushes and rollers.

**23.18.1**   **Non-Discrimination:**
EMPLOYERS shall not discriminate in any manner against an EMPLOYEE who chooses not to carry tools. EMPLOYEES may carry tools on a voluntary basis.

**23.18.2  Tool Restriction:**
Tools shall consist of no more than five (5) boards; four (4) trestles, one straight edge and one four-foot ladder. No adhesive or wallcovering shall be carried. EMPLOYERS shall also furnish above mentioned tools.

## **Work definitions Painters**

**23.19.1  Bridge:**
All bridges that span water, railroad bridges, and bridges over canyons, viaducts and appurtenances.

**23.19.2   Industrial:**
Refineries, tanks, hangers, ceilings over 60 feet, nuclear plants, steel mills, towers, steeples, dams etc. and or any work that would require cables as a platform to work on.

**23.19.3   Commercial:**
All office buildings, warehouses, schools, hospitals, museums, theaters of any kind, malls, department stores, food stores, supply houses, depots, strip malls, churches, retirement homes, apartment buildings, condominiums, hotels, motels, restaurants, commercial culinary facilities, manufacturing facilities, machinery and equipment, conveyer systems and stadiums.

**23.19.4  Hours Enhancement Program:**
The organizing, Hours Enhancement Program and maintenance of work language and rates of pay shall not be utilized on any category of work, for any trade, where the work historically was being performed by members of the Union and can be maintained by the Employer and the Union at the established rates and conditions. There will be no geographical boundaries for this program.

**23.19.4.1**
It will be the Employers responsibility to notify the Union and each current employee prior to being assigned on that project that they will be working for a reduced wage rate.  Along with the Employer the Union will also notify members being dispatched to that job.  It is agreed that Employers signatory to the Collective Bargaining Agreement will in no way discriminate, intimidate, threaten any disciplinary action such as job loss and/or use as a condition of employment against all present and future Employees refusing to work under the guidelines of this Article.

53

**23.19.4.2**

The organizing, Hours Enhancement Program and maintenance of work language is to be used to organize new work opportunities, recover work formerly performed by Union Members and Employers and/or to maintain present work opportunities for our members.

**23.19.4.3**

Any Employer signatory to this Collective Bargaining Agreement shall notify the Council not less than forty-eight (48) hours prior to the bidding of an "Hours Enhancement" project, so as to provide the Council with the opportunity to investigate whether the project in question meets the criteria as an Hours Enhancement Program project.

**23.19.4.4**

In the event the Council believes that an Employer has improperly designated a job as an "Hours Enhancement" project, then the Council may submit a grievance pursuant to the Grievance Arbitration Procedure set forth in this Collective Bargaining Agreement. With the exception of the added Section 23.19.4.5 in this Article which will rule as to the cost of the arbitration and litigation.

**23.19.4.5**

The burden of proof in any arbitration concerning the applicability of the Hours Enhancement Program shall be on the Employer to establish that the criteria for the Hours Enhancement Program on the project, has been met. The parties will split the cost of Arbitration. Further, the Employer shall pay to the Employees who performed the work on said project the full wage and benefit levels provided for in this Collective Bargaining Agreement.

**23.19.4.6**

Terms and Conditions for the Hours Enhancement Program shall be as follows:
- o   There should be no restriction on tools or production.
- o   Spray rate will be negotiated with the Council.
- o   Work week shall be Monday through Sunday, inclusive. All work in excess of eight (8) hours per day or forty (40) hours per week to be paid at time and one half (1 ½).

- o   Four (4) ten (10) hour days shall be allowed when needed.
- o   Apprentice ratio may be as low as one to one, one apprentice for every journeyperson. This ratio should never be higher than three to one on any project, unless the needed apprentices are not available.

**23.20    Wages & Benefits:**
The basic wages and fringe benefit(s) levels for the "Hours Enhancement Program" shall be:

| Wages: | Benefits: |
|---|---|
| 80% of Wages | Full |
| 90% of Wages | Full |

**23.21    Job Steward, Painters and Wallcoverers:**

**23.21.1    Place & Appointments:**
The EMPLOYER agrees that a District Council Representative may place, then appoint, a working Job Steward at the start of any job lasting **forty (40)** man days or more; and the EMPLOYER will be given three (3) names to choose from when a Steward is to be placed and then appointed on a job site. A Job Steward will be appointed by the District Council on all other projects from the EMPLOYEES on the job.

**23.21.2    Duties of:**
The EMPLOYER will recognize the Steward in the respect that the Steward will check all the EMPLOYEES on the job to see that they have been hired per this Agreement.
The Steward shall keep an accurate daily record of the names, District Council Members' actions and the time of each and every member on his particular job and will report to the Union on a weekly basis

**23.21.3    Pay Scale & Removal Of:**
The Job Steward shall not be removed for performing their duties. COUNCIL is to be notified 24 hours before a Steward is removed from the job. The Charge person and the Steward shall be the first persons to return to work when the job is resumed. The Steward will receive the highest journeyperson's wage rate on the job. The Steward will remain on the job until completion thereof if qualified in the opinion of the EMPLOYER and the COUNCIL.

55

If a job is shut down temporarily and the EMPLOYEES are sent to another job, the Steward will also be given work.

**23.21.4  Dispute over Layoff:**
Steward, if laid off contrary to Sec. 23.1.24.3 of this Article, or any dispute relative to this clause, upon complaint of the Steward, case shall be referred to, and handle by, the EMPLOYER, COUNCIL Representative and Steward on the job and if not settled by these parties, case shall be referred to the grievance procedure herein provided for proper consideration and disposition.

**23.22  Shop Steward (Zone 1 Wallcovering only)**
The EMPLOYER will recognize the Shop Steward elected by the EMPLOYEES or appointed by the Union from among the steady EMPLOYEES, upon request, the EMPLOYER will furnish Shop Steward with a list of all EMPLOYEES in the specific shop and the location of all jobs where EMPLOYEES are working. The Shop Steward shall not be discriminated against in any way because of his performance of his duties as Shop Steward. The Shop Steward shall be the last EMPLOYEE laid off providing he is qualified for the job.

**23.23  Misc.**

**23.23.1  Time Sheet.**
Except for the purpose of gathering factual data for estimating purposes, Daily Time Sheets specifying the number of items performed per day for the purpose of task work shall not be allowed by EMPLOYER.

**23.23.2  Drug Policy:**
The Union, in cooperation with the AMPD, shall administer a drug testing program covering all bargaining unit members employed by AMPD Employers and any other Employer signatory to this Agreement.  To the extent that drug testing is required by an outside entity that employs our members as a condition for admission to their jobsite or facility or as a result of an accident, drug testing will be accepted without question.

In addition, the Union and AMPD will also institute drug testing for "cause" as determined by a mutual agreement of both parties. If both parties are not in agreement on a request by either party, drug testing of a member will not be performed.

56

In the case of an outside entity, the testing will be paid for by the Employer or the entity requesting the test.   When testing is mutually agreed upon by the signatory contractor and the Union, the cost will be split by the parties.  Results of these tests will be confidential between the designees of the Union and the Contractor requesting the testing.   If an Employee who is identified for testing refuses to comply, they will be deemed to have tested positive.

Any member who tests positive may not return to work for any signatory Employer until they have made arrangements and/or enrolled in a self-help program through ATAP.

**23.23.3   Credit Union:**
The Employer agrees to contribute for each Employee covered by this Agreement to the credit union, from the *Employee's net pay,* for members that so choose.  The amount shall be selected by each individual member.

**23.23.4   Private Residential Painting**

## ARTICLE I – SCOPE OF ADDENDUM

***Section 1.  Territorial Jurisdiction.***     The territorial jurisdiction for this addendum shall be the counties of Bucks, Chester, Delaware and Montgomery in Pennsylvania and the state of Delaware.  It is expressly understood by the parties that the provisions of this addendum are for the benefit of constituent members of the associations for the purpose of market recovery.  On or after six (6) months from the start of this addendum, the parties will discuss whether to continue or modify this addendum.  In evaluating the success or failure of this addendum in securing new markets for Union membership; the parties will consider, among other criteria the number of new members and the number of hours worked by the new union members and whether those numbers are stagnant or increasing at the time of evaluation.

***Section2.  Repaints.*** The scope of work covered for this addendum shall be new private residential construction, remodel and renovation, and repaint of private residential buildings working directly for the landlord, tenants, or owners with certificate of occupancy, or maintenance where the Union does not exist or has not existed. All projects must be approved by District Council 21 prior to the bid process.
Exclusions from the Scope of Work:
- any work under current CBA
- any work under a PLA

57

- any work under Prevailing Wage

**Section 3.  Job Registration.**  The Employer must register all jobs and contractor(s) they are working for through a form letter.  Additionally, all members must report where they are working.  Any member not reporting where they are working will be subject to charges.  Any Contractor found in violation of jurisdiction or registration guidelines shall be subject to charges by the JTB and fined if found guilty, no less than five thousand dollars ($5,000.00), and up to six (6) month suspension.

## ARTICLE II – FUNCTION OF MANAGEMENT

**Section 1.**              In the exercise of its functions of management, the Employer shall have the right to plan, direct and control operations of all its work, hire employees, direct the working forces in the field, assign employees to their jobs, discharge, suspend or discipline for proper cause (*proper cause for discharge includes but is not necessarily limited to incompetence, insubordination, habitual tardiness or absenteeism*) transfer, promote, demote, or lay off employees because of the lack of work, or for other legitimate reasons, require employees to observe the Employer's and/or contracting entities, rules and regulations not inconsistent with this Addendum, institute a fair and consistent drug policy, regulate the amount of equipment used and the use of equipment and other property of the Employer, decide the number of employees needed; provided, however, that the Employer will not use its rights for the purpose of discrimination against any employee.

**Section 2.**              On work as defined under Article I, the Employer and the IUPAT recognize the necessity of promoting efficiency and agree that no Local rules, customs or practices shall be permitted that limit production or manpower required to do the work and that no limitations shall be placed on the amount of work which an employee is performing during the work day.  No regulations of tools shall be interpreted or enforced in any way to prevent their use where required or necessary to perform an acceptable job in accordance with specifications of the appropriate agency and where all proper safety regulations are enforced.

## ARTICLE III – HIRING PRACTICES & ASSIGNMENT OF EMPLOYEES

This work is under an Addendum to the CBA.  Workforce must come from District Council 21.  The Employer may solicit employees from any source; given that the Employer reports new hires to the Union prior to starting work.

58

## ARTICLE IV – WAGES, FRINGES, SUBSISTENCE & WORKING CONDITIONS

The wages, fringes, subsistence and working conditions covered under this Addendum shall be as set out in the attached *"Schedules"*.

## ARTICLE V – HOURS OF WORK, SHIFT WORK AND HOLIDAYS

***Section 1.***          The pay period shall be any consecutive, seven-day period / any forty (40) hours designated by the Employer. All hours worked over 40 hours within each seven (7) day pay period shall be paid at the rate of one and one half the regular rate of pay.

***Section 2.***          The following days should be considered holidays, and any work performed on these days shall be paid at the rate of one and one half the regular rate of pay: July Fourth, Memorial Day, Christmas Day and New Year's Day. No work to be performed on Labor Day.

***Section 3.***          All employees shall be paid weekly at least 30 minutes prior to the end of the work day. Not more than three (3) days' pay shall be held back for the period between the close of the pay period and pay day. A statement of earnings and deductions shall accompany the pay. Employees shall be notified, and check may be mailed.

## ARTICLE VI – ACCESS TO JOBS

The Employer agrees that the International Representative and/or Local Representative of the District Council or Local Union shall have access to all jobs of the Employer subject to customer's rules and regulations.

## ARTICLE VII – UNION SECURITY

***Section 1.***          All present employees who are members of the IUPAT on the effective date of this Addendum or on the date of execution of this Addendum, whichever is the later, shall remain members of the IUPAT in good standing as a condition of employment. All present employees who are not members of the IUPAT and all employees who are hired hereafter shall become and remain members in good standing of the IUPAT as a condition of employment on or after the 30th day following the beginning of their employment, or on or after the 30th day following the effective date of this Addendum, or the date of execution of this Addendum, whichever is later.

59

*Section 2.* In those instances where this Article may not be validly applied, the Employer agrees to recommend to all employees that they become members of the IUPAT and maintain such membership during the life of this Addendum, to refer the new employees to the appropriate area Union Representative and to recommend to delinquent members that they pay their dues since they are receiving the benefits of this Addendum.

*Section 3.* After eight thousand (8,000) hours, Local members can enter our apprenticeship program. An Employer can approve through a sub-committee, the acceptance of an employee into our apprentice program. (year and rate of pay to be determined by the committee)

## ARTICLE VIII – DUES

*Section 1.* The Employer agrees to pay the Administrative Dues Check-Off in the amount of 3.5% of gross wages and $0.55 per hour in accordance with Article IV. The employees' Local dues will also be taken from the dues checkoff and remitted by District Council to the Local Union.

## ARTICLE IX – SAFETY

The Employer must abide by the Occupational Safety and Health Act of 1970, it shall be the exclusive responsibility of the Employer to ensure the safety of its employees and compliance by them with all safety rules contained herein or established by the Employer.

## ARTICLE X – SUCCESSOR CLAUSE

This Addendum, and any supplements or amendments thereto, hereinafter referred to collectively as "Addendum" shall be binding upon the parties hereto, their successors, administrators, executors, and assigns. In the event the Employer's business is, in whole or in part, sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceeding, such business and operation shall continue to be subject to the terms and conditions of this Addendum for the life thereof. It is understood by this provision that the parties hereto shall not use any leasing or other transfer device to a third party to evade this Addendum. The Employer shall give notice of the existence of this Addendum and this provision to any purchaser, transferee, lessee, assignee, etc., of the business operation covered by this Addendum or any part thereof. Such notice shall be in writing with a copy to the IUPAT at the time the seller, transferor or lessor executes a contract or transaction as herein described. The IUPAT shall also be advised of the exact nature of

60

the transaction, not including financial details.  In the event the Employer fails to require the purchaser, transferee or lessee to assume the obligations of this Addendum, the Employer, (including partners thereof), shall be liable to the IUPAT and to the employees covered, for all damages sustained as a result of such failure to require assumption of the terms of this Addendum, but shall not be liable after the purchaser, transferee or lessee has agreed to assume the obligations of this Addendum.

## ARTICLE XI – NON-DISCRIMINATION

The Employer and/or the IUPAT shall not discriminate against any person because of or on account of race, creed, color, national origin, sex, age, disability, marital status, sexual orientation or citizenship status in all employment decisions, including but not limited to recruitment, hiring, compensation, training, promotion, upgrading, demotion, downgrading, transfer, lay-off and termination, and all other terms and conditions of employment.

## ARTICLE XII – SUBCONTRACTING

The Employer shall not contract out or subcontract any work covered by this Addendum to any subcontractor or other person unless that subcontractor or other person is a party to a Collective Bargaining Agreement with a District Council or Local Union affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC, or has prior written approval by the Business Manager/Secretary Treasurer where the work is being performed.

## ARTICLE XIII – EQUIPMENT AND TOOLS

All tools and equipment with the exception of hand tools will be supplied by the Contractor.

## ARTICLE XIV – ADDENDUM QUALIFICATIONS

It is not the intent of either party hereto to violate any laws or any rulings or regulations of any Governmental authority or agency having jurisdiction of the subject matter of this Addendum, and the parties hereto agree that, in the event any provision of this Addendum is held to be unlawful or void by any tribunal having the right to so hold, this Addendum, on proper notice from either party, shall be reopened for the sole purpose of amending such provision or provisions, with the understanding that the remainder of the Addendum shall remain in full force and effect.

## <u>DISTRICT COUNCIL 21 COLLECTIVE BARGAINING</u><br><u>ADDENDUM</u>

### <u>PRIVATE RESIDENTIAL PAINTING</u>

#### WAGE AND FRINGE BENEFIT PACKAGES

WAGES:

| | |
|---|---|
| Tier 1 | $16.00 per hour |
| Tier 2 | $18.00 per hour |
| Tier 3 | $20.00 per hour |
| Tier 4 | $22.00 per hour |
| Tier 5 | $24.00 per hour |

Wage Tier at hiring will be determined by the Employer.

BENEFITS:

| | |
|---|---|
| Health & Welfare Fund | $8.30 per hour |
| Annity Fund | $1.15 per hour |
| DC Apprentice | $ 0.35 per hour |

Article 24-PAINTERS, WALLCOVERERS, DRYWALL
FINISHERS, ZONES 2, 3, 4

**24      SPECIFIC PROVISIONS & CONDITIONS FOR
EMPLOYING PAINTERS, DRYWALL FINISHERS &
WALLCOVERERS IN ZONES 2 & 3 ONLY.** Paragraphs
24.8.4, 24.16.1, 24.16.2 & 24.17 only apply to those EMPLOYERS who
regularly employ the foregoing trades in the foregoing zones and
belong to the Association which negotiated with the Union over the
provisions in Article 24.

**24 (A)   SPECIFIC PROVISIONS & CONDITIONS FOR
EMPLOYING PAINTERS, DRYWALL FINISHERS &
WALLCOVERERS IN ZONE 4 ONLY.** Paragraphs 24.7.3(A),
24.7.4(A), 24.7.6(A), 24.8.1(A), 24.8.3(A), 24.8.6(A), 24.8.9(A),
24.9.6(A), 24.18(A), & 24.19.2(A) only apply to those EMPLOYERS
who regularly employ the foregoing trades in the foregoing zones and
belong to the Association which negotiated with the Union over the
provisions in Article 24.

24.1      Scope of work
          Jurisdiction of Work, Tools, Coatings and Wallcoverings

24.2      **Painter:**
          The work jurisdiction of the Painters and Decorators shall
          include but not necessarily be limited to the description provided
          in the I.U.P.A.T. General Constitution, but will also include all
          types of coatings in conjunction with painting, waterproofing,
          masonry restoration, fire caulking, flame/fire spray, metal
          polishing/refinishing, decorating, sealing, caulking, lead
          removal and/or abatement, encapsulating, lining, fire-proof, etc.;
          including any and all preparations, such as cleaning, patching,
          caulking, blasting, stripping, and/or all removal necessary to
          apply any and all coatings interior and/or exterior.

24.3      **Wallcoverers:**
          The work jurisdiction of the Wallcoverers shall include but not
          necessarily be limited to the description provided in the
          I.U.P.A.T. General Constitution but will also include all papers,
          vinyl's, flexible woods, fabrics, borders, metals installed on
          walls, ceiling and columns installed, stretched and stapled on
          adhesives of any kind. Installation of fabric covered panels made
          of plastic and wood pre-finished products of micore, fiberglass,

63

etc. acrovyn and various plastic wallcoverings including wainscot caps, corner moldings and accessories. Wall carpets installed with adhesives, stretched, stapled or adhered by any method.

**24.4**    **Drywall Finishers:**
The work jurisdiction of the Drywall Finisher and any member of the International Union of Painters and Allied Trades affected by this Agreement shall include "all levels of finishing of ALL surfaces for all coatings but not limited to the Gypsum wallboard taping and finishing system including, but not limited to: Spackling, glaze coating walls or ceilings, spray level 5, spotting nails, taping, coating tapes, and/or corner beads or flex bead; patching and sanding is within the system of preparing surfaces for their finish.

All clean-up of work associated with these products and scope of work including removal of debris to refuse site, to leave work area in a clean, orderly manner. Sufficient time will be allowed for the clean-up of any tools and equipment.

**24.5**    **Tools and Equipment all crafts:**
All tools, material and equipment including the debris caused thereby, pertaining to the work and the preparation thereof which is covered under this Agreement, including but not limited to compressors, hoppers, power tools, rollers, brushes and spray equipment, all AMES TYPE TOOLS and all mechanical and hand tools used for surface preparation and surface finishing, the loading and unloading thereof, shall be handled and/or performed by EMPLOYEES covered by this Agreement.

**24.6**    **Hiring of EMPLOYEE:**

**24.6.1**    **Sole & Exclusive:**
The Union shall be the sole and exclusive source of referrals of applicants for employment.

**24.6.2**    **Reject applicant:**
The EMPLOYER shall have the right to reject any applicant for employment if EMPLOYEE had previously worked for said EMPLOYER. Notice must be given in writing as to why the EMPLOYEE is not suitable for work.

### 24.6.3    Non-Discrimination:

The Union shall select and refer applicant for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules or regulations, bylaws, constitutional provisions, or any other aspect of obligation of the Union membership policies or requirements. All such selection and referral shall be in accordance with the following procedures.

### 24.6.4    Hiring Procedures:

The Union shall maintain a register of applicants for employment established on the basis of skills that EMPLOYERS may require. Each applicant for employment must be registered in the Priority for which he qualifies. Applicants shall be listed in chronological order of the dates they register. The EMPLOYER may request former EMPLOYEES. They may also request those with special skills, or certifications.

### 24.6.5

EMPLOYERS shall advise the Union of the number of applicants needed. The Union shall refer applicants to the EMPLOYER by referring applicants in the order of their places on the register; provided they are qualified to perform the specific task needed.

### 24.6.6

All members on lay-off must report to the Local Union Business Representative to be put on the "Hiring Hall List" for referral and or to be requested by EMPLOYER.

### 24.6.7

Qualified EMPLOYEES shall be referred out to EMPLOYERS in the order of how long they have been unemployed, with the EMPLOYEE on top of the list being unemployed the longest period of time and the rest of the list following in that same order.

65

**24.6.8**

The EMPLOYER must accept the person who the Union has referred to them, if qualified, and has not previously worked for them. The EMPLOYER may reject this EMPLOYEE if the EMPLOYEE proves to be unqualified, but the EMPLOYER must notify the Union in writing of the EMPLOYEE being unqualified for the work being assigned them.

**24.6.9**

When all bargaining Unit members are employed, and an EMPLOYER needs additional EMPLOYEES, he must give the Union an opportunity to provide suitable applicants.

**24.6.10**

Should any person referred for employment be terminated for cause, his or her referral privileges shall be suspended for two (2) weeks. Should the same individual be terminated for cause a second time within a twenty-four (24) month period, his or her hiring hall privileges shall be suspended for two (2) months. Should the same individual be terminated for a third time within a twenty-four (24) month period, his or her referral privileges shall be suspended indefinitely.

**24.6.11**

A termination shall not be considered as "for cause" for purpose of this provision if the person referred for employment has filed a grievance challenging the propriety of his or her termination, unless and until the grievance is resolved in a manner that affirms the termination for cause. For the purpose of this provision, a decision of the District Council 21 Joint Trade Board and/or an arbitrator shall be final and binding.

**24.6.12**

The provisions in Sections 23.6.11 and 23.6.12 notwithstanding, a Termination Review Committee may, upon written request of the applicant, vacate or reduce the period of suspension should the Committee determine, following inquiry or investigation, in its sole and complete discretion, that equity requires such action.

**24.7     Work schedule**

**24.7.1     Work Day:**
The maximum number of regular hours to be worked by an EMPLOYEE covered under this Agreement shall be forty (40) hours per week, eight (8) consecutive hours in one day from

66

6:00 A.M. to 4:30 P.M. four (4) ten (10) hour days at straight time shall be permitted on all jobs.

**24.7.2   Work Week:**
The Work Week is forty (40) hours, Monday through Friday. Saturday is to be a make-up day for inclement weather.

**24.7.3   Overtime:**
All hours in excess of the regular work day and work week and all work outside of the regular work day or work week shall be considered overtime. Overtime shall be paid at the rate of time and one half (1 ½) times the applicable rate.

Double Time shall be paid on Sundays and Holidays on all Project Labor Agreement Jobs and on any job where the work is being done through a General Contractor or Construction Manager.

**24.7.3(A) Overtime:**
All hours in excess of the regular work day and work week and all work outside of the regular work day or work week shall be considered overtime. Overtime shall be paid at the rate of time and one half (1 ½) times the applicable rate.

**24.7.4   Four tens overtime:**
When the ten-hour day option is used, then the eleventh and twelfth hours will be paid at time and one half. The fifth day will also be paid at time and one half. After twelve hours or five days the hours shall be paid at time and one half. Double Time shall be paid as stated in 24.7.3.

**24.7.4(A) Four tens overtime:**
When the ten-hour day option is used, then the eleventh and twelfth hours will be paid at time and one half. The fifth day will also be paid at time and one half. After twelve hours or five days the hours shall be paid at time and one half.

**24.7.5   Payment of Benefits: (overtime)**
The EMPLOYER agrees to pay all fringes due under this Agreement on each hour paid, including all overtime.

**24.7.6   Holidays:**
The holidays to be observed are: New Year's Day, Memorial Day, Independence Day, Thanksgiving Day, Christmas Day,

67

Good Friday, Veterans Day and Labor Day.  No work will be allowed on Labor Day under any circumstances.

When holidays fall on a Saturday or Sunday, employees will be allowed to work the following Monday, but double time must be paid.

On Project Agreements jobs, holidays will conform to the majority of Trades.

**24.7.6(A) Holidays:**
The holidays to be observed are: New Year's Day, MLK Day, Memorial Day, Independence Day, Thanksgiving Day, Christmas Day, Veterans Day and Labor Day.  No work will be allowed on Labor Day under any circumstances.

When holidays fall on a Saturday or Sunday, employees will be allowed to work the following Monday, but time and one half must be paid.

**24.7.7    Notice of Layoff:**
Notice of layoff shall be given two (2) hours before quitting time. When EMPLOYEE is laid off or quits, his check may be mailed at the next regular pay period.

**24.8        Wage Provision**

**24.8.1    Foreman:**
When two to four EMPLOYEES are employed on a job one EMPLOYEE will be designated foreman and shall receive $.50 above the then current highest rate on the job.  When there are five or more EMPLOYEES on a job the foreman shall receive $1.00 above the then current highest rate on the job.

**24.8.1(A) Foreman:**
When two to four EMPLOYEES are employed on a job one EMPLOYEE will be designated foreman and shall receive $.50 above the then current base rate. When there are five or more EMPLOYEES on a job the foreman shall receive $1.00 above the then current base rate.
**(For Drywall Finisher's ONLY)**
When two to four EMPLOYEES are employed on a job one EMPLOYEE will be designated foreman and shall receive $.50 above the then current base rate. When there are four to eight

68

EMPLOYEES on a job the foreman shall receive $1.00 above the then current base rate.  When there are nine or more EMPLOYEES on a job the foreman shall receive $2.00 above the current base rate of pay.

**24.8.2    Shift Provision:**
An EMPLOYER may, upon notification of the Union, establish a second or third shift, which begins or extends outside the normal hours of work. EMPLOYEES working a second or third shift are entitled to One dollar above the rate for shift rate over the base wage rate.  Shifts so established must be for a minimum of five (5) consecutive nights.  EMPLOYERS may request the Union to consider a shift less than five (5) nights.

**24.8.3    Additional Shift Provision:**
On Industrial and Bridge rates the night shift deferential shall be paid at 10% above the aforementioned classifications rates on second shift, and 15% above those rates on 3rd shift.

**24.8.3(A)  Additional Shift Provision:**
On  Bridge and Industrial rates, the night shift deferential shall be paid at 10% above the aforementioned classifications rates on second shift, and 15% above those rates on 3rd shift.

**24.8.4    Room & Board:**
EMPLOYERS are to pay full board and fare to and from work out of town where such men do not return home daily. Men shall furnish itemized list of expenses to EMPLOYER. Pay for travel time not to exceed eight (8) hours of twenty-four (24) hour day.

**24.8.5    Two shifts:**
If an EMPLOYEE has to report to work for a day shift and is on a night shift when they are asked, said EMPLOYEE shall not work past midnight, but shall be paid for the whole shift up to eight hours.

**24.8.6    Pyramiding:**
There shall be no pyramiding of Premium Rates with the exception of Foreman's pay.

**24.8.6(A) Pyramiding:**
There shall be no pyramiding of Premium Rates.

**24.8.7   Higher rates:**
It is agreed that when EMPLOYEES are working in a Zone where higher rates are paid; COUNCIL members are to be paid the higher rate.

**24.8.8   Show up Time / Minimum Hours:**
When an EMPLOYEE reports to either the shop or a job site and is unable to work due to circumstances beyond the control of the EMPLOYER, then the EMPLOYEE shall be paid two (2) hour "show up time". Should that EMPLOYEE begin working, then he shall be paid for the actual time worked.

**24.8.9   EMPLOYEE Deductions:**
The EMPLOYER shall deduct the sum covering the Vacation Fund, $.50 per hour (Local 2018 Vacation Fund ONLY), $.10 per hour P.A.C. Fund, $.05 per hour DC21 # 21 Core/Organizing and $.03 per hour for the DC # 21 Scholarship Fund (which are included in the Schedule A rates) from the net weekly pay (i.e.; after taxes) and make a notation of such deduction on the EMPLOYEE'S pay envelope or check stubs. These deductions and payments are not applicable to overtime work. These Monies deducted shall be paid in accordance with Article 13 of this Agreement.

**24.8.9(A)   EMPLOYEE Deductions:**
The EMPLOYER shall deduct the sum covering $.05 per hour P.A.C. Fund, $.03 per hour for the DC # 21 Scholarship Fund, $.03 per hour for the Benevolent Fund, $.05 per hour for the Organizing Fund and $.15 per hour for the Vacation Fund **(DRYWALL: PAC, Scholarship & Benevolent Funds Only)** from the net weekly pay (i.e.; after taxes) and make a notation of such deduction on the EMPLOYEE'S pay envelope or check stubs. These deductions and payments are not applicable to overtime work. These Monies deducted shall be paid in accordance with Article 13 of this Agreement.

**24.8.10   Automatic Reduction:**
The rate of wages will be automatically reduced if it is mutually agreed that a portion of these increases be allocated to payments unto the Various Funds. Payments for fringe benefits are provided under Article 13 hereof.

**24.9      Defined Rates:**

**24.9.1   Commercial Rate:  (See Article 5)**

**24.9.2**     **Repaint Rate**

**24.9.3**     **Premium Rate for all Classifications:**
Steel, Spray Painting, Paper Hanging, Vinyl Wallcovering
HiPAC-Coatings, Catalyzed Epoxy, Urethanes, Removers.
Blasting with Liquids or Solids, Steam Cleaning. Swing
Scaffolds, Cherry Pickers and High Reaches above (35) feet.
Applying Hazardous Materials.
**$1.00 per hour above base rate**

**24.9.4**     **Height Rate**
EMPLOYEES are entitled to Height Rate when required to
work at a hazard/height situation, that is, when working, over
thirty-five (35) feet.

**24.9.5**     **Industrial Rate**

**24.9.6(A) Industrial Rate**

**24.9.7**     **Bridge Rate**

**24.9.8**     **Drywall Rate**

**24.9.9**     **Drywall Premium Rates**
Any use of machine tools and stilts.
**$1.00 per hour above base rate**

**24.10**     **Market Recovery (Northeastern PA ONLY)**
The organizing, market recovery and maintenance of work
language and rate of pay shall not be utilized on nay category of
work, for any trades where the work historically was being
performed by Members of the Union and which can be
maintained by the EMPLOYER and the Union at the established
rates and conditions.

It is agreed that EMPLOYERS signatory to the Collective
Bargaining Agreement will in no way discriminate, intimidate,
threaten any disciplinary action such as job loss and/or used as
condition of employment against all present and future
EMPLOYEES refusing to work under guidelines if this Article.

The organizing, market recovery and maintenance of work
language is to be used to organize new work opportunities,
recover work formerly performed by Union members and

EMPLOYERS and/or to maintain present work opportunities for our members.

Any EMPLOYER signatory to this Collective Bargaining Agreement shall notify the Council not less than forty-eight (48) hours prior to the bidding of a Market Recovery job, so as to provide the Council with an opportunity to investigate whether the job in question qualifies for payment of Market Recovery rates. Nay contractor who is not current on benefit contributions will not be allowed to apply for or use MARKET RECOVERY rates. In the event that the Council believes that an EMPLOYER has improperly designated a job as receiving Market Recovery rates, then the Council may submit a grievance pursuant to the Grievance Arbitration Procedure set forth in this Collective Bargaining Agreement.

The burden of proof in any arbitration concerning the applicability of Market recovery rates shall be on the EMPLOYER to establish that the payment of Market Recovery rates on the job in question s proper. In the event that the EMPLOYER loses such arbitration, then the EMPLOYER shall be responsible for all fees of the American Arbitration Association, the fees and expenses and legal fees of the Council. Furthermore, the EMPLOYER shall pay to the EMPLOYEES who performed the work on said job the full wage and benefit levels provided in this Collective Bargaining Agreement.

The terms and conditions for market recovery shall be as follows:

- ❖ There shall be no restriction on tools or production.
- ❖ There shall be no shift differentials.
- ❖ Workweek shall be Monday through Sunday, inclusive. All work in excess of forty (40) hours shall be paid at time and one half (1 ½).
- ❖ Four ten (10) hour days shall be allowed when needed.
- ❖ Apprentice ratio may be as low as one to one, one apprentice for every journeyperson. This ration should never be higher than three to one on any project, unless the needed apprentices are not available.
- ❖ Market Recovery rates **may not** be used on any **Federal** or **State prevailing rate** projects. The **District Council** will designate the areas where Market Recovery will be utilized. Any projects in

72

areas other than the designated areas must be **approved** by the **Business Manager/Secretary Treasurer** of **District Council 21. If not approved in writing, Market recovery rates cannot be used.**

Wage & Benefits shall equal 75% of the then current Commercial Paint Total Package.

### 24.11     Work rules

**24.11.1     Personal wash-up Facilities: (All Crafts in this Zone)**
Water and soap shall be provided to EMPLOYEES for use at noon time and quitting time; for each time they shall have five (5) minutes grace for washing up. Clean up time to be fifteen (15) minutes for EMPLOYEES working on the outside of a job. This time is not to be used for clean-up of any equipment, time for this process must be taken in advance of personal clean up time.

### 24.12     Work Rules Painters

**24.12.1     Furnishing of Equipment:**
EMPLOYER shall furnish and deliver all equipment for the use of EMPLOYEES.  No EMPLOYEE shall furnish nor haul in their own automobiles such equipment. The EMPLOYERS shall furnish to all EMPLOYEES protective apparel necessary to safeguard EMPLOYEES from health hazards, as prescribed for by Federal regulations.

**24.12.2     EMPLOYEES Tools:**
EMPLOYEES shall furnish putty knives and dusters and wear clean white overalls on commercial and residential work.

### 24.13     Work Rules Wallcoverers

**24.13.1     EMPLOYER obligation:**
EMPLOYER shall furnish and deliver to and from job, all materials, stock, paper, paste, ladders, pasteboards, trestles and straightedges.  EMPLOYER shall furnish sizing brushes and rollers.

**24.13.2     No Discrimination:**
EMPLOYERS shall not discriminate in any manner against an EMPLOYEE who chooses not to carry tools. EMPLOYEES may carry tools on a voluntary basis.

73

**24.13.3  Limitations on Tools:**
Tools shall consist of no more than five (5) boards; four (4) trestles, one straight edge and one four-foot ladder. No adhesive or wall covering shall be carried. EMPLOYERS shall also furnish above-mentioned tools.

**24.14**            **Work Rules Drywall Finishers:**

**24.14.1  Materials:**
All water and materials shall be furnished by the EMPLOYER within a reasonable distance of the job for EMPLOYEES use.

**24.14.2  Minimum Temperature:**
If building is not closed in and heated to a temperature of 55 degrees F or more, EMPLOYEES refusal to work will not be considered as a violation of this Agreement.

**24.14.3  Stilts:**
It shall not be mandatory upon EMPLOYEES to use stilts.

**24.15**            **Work Definitions Painters**

**24.15.1  Bridge:**
All bridges that span water, railroad bridges, and bridges over canyons, viaducts, and appurtenances.

**24.15.2  Industrial:**
Refineries, Tanks, hangers, ceiling over 60 feet, energy producing facilities, steel mills, towers, steeples, dams etc., and or any work which would require cables as a platform to work on.

**24.15.3  Commercial:**
All office buildings, warehouses, schools, hospitals, museums, theaters of any kind, malls, department stores, food stores, supply houses, depots, strip malls, churches, retirement homes, apartment buildings, condominiums, hotels, motels, restaurants, commercial culinary facilities, manufacturing facilities, machinery and equipment, conveyer systems, Stadiums.

**24.15.4  Repaint:**
Work on existing properties or structures, which previously have been finished or remodeled. Work performed where signatory EMPLOYER are the prime contractor, or they are working

74

through a general contractor or construction manager and no other trades or a minority of the trades are involved.

**24.16**  **Work Definitions**

**24.16.1**  **Shop Steward**

**24.16.2**  **Employ of:**
An EMPLOYER shall employ one EMPLOYEE assigned by the COUNCIL and designated by the Business Manager/Secretary Treasurer to be the Shop Steward for the said signatory EMPLOYER. The Shop Steward may not be an owner, related by blood or marriage to an owner or an apprentice. If an EMPLOYER has work available for only one EMPLOYEE, said work shall be performed by the Shop Steward. The Shop Steward shall be responsible for insuring that the EMPLOYER complies with its obligations as set forth in this Agreement. Any complaints concerning alleged violations of this Article will be handled under Article 11 of this Agreement.

**24.16.3**  **EMPLOYERS Obligation to Steward:**
The EMPLOYER must report to the District Council the start and/or re-start of any job to the Shop Steward before EMPLOYEES are sent to said job. The EMPLOYERS must submit to the Shop Steward, "weekly," a report listing all current jobs, current EMPLOYEES and termination of EMPLOYEES.

**24.16.4**  **Job Steward**

**24.16.4.1**  **Appointment of Job Steward:**
A Job Steward may be appointed on any job from the EMPLOYEES at that job location. The selection of that EMPLOYEE will be in the hands of the Business Manager/Secretary Treasurer. The Union reserves the right to replace a Shop or Job Steward if the Steward is not performing the duties in accordance with the District Council 21 Agreement, By-Laws and I.U.P.A.T.

**24.16.4.2**  **Replacement:**
A Job Steward cannot be replaced by an EMPLOYER by moving the Steward to another job site. If the skills of the Job Steward are needed at another job site and the term of employment is shorter than the original job, then said EMPLOYEE must be placed back as Steward at the original job.

75

**24.16.4.3 Discrimination:**
> The EMPLOYER shall not discriminate against a Job Steward or Shop Steward. They shall have full protection of the Union when performing their duties.

## 24.17 Successors & Assigns Zones: 2 & 3 all crafts; Zone: 4 Painters, Wallcoverers only:

**24.17.1 Condition of Sale:**
> This Agreement shall be binding upon the successors and assigns of the parties hereto. In the event of a bonafide sale, transfer or assignment of the EMPLOYER'S facility, or part thereof, covered by this Agreement during the term hereof, the EMPLOYER shall give advance notice to the new owner, transferee or assignee of the obligations of this Agreement, and shall as a condition of sale, transfer, or assignment, require the new owner to become a Party hereto. The EMPLOYER shall be responsible for any and all monetary benefits that EMPLOYEES have accumulated under this Agreement to the date of sale, transfer or assignment. Seniority of EMPLOYEES shall not be broken by such sale, transfer or assignment.

**24.17.2 Notice:**
> The EMPLOYER agrees to give the Union no less than twenty (20) days written notice in the event that it intends to sell, transfer, or assign the facility, or part thereof, covered by this Agreement, and agrees to provide the Union with written documentation establishing the EMPLOYER'S compliance with Section 7.3.1 of this Article no less than ten (10) days prior to such sale, transfer or assignment.

**24.18 Mandatory Training Clause**
> In order to ensure a highly trained and qualified workforce and to work on and access a growing number of construction jobsites, every journeyperson shall be required to complete mandatory safety and or upgrade training on a yearly basis or as deemed necessary by District Council # 21 and the Contractors' Associations. All members who wish to work on public school projects shall complete an Act 34 criminal background check) and an Act 151 (PA. child abuse history clearance form) prior to working on such projects. Any processing fees associated with such projects. Any processing fees associated with the forms shall be paid in the following manner:

76

1.      Apprentices-Fees paid for by the District Council #21 Apprenticeship Fund.
2.      Regular shop employees-Fees paid for by their contractor.
3.      All other regular members will be responsible for processing fees associated with Act 34 (criminal background check) forms. District Council #21 will keep a computer database of membership training and upgrade and Act 151 (PA. child abuse history) District Council #21 and the Contractors' Associations shall agree on all classes offered for safety and upgrade training. Classes will be scheduled throughout the year in order to accommodate the membership. Failure, by any member, to complete the mandatory training or Act 34 and Act 151 forms may have a direct impact on his/her employment until the required training and or forms are completed.

**24.18(A)** <u>**Mandatory Training:**</u>

A minimum of 24 hours upgrade and/or safety classes must be maintained per year.

Classes to include:
1.      OSHA 10 (30)
2.      Fall Protection Awareness
3.      Confined Space Awareness
4.      Lead Awareness (PA Lead, NJ Lead, Lead RRP Certified Renovator)
5.      Hazard Communication (GHS)
6.      CPR/First Aid
7.      Coating Application Specialist (CAS)

Other classes may be acceptable at the discretion of the District Council/Employer.

Members will no longer be employable to our signatory contractors without proof of taking the required training each year.

77

**24.19**                    **Misc.**

**24.19.1**   **Time Sheet**:
Except for the purpose of gathering factual data for estimating purposes, Daily Time Sheets specifying the number of items performed per day for the purpose of task work shall not be allowed.

**24.19.2 (A) Entry Level Journeyperson**.  An entry level journeyperson is defined as an individual who has passed the required proficiency evaluation given by the District Council, but has not graduated from an IUPAT affiliated Apprenticeship Program and is found to be lacking certain skills of the trade.  An entry level journeyperson must complete 3000 hours of employment for signatory Employers in the classification of entry level journeyperson, and also complete all mandatory certified health and safety training, as well as other courses that may be deemed appropriate by the District Council to be eligible for re-evaluation as a journeyperson.  A ratio of 3 journeypersons to 1 apprentice must be met by an Employer before entry level journeypersons can be employed.  Once appropriate ratios are satisfied, entry level journeypersons may be utilized at a ratio of one entry level journeyperson for every 4 employees.  This provision notwithstanding, the District Council upon evaluating the skills and abilities of any new employee/applicant may certify the individual as a full journeyperson.  Employees/members who have achieved full journeyperson status prior to the date of this agreement shall be considered journeypersons within the meaning of this provision and may not be paid the entry level journeyperson rate.  In addition, the Business Agent shall be empowered, in his/her discretion, to waive the ratios set forth herein and permit use of entry level journeypersons based on manpower availability.  The rate of wages of an entry level journeyperson is $1.00 per hour less than the Harrisburg Market Recovery Rate with the fringe benefits paid at the full Market Recovery Rate.  Entry Level Journeyperson rates only apply to the Harrisburg area and do not apply where any prevailing rates or IUPAT/Building Trades Project Labor Agreements are in place.

## Article 25- DRYWALL FINISHERS, ZONES 1 & 5

**25      Specific Provisions and Conditions for EMPLOYING Drywall Finishers IN Zones 1 & 5 Only. Paragraphs 25.6, 25.8.1 & 25.10.9 only apply to those EMPLOYERS who regularly employ the foregoing trade in the foregoing zones and belong to the Association which negotiated with the Union over the provisions in Article 25.**

**25.1      Scope of Work:**
The work jurisdiction of the Drywall Finisher affected by this Agreement shall include "all levels of finishing of ALL surfaces for all coatings but not limited to: Spackling, glaze coating walls or ceilings, spotting nails, taping, coating tapes, and/or corner beads or flex bead; scraping of debris; patching and sanding is within the system of preparing surfaces for their finish and installation of paper face beads and clean up joint compound.

All clean-up of work associated with these products and scope of work including removal of debris to refuse site, to leave work area in a clean, orderly manner. Sufficient time will be allowed for the clean-up of any tools including scrapers and equipment.

**25.1.1**   A pre-job meeting will be held with the owner on all projects seven thousand (7,000) hours or more or accelerated schedules to discuss Stewards, manpower, overtime and other issues that may arise during a project of this size.

On projects seven thousand (7,000) or more hours cumulative which have more than one (1) subcontractor, a meeting with all subcontractors affected by this agreement will be needed.

**25.2      Tools and Equipment:**
All tools, material and equipment including the debris caused thereby, pertaining to the work and the preparation thereof which is covered under this Agreement, including but not limited to compressors, hoppers, power tools, power sanders, scrapers and all AMES TYPE TOOLS and all mechanical and hand tools used for surface preparation and surface finishing, the loading and unloading thereof, shall be handled and/or performed by EMPLOYEES covered under this Agreement.

79

**25.3**     **Hiring of Employees:**

**25.3.1**     **Referrals and Registration of EMPLOYEE:**
The Council shall register and refer all qualified applicants for employment for the drywall finishing industry. The District Council will be the first source of referrals for qualified applicants for employment and will furnish the EMPLOYER with the required number of qualified EMPLOYEES needed that are registered on the out-of-work list posted at the District Council.

**25.3.2**     **Non-Discrimination:**
The selection of qualified applicants for referral to jobs shall be on a non-discriminatory basis and shall not be based on, or in any way affected by, Union membership, by laws, regulations, constitutional provisions or any other aspect or requirements, except as outlined in this Agreement.

**25.3.3**
The EMPLOYER and the Union agree that there shall be no discrimination against EMPLOYEES or applicants in violation of federal, state or municipal statutes.

**25.3.4**     **Special skills:**
When the EMPLOYER requests a qualified applicant with special skills and abilities, the Union shall refer, to the best of their ability, such EMPLOYEE who is qualified to perform the work.

**25.3.5**     **Rehire of steady EMPLOYEE:**
The EMPLOYER shall have the right to hire back at any time, steady EMPLOYEE. These designated EMPLOYEES will be registered with the Union once a year at the beginning of the year. Recall to work of these EMPLOYEES will not count as a turn in the 50/50 hiring system now in place, but all steady EMPLOYEES must register with the Union when they are laid off and rehired.

**25.3.6**     **Members Refusal to work:**
The Union will not be held responsible for any member's refusal to return to work for any previous EMPLOYER.

**25.3.7**     **Priorities in employment:**
The EMPLOYER agrees that priority in employment shall be given in the following manner.

80

**25.3.7.1**   EMPLOYEES previously employed by that EMPLOYER.

**25.3.7.2**   EMPLOYEES who have been employed within the industries by any EMPLOYERS having a collective Bargaining Agreement with the District Council 21 I.F.C.A and any other/ EMPLOYER Association recognized by this Union.

**25.3.7.3**   EMPLOYEES otherwise employed in the industries and lastly to persons competent and qualified for employment.

**25.3.8**   **50/50**
It is understood and agreed that the hiring system will be a "shared hiring system" of 50/50 or 1 to 1. The first qualified member selected by the EMPLOYER will be referred by the District Council from the "out of work register." The next qualified member to be employed by said EMPLOYER will be selected by the District Council from the "out of work register" and will continue so on in an alternating manner for all hired EMPLOYEES, qualifications prevailing.

**25.3.9**   **Reject EMPLOYEE:**
The EMPLOYER shall have the right to reject an applicant for employment as long as it does not interfere with the member's rights and responsibility as a member of the I.U.P.A.T.

**25.3.10**   **Exhaustion of out of work list:**
If the registration list is exhausted and the District Council is unable to refer qualified applicants for employment to the EMPLOYER within 24 hours after receiving such request, (weekends and holidays exempt) the EMPLOYER shall be free to secure applicants from any sources available, without the referral procedure. The EMPLOYER must notify the District Council promptly of the names, addresses and Social Security numbers of any such hired EMPLOYEES.

**25.4**   **Work Day:**
The regular workday is to be any 8 hours between 6 A.M. to 6 P.M.  However, when a make-up day is desired, a 10-hour day may be worked when mutually agreed.  Present EMPLOYEES on the job will have first option to work.

**25.4.1**   **Make-Up Day:**
A make-up day may be used Monday thru Saturday when due to no fault of the Contractor and mutually agreed upon between the

81

EMPLOYER and District Council 21. Wages will be paid at straight time rate. Prior notice must be given to District Council 21.

**25.5**   **Work Week:**
The workweek is forty (40) hours. The flexible workweek will be Monday through Saturday.

**25.5.1**   **Overtime:**
Time worked in excess of eight hours per day (except when the ten-hour work day option is utilized) or 40 hours per week shall be paid at the overtime rate. This applies to Saturday and Sunday work, which shall be paid at the overtime rate.

**25.5.2**   **Overtime/Time and a Half:**
All overtime will be paid at time and a half. The first 2 hours over the 8-hour shift Monday thru Friday and up to 10 hours on Saturday will be worked at time and a half.

**25.5.3**   **Overtime/Double Time:**
Any hours worked over 10 hours will be paid at double time. Sundays and Holidays paid at double time.

**25.5.4**   **Four Tens:**
When the ten-hour day option is used, then the eleventh and twelfth hours will be paid at time and one half. The fifth day will also be paid at time and one half. After twelve hours or five days the hours shall be paid at double time.

**25.5.5**   **Saturday-Sunday Work:**
When Saturday and/or Sunday is required, the EMPLOYER shall notify the COUNCIL before 4:00 P.M. on the Friday preceding, with the understanding that an EMPLOYER be permitted to notify after that hour if an emergency came up after 4:00 p.m. If the EMPLOYER'S client fails to notify him to proceed with work on Saturday and/or Sunday in time for the EMPLOYER to so notify the COUNCIL, then the EMPLOYER shall fax the notice to the office of the COUNCIL, or work will not proceed. Continued violations of these terms could result in an automatic placement of a STEWARD.

**25.5.6**   **Payment of Fringes and Wages**
Wages shall be paid weekly. No more than five (5) days shall be retained by the EMPLOYER at any time. Acceptable forms of pay include check in person, by mail, or direct deposit.

82

**25.6    Bad Checks**
When an EMPLOYEE is paid with a bad check, the EMPLOYER shall be made to pay cash thereafter for the duration of this Agreement. The EMPLOYEE will be paid the hourly rates until the EMPLOYER rectifies this offense.

**25.7    Fringes on hours worked:**
The EMPLOYER agrees to pay fringes for each hour paid up to eight (8) hours, and after eight (8) hours, fringes on each hour worked.

**25.8    Notice of Layoff:**
Notice of layoff shall be given two (2) hours before quitting time. When EMPLOYEE is laid off or quits, his check may be mailed at the next regular pay period.

**25.8.1    Layoff for Alleged Cause:**
When an EMPLOYEE is laid off by the EMPLOYER for alleged cause and is replaced by another EMPLOYEE on the same job, EMPLOYEE shall immediately report the matter to the Council for investigation. The matter will be handled under The Grievance & Arbitration Article.

**25.9    Holidays**
The holidays to be observed are: New Year's Day, Memorial Day, Independence Day, Thanksgiving Day, and Christmas Day. No work may be performed on Labor Day. Time worked on these days will be worked at the overtime rate.

## Wage provision

**25.10    Foreman:**

The Foreman rate shall be ten percent (10%) above the current journeyperson's base rate as per the current Collective Bargaining Agreement.

**25.10.1    EMPLOYEE Deductions:**
The EMPLOYER shall deduct the sum covering the Vacation Fund, $2.00 per hour, and $.30 per hour P.A.C. Fund, $.03 per hour for the Benevolent Fund, $.07 per hour for the Organizing Fund (D.O.C.), $1.41 per hour for the Drywall Finisher Target Fund and $.10 per hour for the DC # 21 Scholarship Fund from the net weekly pay (i.e.; after taxes) and make a notation of such deduction on the EMPLOYEE'S pay envelope or check stubs.

83

These deductions and payments are not applicable to overtime work. These Monies deducted shall be paid in accordance with Article 13 of this Agreement.

**25.10.2  Automatic Reduction:**
The rate of wages will be automatically reduced if it is mutually agreed that a portion of these increases be allocated to payments into the Various Funds. Payments for fringe benefits are provided under Article 13.

**25.10.3  Two shifts:**
If a Journeyperson is required to report on a day job, after having worked on a previous night job EMPLOYEE shall not work beyond 12:00 midnight but shall be paid eight (8) hours.

**25.10.4  Shift work:**
Time worked on shift work shall be paid at five percent (5%) above the base rate for second (2nd) shift (3 p.m. to 11 p.m.) and ten percent (10%) above the base rate on third (3rd) shift (11 p.m. to 7 a.m.).

**25.10.5  Show Up Time / Minimum Hours:**
When an EMPLOYEE reports to either the shop or a job site and is unable to work due to circumstances beyond the control of the EMPLOYER, then the EMPLOYEE shall be paid two (2) hours "show up time". Should that EMPLOYEE begin working, then EMPLOYEE shall be paid for the actual time worked. None the less the Company must work the Employee a minimum of two hours so as to not negate the minimum hours rule.

**25.10.6  Pyramiding:**
There shall be no pyramiding of Premium Rates.

**25.10.7  Higher rates:**
It is agreed that when EMPLOYEES are working in a zone where higher rates are paid, D.C. 21 members are to be paid the higher wage rate. For the city of Princeton, New Jersey and all New Jersey areas south, D.C. 21 members shall receive D.C. 21's total Pennsylvania 4-county wage and benefit package. Dues check-off to be paid to D.C. 711.

**25.10.8   Election Day:**
On General Election Day all EMPLOYEES participating in the Election Day Program, may stop work after six (6) hours and receive pay for eight (8) hours, wages and benefits. Sign-up for election polls must be completed at District Council 21 offices, with EMPLOYER having the right to verify these records. If the EMPLOYEES are not on the sign in sheet provided for this day, they will not be compensated for the two (2) hours.

**25.10.9   Room & Board:**
EMPLOYERS are to pay full board and fare to and from work out of town where such men do not return home daily. Men shall furnish itemized list of expenses to EMPLOYER. Pay for travel time not to exceed eight (8) hours of twenty-four (24) hour day.

**25.11                          Defined Rates:**

**25.11.1      Height Rate:        $1.25 per hour
                               (Commercial Work only)**
EMPLOYEES are entitled to Height Rate when required to work at a hazard/height situation, that is, when working in excess of thirty feet.

**25.12   HOURS ENHANCEMENT PROGRAM – DEFINITION:**

The organizing, Hours Enhancement Program and maintenance of work language and rates of pay shall not be utilized on any category of work, for any trade, where the work historically was being performed by members of the Union when can be maintained by the Employer and the Union at the established rates and conditions.  There will be no geographical boundaries for this program.

**25.12.1**   It will be the Employers responsibility to notify the Union and each current employees prior to being assigned on that project that they will be working for a reduced wage rate.  Along with the Employer the Union will also notify members being dispatched to that job.  It is agreed that Employers signatory to the Collective Bargaining Agreement will in no way discriminate, intimidate, threaten any disciplinary action such as job loss and/or use as a condition of employment against all present and future Employees refusing to work under the guidelines of this Article.

**25.12.2**   The organizing, Hours Enhancement Program and maintenance of work language is to be used to organize new work opportunities, recover work formerly performed by Union Members and Employers and/or to maintain present work opportunities for our members.

**25.12.3**   Any Employer signatory to this Collective Bargaining Agreement shall notify the Council not less than forty-eight (48) hours prior to the bidding of an "Hours Enhancement" project, so as to provide the Council with the opportunity to investigate whether the project in question meets the criteria as an Hours Enhancement Program project.

**25.12.4**   In the event the Council believes that an Employer has improperly designated a job as an "Hours Enhancement" project, then the Council may submit a grievance pursuant to the Grievance Arbitration Procedure set forth in this Collective Bargaining Agreement.  With the exception of the added Section **25.12.5** in this Article which will rule as to the cost of the arbitration and litigation.

**25.12.5**   The burden of proof in any arbitration concerning the applicability of the Hours Enhancement Program shall be on the Employer to establish that the criteria for the Hours Enhancement Program on the project, has been met.  The parties will split the cost of Arbitration.  Further, the Employer shall pay to the Employees who performed the work on said project the full wage and benefit levels provided for in this collective Bargaining Agreement.

**25.12.6**   Terms and Conditions for the Hours Enhancement Program shall be as follows:

  o   There should be no restriction on tools or production.
  o   Work week shall be Monday through Sunday, inclusive.  All work in excess of eight (8) hours per day or forty (40) hours per week to be paid at time and one half (1 ½).
  o   Four (4) ten (10) hour days shall be allowed when needed.
  o   Apprentice ratio may be as low as one to one, one apprentice for every journeyperson.  This ratio should never be higher than three to one on any project, unless the needed apprentices are not available.

86

**25.13**   Wages & Benefits:
The basic wages and fringe benefit(s) levels for the "Hours Enhancement Program" shall be:

**Wages:**                                          **Benefits:**
80% of Wages                                        Full

**25.13**            **Work Rules**

**25.13.1   Furnishing of Equipment:**
The Employer shall furnish and deliver scaffolding, planking, ladders and other customarily used equipment for the use of EMPLOYEES who shall not furnish nor haul in their own automobiles, such equipment for any Employer for whom they may work. Protective equipment shall be furnished by the Employer when required.

**25.13.2   EMPLOYER obligations:**
All water and materials shall be furnished by the EMPLOYER within a reasonable distance of the job for EMPLOYEES use.

**25.13.3   Minimum Temperature:**
If buildings are not closed in and heated to a temperature of 55 degrees F or more, EMPLOYEES refusal to work will not be considered as a violation of this Agreement.

**25.13.4   Stilts:**
It shall not be mandatory upon EMPLOYEES to use stilts.

**25.13.5   Tools:**
Tools- Employer shall furnish AMES Tools, sanding poles, bucket and all material required to perform a proper job.

**25.13.6   Job Reporting:**
By fax or email, all contractors are required to report job starts, a list of current members working on the job, length of project, General Contractor, and Sub-Contractors BEFORE beginning the project. In addition, District Council 21 shall be notified of all new hires by fax or email.  District Council 21 will supply a copy of the required form.  This also pertains to the loaning of men from one contractor to another.  Continued violations of these terms could result in an automatic placement of a STEWARD.

87

**25.14**          **Job Steward – Drywall Finishers**
                  **(Independent Contractors):**

**25.14.1  Place & appointments:**
The EMPLOYER agrees that a District Council Representative may place, then appoint, a working Job Steward at the start of any job lasting twenty (20) man days or more. A Job Steward will be appointed by the District Council on all projects.

**25.14.2  Duties of:**
The EMPLOYER will recognize the Steward in the respect that the Steward will check all the EMPLOYEES on the job to see that they have been hired per this Agreement.
The Steward shall keep an accurate daily record of the names, District Council Members' actions, and the time of each and every member on his particular job and will report to the Union on a weekly basis.  Attend and give a report at all Union meetings.  This is the sole responsibility of the STEWARD to fulfill this obligation.

**25.14.3  Pay Scale & Removal Of:**
The Job Steward shall not be removed for performing their duties. COUNCIL is to be notified 24 hours before a Steward is removed from the job. The Charge person and the Steward shall be the first persons to return to work when the job is resumed. The Steward will receive the highest journeyperson's wage rate on the job. The Steward will remain on the job until completion thereof if qualified in the opinion of the EMPLOYER and the COUNCIL.  If a job is shut down temporarily and the EMPLOYEES are sent to another job, the Steward will also be given work.

**25.14.4  Lay off:**
 Steward, if laid off contrary to 25.13.3 of this Article, or any dispute relative to this clause, upon complaint of the Steward, case shall be referred to, and handle by, the EMPLOYER, COUNCIL Representative and Steward on the job and, if not settled by these parties, case shall be referred to the grievance procedure herein provided for proper consideration and disposition.

**25.14.5  Job Steward, IFCA Employers only:**
It shall be the responsibility of the Employer to report all job starts to the District Council (as per Article 25.13.6). It is agreed that any Employer who violates this Article 25.13.6 or is found

88

intentionally avoiding the terms and conditions of this Agreement, through collusion with EMPLOYEES covered by this Agreement with respect to their current wage and fringe benefit payments; through any examination such as a pay stub check, payroll audit, etc.; the Union will have the authority to place a Steward on all of the said Employer's jobs for the length of this Agreement from the out of work register retained by the District Council. A Job Steward will be appointed by the District Council on all other projects from the EMPLOYEES on the job. **(IFCA contractors will have a Union appointed Steward from their workforce on the job site for all pinpointed jobs.)**

**25.15    Time Sheet**:
Except for the purpose of gathering factual data for estimating purposes, Daily Time Sheets specifying the number of items performed per day for the purpose of task work shall not be allowed by EMPLOYER.

**25.16    Clean up Time**:
Members shall be allowed wash up time, five (5) minutes, at scheduled lunch time, twenty (20) minutes at scheduled quitting time or thirty (30) minutes at scheduled quitting time for clean-up and maintenance of automatic taping tools. One (1) man only for cleaning of automatic taping tools.

**25.17**    All Journeypersons shall have OSHA 30 Certification and Fall Protection Certification.

It is agreed that all Journeypersons will satisfy all training requirements and that the parties will work with the Finishing Trades Institute (FTI) to assure that scheduling allows the opportunity for all Journeypersons to fulfill their training obligations.

Mandatory Safety Training – a minimum of ten (10) hours of upgrade and/or safety classes to be completed each year. Classes to include: OSHA 10/30, Fall Protection Awareness, Lead Awareness, Hazard Communication, CPR First Aid, Silica Awareness, Fine Particulate Awareness, Competent Person and participation in Safety Saturday. Other classes may be acceptable at the discretion of the District Council/Employer.

New hires must have OSHA 10 in thirty (30) days of hire. New hires must have OSHA 30 & Fall Protection within twelve (12)

89

months of hire. The Employer will have the right to refuse a member who has not complied with this mandatory training.

**25.18   DRUG & ALCOHOL POLICY**

The Employers and Union recognize that any drug and/or alcohol use in the workplace is an extreme safety and health hazard. To that end, both the Employers and Union strongly support and recommend the use of a lawful and reasonably enforced drug and alcohol policy adopted by an Employer, to help ensure a safe working environment for the Employees. Prior to the implementation or modification, the Employer will provide the Union with a complete copy of its policy and procedures. In addition, the Employer involved agrees to indemnify and hold harmless the Union from any liability resulting from a drug test administered by the Employer involved. All costs associated with this program are to be paid for by the Employer involved. Any Employer that implements a drug and alcohol policy pursuant to this section will apply its policy to all Employees of the company, regardless of Union affiliation and/or job classification, but subject to the restrictions of the NLRA and other applicable laws.

The Union, in cooperation with the IFCA/GBCA, shall administer a drug testing program covering all bargaining unit members employed by IFCA/GBCA Employers and any other Employer signatory to this Agreement. To the extent that drug testing is required by a 3rd party, as a condition for admission to a jobsite or facility, or as a result of an accident, drug testing will be accepted without question.

In the case of an outside entity, the testing will be paid for by the Employer or the entity requesting the test. Results of these tests will be confidential between the designees of the Union and the Contractor requesting the testing.

If an Employee who is identified for testing refuses to comply, they will be deemed to have tested positive. Any member who tests positive may not return to work for any signatory Employer until they have made arrangements and/or enrolled in a self-help program through ATAP.

90

## Article 26– GLAZIERS, ZONES 1through 6

**26      Specific Provisions & Conditions for EMPLOYING Glaziers IN Zones 1, 5, & 6 Only.   Paragraphs 26.6.3, 26.6.4, 26.6.6, 26.7.1, 26.7.2, 26.8.4, 26.10, 26.11.2, 26.11.3, 26.11.4 & 26.11.6 only apply to those Employers who regularly employ the foregoing trade in the foregoing zones and belong to the Association which negotiated with the Union over the provisions in Article 26.**

**26.1      Scope of Work**
**General Glazing will include, but is not limited to:**

This Agreement shall apply to all persons whether journeymen, apprentices or foremen who perform work within the jurisdiction of the COUNCIL including but not limited to the unloading, distribution and installation of:

- All types of entrance systems.
- All types of doors, including revolving doors and automatic doors
- Store fronts.
- Curtain wall systems,
- Pre-glazed windows.
- Window systems of all types and materials.
- Storm windows.
- Retrofit glass & framing systems.
- Slope glazing systems,
- Skylight and walk cover glazing systems,
- Greenhouse glazing systems,
- Glass railings,
- All mirror systems, including doors and panelized systems.
- All glass, including movie screens and blackboards.
- Plastic glazing materials.
- All panelized systems.
- Showcases.
- Glass and plastic shelving & cube systems.
- Shower doors & bath tub enclosures.
- Interior Glass Partitions.
- Architectural Railings.
- Translucent Skylights and Curtainwall Systems (i.e. Kalwall).
- BIPV Glass (Building Integrated Photovoltaic).

91

Included with the above listed items is the installation of all necessary hardware, trim, molding, caulk, mastic, gaskets and putty to properly complete the installation.

In the event the EMPLOYER exclusively assigns work under this Agreement to the COUNCIL, the COUNCIL shall be notified of such assignment within sixty (60) days, or as soon as practical of the commencement of such assignment. In turn, the COUNCIL shall assure the EMPLOYER that other trades shall not interfere with such assignment. In the event an adjustment in such an assignment results in requiring the EMPLOYER to adjust the assignment by employing a composite crew, the EMPLOYER shall receive work rule considerations in order to compensate for increased labor costs. In case of composite crews, Glaziers will permit other trades who are members of a composite crew to perform all required work on the job. However, the setting of glass shall be the exclusive right of the glazier.

**26.2    Territory:**

> **New Jersey Boundaries:**
> Florence, NJ to Bustleton, NJ to Columbus, NJ to Jobstown, NJ to Pemberton, NJ to Ongs Hat, NJ to Chatsworth, NJ to Whiting, NJ to Pinewald, NJ to Ocean Gate, NJ to Seaside Heights, NJ. Everything south of these boundaries is the geographic jurisdiction of Glaziers Local Union 252 in the state of New Jersey.

**26.3       <u>Work Schedule</u>**

**26.3.1  Hiring of EMPLOYEE:**

COUNCIL shall be the first source of referrals of applicants for employment.  When an EMPLOYER notifies COUNCIL of the need for a specific number of referrals, COUNCIL shall provide names equal to the number of referrals requested and available.

It is agreed that priority in employment as between applicants shall be given first to applicants previously employed by the EMPLOYER, next to applicants that have any special skills and/or certifications needed by the EMPLOYER, next to applicants who have been employed within the industry by EMPLOYERS holding CBA's with COUNCIL, next to applicants otherwise employed in the industry, and lastly to persons competent and qualified for employment.

92

The EMPLOYER shall have the right to reject any referral for employment when verbal reason of rejection is provided.

**26.3.2  HOURS OF WORK:**
The maximum number of regular hours to be worked by an EMPLOYEE covered under this Agreement shall be forty (40) hours per week, eight (8) consecutive hours in one day from 6:00 A.M. to 4:30 P.M.

On all jobs, upon notification of the COUNCIL, contractor has the right to start men at any time in a twenty-four (24) hour period for eight (8) continuous hours at straight time (subject to Shift Work Provision contained in the Glazier's Trade Agreement). Multiple starting times shall not be permitted, unless mutually agreed upon by the EMPLOYER, COUNCIL, and the employees.

**26.3.3    SHIFT PROVISION:**
An EMPLOYER may, upon notification of the COUNCIL, establish a second or third shift, which begins or extends outside the normal hours of work. EMPLOYEES working a second or third shift are entitled to a fifteen percent (15%) shift premium over the base wage rate. Shifts so established must be for a minimum of five (5) consecutive nights. EMPLOYERS may request the COUNCIL to consider a shift less than five (5) nights.

**26.3.4    Overtime:**
All work done outside of the Straight Time Hours of Work set forth above, upon notification of the COUNCIL, shall be considered overtime and, except as set forth below, shall be paid at the rate of double time. All work performed in the ninth (9th) and tenth (10th) hour after the first eight (8) hours of any day, Monday through Friday, shall be paid at the rate of time and one-half. On Saturday, the first eight (8) hours of the scheduled starting time shall be paid at the rate of time and one-half; the rest shall be paid at double time.

**26.3.5    Four Tens Overtime:**
Four (4) ten (10) hour days at straight time shall be permitted on all jobs, (M-F). If during the week, one of the 4 days is canceled and rescheduled to the off day, the re-scheduled day will be paid at 15% over the applicable rate. When the ten-hour day option is used, then the eleventh and twelfth hours will be paid at time and one half. The fifth day will also be paid at time and one half. After twelve hours or five days the hours shall be paid at double time.

93

**26.3.6    Payment of Benefits: (Overtime)**
The EMPLOYER agrees to pay fringes due under this Agreement on each hour paid, including all overtime, for the following fringe benefits: I.U.P.A.T. Pension and D.C.21 Annuity. However, on all other fringe benefits due under this Agreement, they shall pay be paid on hours worked.

**26.3.7    Higher rates:**
It is agreed that when EMPLOYEES are working in a Zone where higher rates are paid; COUNCIL members are to be paid the higher rate.  Higher rates does not apply to Targeted Jobs.

**26.3.8    Holidays:**
The holidays to be observed are: New Year's Day, Memorial Day, Independence Day, Thanksgiving Day, and Christmas Day.  No work may be performed on Labor Day.

**26.3.9    Split-Time / Division of Work:**
If, as, or when it becomes necessary or desirable to split the available time involved for existing current work, an EMPLOYER, in conjunction with the Shop Steward and Business Agent or president shall set up a mutually satisfactory schedule of work distribution among its current EMPLOYEES.

**26.3.9.1  Formula:**
A formula of two hundred (200) shall be used as a divisor to determine the number of men to be used in the shop.  A six (6) month period for determining hours to be divided is preferable, but not mandatory. When sharing time is necessary, the Local will exhaust all possible means to return these men to their original shops.

**26.3.9.2  Exclusions:**
The EMPLOYER in conjunction with the COUNCIL will be permitted to exclude the General Foreman or Foreman who is running a project until the project is to the point where the General Foreman or Foreman is no longer needed, he shall be off the applicable number of weeks.
Any EMPLOYEE who primarily performs Non-C.B.A. duties (approximately seventy (70) percent of the time or more) shall be exempt from this section and shall be excluded from hours used in the Split-Time Calculation.

94

**26.4   Twenty-Four Hour Notice:**
Upon twenty-four (24) hour notification to the EMPLOYER, an EMPLOYEE may be off without pay for General and Primary Election Day. EMPLOYEES may with the cooperation of the EMPLOYER, work four (4) ten-hour days during the Primary Election and General Election week.

**26.5   Payroll Information:**
Wages shall be paid to employees prior to quitting time of the recognized payday. If time sheet of any employee is not received one day following the end of the work week, he shall receive pay for the hours assigned to work and hours worked. All wages shall be paid in cash, negotiable check or direct deposit, and shall be accompanied by a statement of gross earning and any deductions. Such statements shall show the employers and the employees name or number, the dates worked, all deductions, expenses, base and premium earning and net amount due employee. Wage payments shall conform to all applicable federal and state laws. When men are to be laid off, the union shall be notified of lay-off two hours before the end of the work day. Also, the men shall be notified prior to end of work day and shall be paid within forty-eight hours. Men on the job shall call the employer's office 30 minutes prior to the end of the work day, for instruction or lay-off. There will be a four-day allowance for pay roll, if necessary.

**26.6                    Wage Provisions**

**26.6.1   Foreman's Rate:**
When four (4) or more EMPLOYEES are employed, and the job consists of ten (10) working days, one EMPLOYEE shall be designated by the Employer to act as a Foreman and shall be paid not less than three dollars ($3.00) per hour in excess of the then applicable base wage rate. Said rate shall be considered part of the base wage rate when it applies. This does not apply to insurance replacements. It is understood and agreed that there will be no "Chargeperson" as defined in the Master Agreement.

Foreman's Rate: May 1, 2019 = $3.50 per hour
Foreman's Rate: May 1, 2020 = $4.00 per hour

**26.6.2   General Foreman Rates:**
The **General Foreman** rate shall be two dollars ($2.00) above Foreman's wage and shall apply where there are minimums of twenty (20) glaziers on a job or three (3) Glazier foremen. Said

95

rate shall be considered part of the base wage rate when it applies. The job must run at least ten (10) working days.

### 26.6.3   Eligibility: Journeyperson, Foreman, General Foreman

All Journeypersons will be required to attend a minimum of four (4) hours of Safety/ OSHA or other approved training courses per year. In order to be eligible to receive foreman or general foreman's pay. The Journeyperson must attend an addition four (4) hours of training listed above, (for a total of eight (8) hours) and must have a current OSHA 30 certification.

It is agreed that all Journeymen will satisfy all training requirements and that the parties will work with the FTI to assure that scheduling allows the opportunity for all Journeypersons to fulfill their training obligations.

FTI will be requested to provide training on test walls. Employers and COUNCIL will communicate to the Journeypersons how critical this training is to the industry.

The parties agree that Journeymen who do not satisfy annual training requirements may be placed on probation and while allowed to continue work, their training obligations will be reviewed by a joint labor management "Training Review Committee". It is agreed that the Committee shall have the authority to suspend members from work until their obligations are complete and it is further agreed that the Committee shall create a system for expeditious action to protect financial and production matters.

### 26.6.4   Eligibility: Apprentice/ New apprentice orientation
All apprentices entering the Training Program shall; before being placed with an employer and or on a jobsite ( no exceptions) attend an orientation designed with his/her coordinator. This orientation shall consist of, no less than; OSHA 10, Construction Awareness, First Aid/CPR, and Introduction to Labor/Management. This orientation shall also be used to fill out all appropriate paperwork. The COUNCIL and or signatory EMPLOYERS are not responsible for compensation during this orientation period.

**26.6.5   Height Rate:**
EMPLOYEES shall be paid one dollar ($1.00) above the base rate per hour actually worked at 30' above working surface OR on a swing stage.

**26.6.6   Out of Town Work:**
It is agreed that when EMPLOYEES are working in a territory where higher rates are paid, COUNCIL members are to be paid the higher rate; no mileage or expenses for crossing boundaries are to be paid.   Tolls and parking expenses are still to be reimbursed.

**26.6.7   Show up Time / Minimum Hours:**
When an EMPLOYEE reports to either the shop or a job site and is unable to work due to circumstances beyond the control of the EMPLOYER, then the EMPLOYEE shall be paid one (1) hour "show up time." Should that EMPLOYEE begin working, then he shall be paid for the actual time worked with a minimum of four (4) hours pay.

**26.6.8   Inclement Weather:**
In the event of inclement weather and when an EMPLOYEE reports to the job or shop, EMPLOYEE shall be paid one (1) hour, including expenses and parking. No overtime rates will apply.

**26.7        Expense Reimbursements:**

**26.7.1   Room & Board:**
EMPLOYERS are to pay full board and fare to and from work out of town where such men do not return home daily. Minimum board shall be $50.00 per day with itemized receipts. Men shall furnish itemized list of expenses to EMPLOYER. Pay for travel time not to exceed eight (8) hours of twenty-four (24) hour day.

**26.7.2   Automobile Expenses:**
When men report to the shop and are required to move to a job or from job to job using private automobiles, the EMPLOYEE shall be compensated at the prevailing government rate, (PGR), per mile but not less than $ 1.50 per move.  Glaziers required to report to work at a job site outside of territory as described in this addendum, Article I, Section 4 shall receive a flat ten dollars ($10.00), plus the PGR per mile (one-way) to the job site measured from the closest edge of the territory to the job site.

97

An EMPLOYEE who incurs any parking expenses or tolls in order to get to a job site, shall be reimbursed as conditioned as follows. All tolls are reimbursable also for EZ Pass usage with EZ Pass statement submitted also within fourteen (14) days. The EMPLOYER shall reimburse the EMPLOYEE up to twelve dollars ($12.00) for parking expenses and also with prior approval from the EMPLOYER ($12.00) for public transportation, in lieu of parking reimbursement. EMPLOYEE must present validated parking vouchers and or receipts within fourteen (14) days in order to be reimbursed. Validated shall mean a stamped and dated receipt. An EMPLOYER may designate a specific parking lot at the job site or a specific parking area at the shop. Parking violation tickets on private vehicles shall not be reimbursed.

**26.8**             **Work Rules**

**26.8.1**   **Material Deliveries:**
All material delivered to building sites may be unloaded by driver when it is a one man delivery and no Glaziers are at the job site. The material can be left at the closest, secure location, other than at the installation site. Delivery of such material shall not exceed fifteen (15) minutes.

**26.8.2**   **Tools:**
EMPLOYEES employed by the EMPLOYER shall furnish for their own use all necessary hand tools to enable them to effectively install such work. The EMPLOYER shall furnish the following tools:

| | |
|---|---|
| Cups | Drills |
| Hacking knives | |
| Bits | 4' level |
| Glass & Plastic cutters | |
| Countersinks | Rollers |
| Protective glass gloves | |
| Power tools | Caulking guns |
| Hacksaw blades | |

Where the EMPLOYER provides a secure place for the storage of tools, EMPLOYEES who are issued tools shall be responsible for those tools. The EMPLOYEE'S responsibility for said tools shall cease when he places them in any area designated by the EMPLOYER or foreman as secure.

98

If the EMPLOYEE was negligent in the loss of said tools, the EMPLOYER may deduct the value of said tool from the EMPLOYEE'S pay.

**26.8.3    Job Site Safety Violation**

Any employee, who is cited twice for the same safety violations; shall result in that employee's mandatory attendance, of no less than four hours of safety training, pertaining to his/ her violation. The employee has thirty days to attend training. After thirty days, if the employee has not attended training, the employer has the right to dismiss that employee for failure to comply with this Article. Additionally, that employee shall not be eligible to work for another AGMA employer until he/she satisfies the requirement. This is above and beyond the yearly requirement already in the Collective Bargaining Agreement.

**26.8.4    Reporting of Jobs:**

Upon request, all AGMA members will be required to submit a list of all jobs currently in progress as well as all jobs awarded on a monthly basis to a secure and confidential web-based system created for EMPLOYERS to report jobs.

**26.8.5    Productivity:**

In recognition of increased competition from non-union sub-contractors, it is understood that employees must begin and end the working day according to this contract. Lunch periods must not be extended. Those who violate this understanding or those who fail to report without sufficient notice can be subject to discharge. It is the aim of the employer and all the employees to be as productive as possible in order to help preserve future job security.

**26.8.6    Wash up Time:**

Members working on all construction site jobs shall be allowed wash up time. They shall have five (5) minutes at scheduled lunch and five (5) minutes at scheduled quitting time. Any member violating this Article will be docked. The above wash up time provisions shall not apply to replacement shop jobs.

**26.8.7    Warranty Work:**

When an EMPLOYER is aware of warranty work to be performed by a non-signatory party, the EMPLOYER will inform COUNCIL prior to work being performed.

99

**26.8.8    Caulking Rate:**

Work involved to be for continuous caulking (i.e. no setting of frames or glass). No other scope of work involved. Not including any internal caulking or sealing of systems. Internal caulking is excluded.

| | |
|---|---|
| Wages: | $41.30 |
| H&W: | $ 8.00 |
| Annuity: | $ 4.00 |
| Pension: | $ 4.00 |
| PAC | $ 0.10 |
| LMCF: | $ 0.10 |
| IAF: | $ 0.30 |
| **Total:** | **$57.80** |

May 1, 2019 increase: $1.00
May 1, 2020 increase: $1.00

**26.9**          **Job Targeting / Market Recovery**

**DEFINITION:**

A Targeted Job is any project within the Territory of Local Union 252 defined above where the COUNCIL l feels that a competitive disadvantage exists which hinders a member shop, in good standing, from successfully competing on a project. Each EMPLOYER intending to seek targeting shall submit an electronic job targeting form through the pinpointing website, during the bid process.   Only written applications will be considered as formal requests for relief.  The COUNCIL shall have the right to deny the targeting within three business days. Special circumstances will be considered.  No request shall be unreasonably denied.

Job Targeting / Market Recovery may include the following:
- Market Recovery rates.
- Pinpointing.
- Liberal use of apprentices.
- Flexible work rules.
- Glassworkers
- Allentown/Reading (A/R) rates, applied for in the same manner as Pinpointing.

100

Where in the opinion of the Local Union it becomes necessary to grant flexible conditions on particular jobs, sometimes known as pinpointing, and specialty agreements or addendum to this contract are executed to ensure that work will be maintained for EMPLOYEES covered by the Collective Bargaining Agreement, no EMPLOYER shall assert any claims including any claims under Article 20 - Grievances and Arbitration under the MASTER AGREEMENT. This clause shall not be used to advantage non-union employers, non-signatory employers, non-member employers who execute the Association Agreement for purpose of performing a particular job.

**26.9.1    Shop Steward:**

An EMPLOYER shall employ one man assigned by the COUNCIL and designated by the Business Manager to be the Shop Steward for the said signatory EMPLOYER. The Shop Steward may not be an owner, related by blood or marriage to an owner or an apprentice. If an EMPLOYER has work available for only one man, the Steward shall perform said work. The Shop Steward shall be responsible for insuring that the EMPLOYER complies with its obligations as set forth in this Agreement. Any complaints concerning alleged violations of this Article may be referred to a Joint Committee consisting of the Business Manager of the COUNCIL and the Chairman of AGMA. They shall be empowered to hear such complaints and make all appropriate rulings both with regard to the merits of the complaint and with regard to appropriate penalties which they believe are necessary to address a confirmed violation and to insure enforcement of this Article. The Decisions of this Joint Committee pursuant to this Article shall be final and binding.

**26.9.2    Job Steward:**

The Business Manager will appoint a Job Steward on all larger jobs that he deems necessary. This Job Steward will see that all Articles of this Agreement are lived up to. For out of town contractors, the Job Steward will receive the fringe benefits on payday from the EMPLOYER and be responsible for delivering them to the Fringe Benefits Administrator's Office, and on payday, the Job Steward for the out of town contactors will work six (6) hours and be paid for eight (8), enabling him to deliver the fringe benefits check to the Administrator.

101

**26.9.3     Service Shop Agreement:**
Service work shall be defined as the replacement, repair adjustment of existing frames, glass or other infill, doors and/or hardware.

**26.9.3.1  Service Work Criteria:**
- Glass Replacement – Not to exceed four (4) men five (5) days with Union approval.
- No swing work
- All door repairs (Glass hardware, caulking, framing)
- All door and framing replacement – with Glazier being the only trade on the job. **No** renovations or new construction.
- Caulking on existing frames.
- Window hardware.
- Window replacement, mirror installation and shower doors. Yes, to one (I) entity **only** occupied; Residential
- Revolver door service.
- Casinos and prevailing rate work are exempt.
- Parking and tolls to mirror that of the current CBA.
- Overtime to mirror that of the current CBA.
- Service workers can be used outside the jurisdiction of GLU 252 with notification.
- Automatic door service to be allowed in casinos.
- Skylight or slope glass replacement remains targeted, with approval above 24 feet.
- When an EMPLOYER employs service worker[s] and the demand requires additional labor, a glassworker can be used on service work if no additional service workers are available.
- If an EMPLOYER does not employ a service worker[s], service work targeting language applies.
- Total package:
  Start rate for mechanics

  |            |                   |
  |------------|-------------------|
  | Wages      | $40.00 per hour   |
  | Pension    | $ 4.59 per hour   |
  | H & W      | $ 8.40 per hour   |
  | Annuity    | $ 5.14 per hour   |

  o   Vacation:
  6 months of continuous service = five (5) days paid vacation
  After one (1) year = ten (10) days paid vacation
  After ten (10) years = fifteen (15) days paid vacation

- o Personal Paid Holidays – After one (1) year of service employees will be eligible to accrue up to four (4) paid personal days.
- o Holidays – The following holidays shall be granted to service worker employees who have sixty (60) calendar days of work:  New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day.
- o Service work employees shall be guaranteed forty (40) hours work.
- o Future Rate increases for Service Technicians is seventy percent (70%) of Journeyman Glazier minus (-) the pinpointing.
- o Service work can do shop work at his/her current service rate.
- o Company phone allowance of thirty dollars ($30) per month.
- o Double time after eight (8) hours on Saturday.
- o Service workers can be used on Market Recovery jobs with Union approval.
- o Apprentice – If an employer wishes to bring a new apprentice into service work he must call the union first for a list of potential candidates.  Said candidates would then begin a two (2) year apprenticeship: Apprentice Wages:

### 2018

#### Start rate for mechanics

| | |
|---|---|
| Wages | $40.00 per hour |
| H & W | $ 8.40 per hour |
| Pension | $ 4.59 per hour |
| Annuity | $ 5.14 per hour |

#### Start

| | |
|---|---|
| Wages | $24.85 |
| H & W | $ 8.40 |
| Pension | $ 3.54 |
| Annuity | $ 4.24 |

**2 Months**

| | |
|---|---|
| Wages | $25.85 |
| H & W | $ 8.40 |
| Pension | $ 3.79 |
| Annuity | $ 4.39 |

**6 Months**

| | |
|---|---|
| Wages | $27.85 |
| H & W | $ 8.40 |
| Pension | $ 4.04 |
| Annuity | $ 4.64 |

**One Year**

| | |
|---|---|
| Wages | $28.85 |
| H & W | $ 8.40 |
| Pension | $ 4.29 |
| Annuity | $ 4.89 |

**18 Months**

| | |
|---|---|
| Wages | $29.85 |
| H & W | $ 8.40 |
| Pension | $ 4.29 |
| Annuity | $ 4.89 |

**Two Year**

| | |
|---|---|
| Wages | $31.00 |
| H & W | $ 8.40 |
| Pension | $ 4.59 |
| Annuity | $ 5.14 |

- 75 lb. lift limit
- Start time 6:00 a.m. to 9:00 a.m. for eight (8) continuous hours. All other to be subject to C.B.A. shift provision – 15%.
- Overtime after eight (8) hours – time and one-half (1 ½).
- Double time for Sundays and Holidays.
- Acknowledging the new criteria needed for the Glass Service Industry special circumstances will be considered for Union approval.

**26.9.4**   **Operational Provisions**

**INSTALLATION SCHEDULE:**

104

The following schedule shall govern the minimum number of men to be used in the installation of glass for maximum safety:

Door lights and glass up to and including 116 united inches and 1/4" plate................1 man

Patio doors and glass in patio door openings up to and including 141 united inches to 5/8" ...............2 men

**26.10**   **See Size Schedule – See Exhibit** A:
These united inches refer to the size of the opening. The above schedule is for the minimum number of men listed, subject, however, to weather conditions, unusual sets, heavier glass and safety. When mechanical equipment is used, the same size schedule shall apply.

Where mechanical equipment is used as the exclusive method of unloading, moving and installing glass, the existing manpower schedule may be reduced by thirty five percent (35%). The foreman on the particular job shall determine fractional relief. The Union will consider special circumstances after communication and discussion with the Agent.

Bullet resistant glass under sixty (60) united inches, plastics, and insulated units for refrigerator cases are not included in the schedule. On installed units, the total glass thickness shall determine the schedule to use.

For all glass larger and thicker than what is scheduled a combination of two columns applicable to the size and thickness of the glass will be used.

A determination of manpower requirements will be made prior to glass installations by a company representative and the shop steward. If these two parties cannot agree, the company representative and the business agent will decide.

Manpower relief will be permitted under the following conditions:

1.   **Normal sets-** The Glazier would not be required to lift more than 75 pounds.
2.   **Unusual sets-** The Glazier would not be required to lift more than 40 pounds. Other        considerations, i.e., weather, locations, lift heights must be considered.

3.    **Manpower-** Manpower determinations must be mutually agreed upon by a company representative and a union representative (Shop Steward or Glazier Foreman).

**26.11          Misc.**

**26.11.1   Time Sheet.**
Except for the purpose of gathering factual data for estimating purposes, Daily Time Sheets specifying the number of items performed per day for the purpose of task work.

**26.11.2   One EMPLOYEE:**
Each EMPLOYER covered by this Agreement shall employ at least one (1) journeyman Glazier who is not a member of the firm on all specified work in the Agreement.

**26.11.3   One Owner:**
The EMPLOYER agrees that not more than one (1) owner, partner, officer, stockholder, or agent involved either directly or indirectly in the ownership or management of the EMPLOYER'S shop or business shall work with the tools of the Trade or on any productive equipment or on work specified in this Agreement. Such working owner must carry a COUNCIL Card and pay the appropriate initiation fee and prevailing dues, as well as all applicable fringe benefits for all workdays in the month. Any owner working at the Trade in accordance with the provisions of this Section must pay full dues, C.O.P.E. Apprentice Fund, Pinpointing Fund and Industry Advancement Fund contributions for all hours worked in any month at a minimum of One Hundred Seventy (170) hours per a month. Owner members will operate in accordance with the provisions of the International Union of Painters and Allied Trades International Union Constitution and the Trust Agreements of the Various Funds of the Council, such as the Vacation, Health and Welfare, Pension and Annuity Funds, and where appropriate, make contributions to those Funds for all hours worked.

**26.11.4   Truck Identification:**
Any individual EMPLOYERS party to this Agreement shall be required to affix to all company trucks a company logo and/or the company name, to be visible at a distance of fifty (50) feet. COUNCIL bumper stickers, COUNCIL logos, AGMA stickers or

106

at the option of the EMPLOYER, magnetic signs, can be used at the company's discretion.

**26.11.5  Payroll Inspection:**
If a complaint is made concerning the amount of wages received or paid to an EMPLOYEE for work performed under this contract, the Business Representative with the president of the COUNCIL or the Shop Steward or an International Representative shall have the right to inspect the EMPLOYER'S payroll relative to the EMPLOYEE or EMPLOYEES involved.

**26.11.6  Mandatory Drug Testing:**
The COUNCIL, in cooperation with AGMA, shall administer a Mandatory Drug Testing Program covering all Bargaining Unit Members employed by AGMA Employers and any other employer signatory to this Agreement. The Drug and Alcohol Policy enacted by the Labor Management Committee pursuant to this provision shall be incorporated in and made part of this Agreement. Compliance with said policy shall be considered a mandatory condition of employment for those covered as defined above. The District Council 21 Health and Welfare Fund shall provide for funding of the Drug Testing Program..

**26.11.7  Handbilling & Picketing:**
Contractor may request Council hand billing or lawful demonstration at jobs on which the EMPLOYER has not been paid upon proper verification. No glazier shall become involved in any picketing or handbilling for any reason, on a job which an AGMA member is contracted to perform work.

**26.11.8  Architectural Glass Institute ("AGI") Fund.**

(a)   It is hereby agreed by and between District Council No. 21 on behalf of the Glaziers and all Employers performing work under this Agreement that there shall be created an Architectural Glass Institute Fund ("AGIF") which shall meet the requirements set forth in section 302(c)(9) of the Labor Management Relations Act, 29 U.S.C. § 1 86(c)(9). One half of the trustees of the AGIF shall be appointed by AGMA and 1one-half of the trustees shall be appointed by District Council No. 21 in accordance with their respective governing documents.

(b)   Each Employer party to and performing work under this Article 26 of the Agreement shall pay to the AG1IF an amount

107

per hour, as mutually agreed by AGMA and District Council No. 21, for each hour worked by persons employed under the terms of this Agreement. Contributions to the A.G.I. Fund shall be $.20 per hour.

(c)   Each Employer party to and performing work under this Article 26 of the Agreement agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust establishing the AGIF, and all amendments thereto, governing establishment and operation of the AGIF and further agrees to irrevocably designate as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as EMPLOYER Trustees, together with their successors. Each Employer further agrees to be bound by all actions taken by the Trustees pursuant to the Agreement and Declaration of Trust.

(d)   For the purpose of this Article, each hour worked for, including hours attributable to show up time, and other hours for which pay is received by the EMPLOYEE in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(e)   Contributions shall be paid on behalf of any EMPLOYEE starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

(f)   The parties to this Agreement agree to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the AGIF.

(g)   All contributions shall be made at such time and in such manner, as the Trustees require, and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

(h)   If an Employer fails to make contributions to the AGIF within twenty (20) days after the date required by the Trustees, in addition to the rights and remedies which the AGIF may have, District Council No. 21 shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments

108

due together with attorney fees and such liquidated damages as may be assessed by the Trustees. The employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

**26.11.9**  It is agreed that the parties have established a Glaziers STAR Program (Safety Training Awards Recognition) through District Council 21 FTI funded by the Employer at an additional $.05 per hour contribution to the District Council FTI.

**26.11.10**  Subcontracting of installations between AGMA members shall be conformed to COUNCIL in writing, at a minimum of 24 hours in advance.

**26.11.11**  Employer may request any unemployed member who has worked for said employer within the last 12 months.

**26.11.12**  Company can refuse any member who does not provide current OSHA 30 certification.

**26.11.13**  When a work day lasts 11 hours or more, there will be a 15 minute paid break after the tenth (10th) hour.

**26.11.14**  The language of any Project Labor Agreement (PLA) as agreed to by the COUNCIL supersedes the language of the Collective Bargaining Agreement (CBA).

**26.11.15**  Upon written petition and showing of need by an EMPLOYER who has a Collective Bargaining Agreement with District Council #21 for at least two (2) years, a twenty (20) day extension for payment may be granted by the Business Manager/Secretary Treasurer.

**26.11.16  Out of Town Contractors**
Employer must secure bond level to match number of anticipated EMPLOYEES throughout the entire project or projects during the year.  Bonding level is calculated at $5,100 per employee per month.  If EMPLOYER requests additional EMPLOYEES that exceed their bonding level, EMPLOYER must either increase their bonding level or provide cash to be placed in escrow in the amount $5,100 per EMPLOYEE per month.  Monthly remittance reports will be due within  7 days following the month benefits were incurred. (January Benefits due February 7th).

109

**Exhibit A**

<u>Size Schedule</u>

U.I. up to and including:

| <u>Size</u> | <u>1/4"</u> | <u>3/8"</u> | <u>1/2"</u> | <u>3/4"</u> |
|---|---|---|---|---|
| 1-75 | 1 | 1 | 1 | 2 |
| 76-104 | 1 | 2 | 2 | 3 |
| 105-116 | 1 | 2 | 2 | 4 |
| 117-135 | 2 | 2 | 3 | 4 |
| 136-158 | 2 | 3 | 4 | 5 |
| 159-166 | 2 | 4 | 4 | 6 |
| 167-186 | 3 | 5 | 5 | 7 |
| 187-226 | 4 | 6 | 6 | 8 |
| 227-246 | 5 | 7 | 7 | 10 |
| 247-256 | 6 | 8 | 8 | 11 |
| 257-266 | 7 | 8 | 9 | 12 |
| 267-276 | 8 | 9 | 10 | 14 |
| 277-286 | 9 | 10 | 11 | 16 |
| 287-296 | 10 | 11 | 12 | 17 |
| 297-306 | 11 | 12 | 13 | 18 |
| 307-316 | 12 | 13 | 14 | 20 |

## Article 27

## <u>Duration</u>

**27.1**   **Term:**
This Agreement will continue for a term of five (5) years from May 1, 2017 thru April 30, 2022, between District Council 21 and the A.M.P.D, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

**27.2**   **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2018 thru April 30, 2021, between District Council 21 and the I.F.C.A., all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

**27.3**   **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2018 thru April 30, 2021, between District Council 21 and the A.G.M.A, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

**27.4**   **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2018 thru April 30, 2021, between District Council 21 and the P.D.C.A.-HARRISBURG, PA, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

**27.5**   **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2018 thru April 30, 2022, between District Council 21 and the P.D.C.A. of Northeast PA, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

**27.5**   **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2018 thru April 30, 2021, between District Council 21 and the Keystone Contractors Association, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

**27.7**      **Duration & Evergreen Clause:**
All the above mentioned Agreements shall continue thereafter from year to year unless terminated by either side giving to the other written notice between sixty and ninety days prior to the expiration of the then current term of their desire to modify or terminate.

In Witness Whereof, the parties hereto, intending to be legally bound, have hereunto set their hands and seals the day and year for the periods set forth in Article 27.

**Date**_____

I/We, the undersigned, an EMPLOYER in the Painting, Paperhanging, Drywall, and Glazing Industries, have read the foregoing Agreement, am familiar with its provisions, accept and agree to be bound by all its terms and conditions. I also agree, with the signing of this Agreement, to provide to District Council No. 21 a complete list of all my journeypersons and apprentices whom I employ.

## THE ASSOCIATED MASTER PAINTERSAND DECORATORS INC.

**May 1, 2017 to April 30, 2022**

By_/s/_____     By _/s/_____

## INTERIOR FINISH CONTRACTORS ASSOCIATION OF DELAWARE VALLEY

**May 1, 2018 to April 30, 2021**

By_/s/_____     By _/s/_____

## ARCHTECTURAL GLASS AND METAL ASSOCIATION   OF PHILADELPHIA AND VICINITY

**May 1, 2018 to April 30, 2021**

By_/s/_____     By _/s/_____

**District Council # 21**
**International Union of Painters and Allied Trades**

By_/s/_____
        **Joseph T. Ashdale**
**Business Manager/Secretary Treasurer**

113

In Witness Whereof, the parties hereto, intending to be legally bound, have hereunto set their hands and seals the day and year for the periods set forth in Article 27.

**Date**_____

I/We, the undersigned, an EMPLOYER in the Painting, Paperhanging, Drywall, and Glazing Industries, have read the foregoing Agreement, am familiar with its provisions, accept and agree to be bound by all its terms and conditions. I also agree, with the signing of this Agreement, to provide to District Council No. 21 a complete list of all my journeypersons and apprentices whom I employ.

**P.D.C.A.-HARRISBURG, PA**

**May 1, 2018 to April 30, 2021**

**By** /s/_____     **By** /s/_____

**P.D.C.A.-NORTHEAST, PA**

**May 1, 2018 to April 30, 2022**

**By** /s/_____     **By** /s/_____

**KEYSTONE CONTRACTORS ASSOCIATION**

**May 1, 2018 to April 30, 2021**

**By** /s/_____     **By** /s/_____

**District Council # 21**
**International Union of Painters and Allied Trades**

**By** /s/_____
               **Joseph T. Ashdale**
**Business Manager/Secretary Treasurer**

114

## Signature Page

In Witness whereof, the parties hereto, intending to be legally bound, have hereunto set their hands and seals the day and year and for and period extended by Article 27.5

From: _____ To: _____

I/We, the undersigned, an EMPLOYER in the Painting, Paperhanging, Drywall, and Glazing Industries, have read the foregoing Agreement, am familiar with its provisions, accept and agree to be bound by all its terms and conditions. I also agree, with the signing of this Agreement, to provide to District Council No. 21 a complete list of all my journeypersons and apprentices whom I employ.

### Independent Employer or Association

**District Council # 21**

**International Union of Painters and Allied Trades**

BY_/s/_____

**Joseph T. Ashdale**
**Business Manager/Secretary Treasurer**

_____
**Company**

BY_/s/_____
**Employer Representative or Independent Employer Association**

115

IUPAT DISTRICT COUNCIL No. 21
HEALTH AND WELFARE FUND

DELINQUENCY POLICY

Pursuant to Articles IV and VII of the Agreement and Declaration of Trust establishing the IUPAT District Council No. 21 Welfare Fund ("Fund"), the Trustees do hereby amend the Procedure for the Collection of Contributions Owed to the I.U.P.A.T. District Council No. 21 Welfare Fund by deleting that policy in its entirety and establishing the following policy, rules and regulations with respect to the collection of contributions from contributing employers to the Fund:

1.     It is the policy of the Trustees of the Fund to collect delinquent contributions in a reasonable, diligent and systematic manner. For the purposes of this agreement, a "delinquency" shall mean any unpaid fringe benefit obligation due by an employer to the Fund.

2.     (a)     All contributions and reports, except where a collective bargaining agreement requires otherwise or as provided in paragraph 2(c) of this policy, are due no later than the thirtieth (30th) day of each month (except February, in which case they are due on the last day of the month) following the month in which the contributing employer's relevant employees performed any work.

        (b)     If the due date is a Saturday, Sunday or a legal holiday, the contributions must be received by the next business day.

        (c)     Where, pursuant to the collective bargaining agreement, an employer is required to remit on a weekly basis, then reports and contributions are due no later than the Friday following the week in which work was performed.

Page 1 of 8



(d)   As set forth in paragraph 1, a contribution, required by a collective bargaining agreement, to the Fund will be considered delinquent if it is not received by the due date unless the Business Manager/Secretary Treasurer of the IUPAT District Council No. 21 ("hereinafter "Business Manager") grants a (20) twenty day extension of the due date pursuant to the terms, if any, provided in said collective bargaining agreement.

3.   Liquidated damages shall be assessed as follows:

(a) *Employers required to remit on a monthly basis*: If a contribution report is submitted by the applicable due date (in accordance with paragraph 2 of this policy), but the contribution owed is not received by the due date, liquidated damages of $500.00 shall be automatically added to the amount owed by the employer for that month's contribution.  If neither a contribution report nor the contributions owed are received by the due date, liquidated damages of $750.00 shall be automatically added to the amount owed by the employer for that month's contribution.

(b)   *Employers required to remit on a weekly basis*: If a contribution report is submitted by the applicable due date (in accordance with paragraph 2 of this policy), but the contribution owed is not received by the due date, liquidated damages of $115.38 shall be automatically added to the amount owed by the employer for that week's contribution.  If neither a contribution report nor the contributions owed are received by the applicable due date, liquidated damages of $173.08 shall be automatically added to the amount owed by the employer for that week's contribution.

4.   In addition to the foregoing liquidated damages, if a contribution is not received by the due date, interest shall start to accrue on the delinquent amounts from the due date at the

rate then charged by the Internal Revenue Service for delinquent taxes under section 6621(a) of the Internal Revenue Code plus one (1) percentage point in excess of such rate.

5.     If the contribution is delinquent, the Trustees, through the Administrative Office of the Fund, will send a notice, as soon as is administratively feasible, to the last known address of said delinquent employer advising said employer that its contributions to the Fund are delinquent, that it owes liquidated damages, as set forth in Paragraph 3 above, on the principal balance outstanding at the time of the notice together with any interest that has accrued on the delinquent payment to date.  The notice also shall advise said employer that the Fund will notify the bonding company and make a claim on any bond that has been posted in accordance with the employer's collective bargaining agreement.  A copy of this notice shall be forwarded to the union and Fund counsel.  Any defect, delay or failure in said notice will not relieve or mitigate the delinquent employer's obligations to the Fund.

6.     The Trustees hereby delegate the initial efforts to collect delinquent contributions to the Union Trustee co-Chair and the Employer Trustee co-Chair (the "co-Chairs") jointly.  The co-Chairs are delegated the authority to waive liquidated damages and to enter into a payment plan for delinquent contributions.  Any payment plan requiring more than three (3) months to pay the amount owed to the Fund will require, in addition to the bond required by the applicable collective bargaining agreement, that the delinquent employer provide a guarantee of the payment of monies owed to the Fund plus the payment of three (3) months contributions averaged over the past twelve (12) months. This guarantee will be accomplished through a combination of bonding, personal guarantees of the principals of the employer, and/or other security acceptable to the Fund.  If the delinquent employer does not have a bond, in the amount

required by the relevant collective bargaining agreement, posted with the Fund, regardless of the length of time in the payment plan, said guarantee will cover the amount owed to the Fund plus six (6) months of contributions averaged over the past twelve (12) months.

7.     Should the delinquent contributions, interest, and liquidated damages not be received within 15 (fifteen) days after the sending of notice referenced in Paragraph 5 above, the delinquency shall be referred to Fund counsel to initiate litigation at any time.  Unless such is waived by the Co-Chairs, the first step in such action will be for counsel to make a written demand to the last known address of said employer for payment and to provide notice of impending legal action. Any defect, delay or failure in said demand will not relieve or mitigate the delinquent employer's obligations to the Fund. In the event a complaint is filed, the delinquent employer shall pay, in addition to the delinquent amount due and interest thereon, liquidated damages, any audit fees and expenses, reasonable attorney fees, court costs and other expenses incurred.   If a bond has been posted, the fund will notify the bonding company and make a claim on the bond.  In the event that the delinquency is referred to counsel for litigation, liquidated damages in the amount of twenty percent (20%) of the principal amount due shall be added in addition to the liquidated damages set forth in paragraph 3 above.

8.     In the case of a delinquency arising as a result of an audit, the delinquent amount will accrue interest from the due date of the contribution.  The interest rate shall be the rate charged at the time of the audit by the Internal Revenue Service for delinquent taxes in accordance with Sec 6621(a) of the Internal Revenue Code applicable to the period of delinquency plus one percentage point in excess of such rate.

9.    Upon completion of an audit, the Trustees through the Administrative Office of the Fund will notify the delinquent employer in writing of the delinquent amount and the interest charges.  If such delinquent contributions and interest are not paid within fifteen (15) days after the date of the written notice, the matter shall be referred to counsel for collections.  If a lawsuit is initiated to collect the delinquent contributions, in addition to any amount owed the Fund, the Fund may impose liquidated damages of twenty percent (20%) of the delinquent amount owed as well as court costs and attorneys' fees.  In addition, where an audit discloses a delinquency of five percent (5%) or more of the amount otherwise due for the audited period, the employer will be responsible for the costs of the audit which amount shall be in addition to any other sums due under this policy.

10.    The Board of Trustees shall have the exclusive authority (with exceptions set forth in paragraph 6 and listed below) to compromise, settle or abandon a claim or delinquency if the cost and expenses which would be involved in the filing of a complaint and in proceeding with litigation would exceed the amount for the delinquency due, or if there are other good and sufficient reasons, such as the remote likelihood of collection established on a case by case basis, for compromising a claim.  Between regularly scheduled meetings of the Trustees, the co-Chairs of the Board of Trustees shall have, in consultation with the Administrative Office of the Fund and delinquency counsel for the Fund, the authority to approve and implement the recommendation of delinquency counsel to compromise settle or abandon a claim.

11.    The Trustees will request that each of the other Trust Funds which require employer contributions pursuant to a collective bargaining agreement with District Council 21 (hereinafter, "Other Trust Fund(s)") delegate delinquency collections to the Trustees of this

Health & Welfare Fund and, if such is delegated to said Trustees, said Trustees will act as fiduciaries to such Other Trust Fund(s) in delinquency matters. If such is delegated, this policy will apply to said Other Trust Fund(s) and the Trustees of the Health & Welfare Fund will meet to handle delinquency matters at the end of the Health and Welfare Fund Meeting, will prepare separate Minutes covering delinquency matters, and will provide a copy of said Minutes to the Other Trust Fund(s) which have delegated delinquency collections to the Trustees of this Health & Welfare Fund. The Trustees of the Health & Welfare Fund will have the right to decline and/or to terminate said delegation of authority. The Trustees of the Other Trust Funds will have the right, at any time, to withdraw and/or revoke, in whole or in part, said delegation of authority.

12. (a) A "Shortfall" exists when an employer is delinquent in the making of its payments, when an employer remits less than the full amount due as required under its collective bargaining agreement with the Union, or when litigation or other collection procedures result in the receipt of less than all monies due.

(b) Shortfalls shall first be first allocated to any fund or Union which receives post-tax contributions (including, but not limited to, Vacation Fund contributions, union dues, political action contributions) on a *pro rata* basis. Thereafter, all remaining monies shall be allocated *pro-rata* to each of the employee benefit plans for which contributions are required under the terms of an employer's collective bargaining agreement based on the contribution amounts set forth in the labor agreement and shall be applied each month to the contributions designated by the employer for that month. Subsequent receipts for said month will be credited in the same manner.

MANAGEMENT TRUSTEES

UNION TRUSTEES

Michael Thurman

Dated: 11-17-14



**Novak|Francella**
LLC | CERTIFIED PUBLIC ACCOUNTANTS

January 29, 2020

Ms. Terry Scipione
Blue Collar Builders LLC
310 Big Oak Road
Langhorne, PA 19047

Re: **Painters District Council No. 21 of Philadelphia Employee Benefit Funds**

Dear Ms. Scipione:

Enclosed, please find copies of our payroll compliance review report detailing, by month, the discrepancies we noted during our recent review of your payroll.  Please note the report DOES NOT reflect the contributions that may be due to the International Union Pension Fund including the International Annuity Fund, LMCI, PAT and FTI.

We ask that you review this detail and advise us of any adjustments or challenges to our findings. If we have not heard from you within ten business days from the date of this letter, we will submit our report to the Fund Administrator.

If there are any questions concerning the payroll compliance review, please feel free to contact our Philadelphia office.

We wish to take this opportunity to thank you for your cooperation during the review process.

Sincerely,

MARTA COOPER

Enclosures



NEW YORK | 450 Seventh Avenue, 28th Floor | New York, NY 10123 | 212.279.4262
PHILADELPHIA | One Presidential Blvd, Ste 330 | Bala Cynwyd, PA 19004 | 610.668.9400
WASHINGTON, DC | 7226 Lee DeForest Dr, Ste 201 | Columbia, MD 21046 | 443.832.4009
CONNECTICUT | 255 Route 80, P.O. Box 698 | Killingworth, Connecticut 06419 | 860.663.1190
BOSTON | Independence Wharf, 470 Atlantic Avenue, 4th Floor | Boston, MA 02210 | 617.500.6578



## Novak|Francella
**LLC | CERTIFIED PUBLIC ACCOUNTANTS**

**District Council 21 Employee Benefit Funds**

### PAYROLL COMPLIANCE REVIEW

### REPORT

EMPLOYER:        Blue Collar Builders, LLC

ADDRESS:        2310 Big Oak Road, Langhorne, PA 19047

DATE PAYROLL REVIEW COMPLETED:        January 28, 2020

REVIEW PERIOD:        November 1, 2017 through December 31, 2019

EMPLOYER REPRESENTATIVE, IF ANY, PRESENT AT THE TIME OF
THE PAYROLL REVIEW:        Ms. Terry Scipione

LOCATION OF EXAMINATION:   Novak Francella, LLC

DOES THE EMPLOYER PAY CONTRIBUTIONS ON:

Non Bargaining Unit Employees:        No        If yes, is there a Participation agreement?

Owner/Operator:        No        If yes, is there an Owner/Operator agreement?

RESULTS OF PAYROLL COMPLIANCE REVIEW:

  A - Contributions not submitted on all hours/wages.
  B - Contributions due on all employees performing covered work.
  C - Dues were not remitted on hours paid.

**Updated:  January 28, 2020**



NEW YORK | 450 Seventh Avenue, 28th Floor | New York, NY 10123 | 212.279.4262
PHILADELPHIA | One Presidential Blvd, Ste 330 | Bala Cynwyd, PA 19004 | 610.668.9400
WASHINGTON, DC | 7226 Lee DeForest Dr, Ste 201 | Columbia, MD 21046 | 443.832.4009
CONNECTICUT | 255 Route 80, P.O. Box 698 | Killingworth, Connecticut 06419 | 860.663.1190
BOSTON | Independence Wharf, 470 Atlantic Avenue, 4th Floor | Boston, MA 02210 | 617.500.6578 



**Novak | Francella**
LLC | CERTIFIED PUBLIC ACCOUNTANTS

District Council 21 Employee Benefit Funds

## PAYROLL COMPLIANCE REVIEW

### SUMMARY

EMPLOYER:   Blue Collar Builders, LLC

REVIEW PERIOD:   November 1, 2017 through December 31, 2019

|  | 2017 | 2018 | 2019 | TOTAL |
|---|---|---|---|---|
| Health & Welfare | $ - | $ - | $ 26,892.41 | $ 26,892.41 |
| Annuity Fund | - | - | 11,702.60 | 11,702.60 |
| Apprentice DC21 | - | - | 2,569.88 | 2,569.88 |
| Industry Advancement | - | - | 429.20 | 429.20 |
| Vacation Fund | - | - | 4,292.00 | 4,292.00 |
| Scholarship Fund | - | - | 214.60 | 214.60 |
| Benevolent Fund | - | - | 104.65 | 104.65 |
| HRA Fund | - | - | 643.80 | 643.80 |
| DC21 Labor Management | - | - | 170.35 | 170.35 |
| Drywall Finisher Target Fund | - | - | 3,025.87 | 3,025.87 |
| Organizing Fund | - | - | 150.23 | 150.23 |
| PAC Fund | - | - | 543.16 | 543.16 |
| Dues / hour | 11.40 | - | 2,177.02 | 2,188.42 |
| Dues % of Wages | - | - | 2,959.37 | 2,959.37 |
| **TOTAL CONTRIB. DUE:** | $ 11.40 | $ - | $ 55,875.14 | $ 55,886.54 |
| Interest | 1.73 | - | 1,974.77 | 1,976.50 |
| *Liquidated Damages** | 2.28 | - | 11,175.03 | 11,177.31 |
| Cost of Audit | | | | 1,219.62 |
| **TOTAL AMOUNT DUE:** | | | | $ 70,259.97 |

*Please note Liquidated Damages may be due if payment of Principle, Interest and Cost of Audit (if applicable)
is not received within 15 days after notification from Fund Office.

Updated:  January 28, 2020

**NEW YORK** | 450 Seventh Avenue, 28th Floor | New York, NY 10123 | 212.279.4262
**PHILADELPHIA** | One Presidential Blvd, Ste 330 | Bala Cynwyd, PA 19004 | 610.668.9400
**WASHINGTON, DC** | 7226 Lee DeForest Dr, Ste 201 | Columbia, MD 21046 | 443.832.4009
**CONNECTICUT** | 255 Route 80, P.O. Box 698 | Killingworth, Connecticut 06419 | 860.663.1190
**BOSTON** | Independence Wharf, 470 Atlantic Avenue, 4th Floor | Boston, MA 02210 | 617.500.6578

**District Council 21 Employee Benefit Funds**

EMPLOYER  Blue Collar Builders, LLC  
ADDRESS   2310 Big Oak Road, Langhorne, PA 19047  
CONTACT   Ms. Terry Scipione  
PH NUMBER 267-222-8859  

REVIEW PERIOD: November 1, 2017 through December 31, 2019  
AUDITOR: Emma Wylie

**Reason For Deficiency (RFD):**  
A - Contributions not submitted on all hours wages.  
B - Contributions due on all employees performing covered work.

**2019**

## Contributions Due for Journeymen Tapers

| Name | SS Number | RFD | | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bestelman, Thomas | [redacted] | B | HOURS | | | | | | 24.00 | | | | | | | 24.00 |
| | | | WAGES | | | | | | 947.28 | | | | | | | 947.28 |
| Barton, Jacob | [redacted] | A | HOURS | | | | | | | | | | 159.50 | 112.00 | 101.00 | 372.50 |
| | | | WAGES | | | | | | | | | | 6,395.47 | 4,478.56 | 3,986.47 | 14,860.50 |
| Evans, Johnathan | [redacted] | A | HOURS | | | | | | | | | | 71.00 | | | 71.00 |
| | | | WAGES | | | | | | | | | | 2,802.37 | | | 2,802.37 |
| Kerr, John | [redacted] | A | HOURS | | | | | | | | | | 74.00 | | | 74.00 |
| | | | WAGES | | | | | | | | | | 2,920.78 | | | 2,920.78 |
| Lanning, Kurt | [redacted] | A | HOURS | | | | | | | | | | 8.00 | 88.00 | | 96.00 |
| | | | WAGES | | | | | | | | | | 315.76 | 3,631.28 | | 3,947.04 |
| Lentz, Kenneth | [redacted] | A | HOURS | | | | | | | | | | 40.00 | 88.00 | | 128.00 |
| | | | WAGES | | | | | | | | | | 1,578.80 | 3,631.28 | | 5,210.08 |
| Mann, George | [redacted] | A | HOURS | | | | 16.00 | | | | | | | | | 16.00 |
| | | | WAGES | | | | 628.32 | | | | | | | | | 628.32 |
| Melvin, George | [redacted] | A | HOURS | | | | 37.00 | | | | | | | | | 37.00 |
| | | | WAGES | | | | 1,472.63 | | | | | | | | | 1,472.63 |
| Praine, Richard | [redacted] | A | HOURS | | | | 80.00 | | | | | | | | | 80.00 |
| | | | WAGES | | | | 3,141.54 | | | | | | | | | 3,141.54 |
| Smith, Sam | [redacted] | A | HOURS | | | | | | | | 92.00 | 146.00 | 197.00 | 90.00 | | 525.00 |
| | | | WAGES | | | | | | | | 3,529.24 | 5,762.62 | 7,858.47 | 3,552.40 | | 20,702.73 |
| Troy, Daniel | [redacted] | B | HOURS | | | | | 64.00 | 192.00 | 24.00 | 24.00 | | | | | 304.00 |
| | | | WAGES | | | | | 2,526.08 | 7,548.24 | 645.28 | 1,250.96 | | | | | 11,970.56 |
| Wheeler, John | [redacted] | A | HOURS | | | | | | | | | | | | | |
| | | | WAGES | | | | | | | | | | | | | |
| **TOTAL HOURS** | | | | - | - | - | 133.00 | 64.00 | 216.00 | 24.00 | 116.00 | 146.00 | 549.50 | 378.00 | 101.00 | 1,727.50 |
| **TOTAL WAGES** | | | | - | - | - | 5,242.49 | 2,526.08 | 8,495.52 | 645.28 | 4,780.20 | 5,762.62 | 21,771.65 | 15,393.52 | 3,986.47 | 68,603.83 |

## Amount Due

| FUND | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| HEALTH & WELFARE | 1,629.25 | 803.20 | 2,710.80 | 301.20 | 1,455.80 | 1,832.30 | 6,896.23 | 4,743.90 | 1,267.55 | 21,640.23 |
| ANNUITY FUND | 617.12 | 360.96 | 1,218.24 | 135.36 | 654.24 | 823.44 | 3,099.18 | 2,131.92 | 569.64 | 9,610.10 |
| APPRENTICE DC21 | 154.28 | 76.80 | 259.20 | 28.80 | 139.20 | 175.20 | 659.40 | 453.60 | 121.20 | 2,067.68 |
| INDUSTRY FUND | 26.60 | 12.80 | 43.20 | 4.80 | 23.20 | 29.20 | 109.90 | 75.60 | 20.20 | 345.50 |
| VACATION FUND | 266.00 | 128.00 | 432.00 | 48.00 | 232.00 | 292.00 | 1,099.00 | 756.00 | 202.00 | 3,455.00 |
| SCHOLARSHIP FUND | 13.30 | 6.40 | 21.60 | 2.40 | 11.60 | 14.60 | 54.95 | 37.80 | 10.10 | 172.75 |
| BENEVOLENT FUND | 3.99 | 3.20 | 10.80 | 1.20 | 5.80 | 7.30 | 27.48 | 18.90 | 5.05 | 83.72 |
| HRA FUND | 39.90 | 19.20 | 64.80 | 7.20 | 34.80 | 43.80 | 164.85 | 113.40 | 30.30 | 518.25 |
| DC21 LABOR MGMT | 10.64 | 5.12 | 17.28 | 1.92 | 9.28 | 11.68 | 43.96 | 30.24 | 8.08 | 136.87 |
| DW FINISHER TARG | 187.53 | 90.24 | 304.56 | 33.84 | 163.56 | 205.86 | 774.80 | 532.98 | 142.41 | 2,435.78 |
| ORGANIZING | 9.31 | 4.48 | 15.12 | 1.68 | 8.12 | 10.22 | 38.47 | 26.46 | 7.07 | 120.93 |
| PAC FUND | 39.90 | 16.00 | 54.00 | 6.00 | 29.00 | 36.50 | 137.38 | 94.50 | 25.25 | 438.35 |
| ADMIN DUES | 127.68 | 64.64 | 218.16 | 24.24 | 117.16 | 147.46 | 555.00 | 381.78 | 102.01 | 1,738.13 |
| DUES CHECK OFF | 187.15 | 88.41 | 298.39 | 22.58 | 166.26 | 201.69 | 762.01 | 538.77 | 139.53 | 2,401.13 |
| **TOTAL AMOUNT DUE** | 3,307.66 | 1,679.45 | 5,668.15 | 619.22 | 3,050.02 | 3,831.25 | 14,422.61 | 9,935.85 | 2,650.39 | 45,164.60 |

| FUNDS | 5/1/18 | 5/1/19 | RATES |
|---|---|---|---|
| HEALTH & WELFARE | $12.25 | $12.55 | $ per hour |
| ANNUITY FUND | $4.64 | $5.64 | $ per hour |
| APPRENTICE DC21 | $1.16 | $1.20 | $ per hour |
| INDUSTRY FUND | $0.20 | $0.20 | $ per hour |
| VACATION FUND | $2.00 | $2.00 | $ per hour |
| SCHOLARSHIP FUND | $0.10 | $0.10 | $ per hour |
| BENEVOLENT FUND | $0.03 | $0.05 | $ per hour |
| HRA FUND | $0.30 | $0.30 | $ per hour |
| DC21 LABOR MGMT | $0.08 | $0.08 | $ per hour |
| DW FINISHER TARG | $1.41 | $1.41 | $ per hour |
| ORGANIZING | $0.07 | $0.07 | $ per hour |
| PAC FUND | $0.30 | $0.25 | $ per hour |
| ADMIN DUES | $0.96 | $1.01 | $ per hour |
| DUES CHECK OFF | 3.57% | 3.50% | % of wages |

Updated: January 28, 2020

District Council 21 Employee Benefit Funds

EMPLOYER: Blue Collar Builders, LLC
ADDRESS: 2310 Big Oak Road, Langhorne, PA 19047
CONTACT: Ms. Terry Scipione
PH NUMBER: 267-222-8859

REVIEW PERIOD: November 1, 2017 through December 31, 2019
AUDITOR: Emma Wylie

Reason For Deficiency (RFD):
A - Contributions not submitted on all hours/wages.
B - Contributions due on all employees performing covered work.

2019

## Contributions Due for Journeyman Tapers-County 1953

| Name | SS Number | RFD | HOURS/WAGES | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Boseman, Thomas | | B | HOURS | | | | | | 77.00 | | | | | | | 77.00 |
| | | | WAGES | | | | | | $2,906.75 | | | | | | | $2,906.75 |
| Barton, Jacob | | A | HOURS | | | | | | | | | | 4.50 | 8.00 | 43.00 | 55.50 |
| | | | WAGES | | | | | | | | | | $169.88 | $302.00 | $1,774.29 | $2,246.17 |
| Danahri, Anthony | | A | HOURS | | | | | | | | | | | | 48.00 | 48.00 |
| | | | WAGES | | | | | | | | | | | | $1,812.00 | $1,812.00 |
| Lanning, Kurt | | A | HOURS | | | | | | | | | | 8.00 | | | 8.00 |
| | | | WAGES | | | | | | | | | | $302.00 | | | $302.00 |
| Schmidt, Brau | | A | HOURS | | | | | | | | | | | | 120.00 | 120.00 |
| | | | WAGES | | | | | | | | | | | | $4,530.00 | $4,530.00 |
| Smith, Sam | | A | HOURS | | | | | | | | | | | 14.00 | | 14.00 |
| | | | WAGES | | | | | | | | | | | $528.50 | | $528.50 |
| Wherley, John | | A | HOURS | | | | | 96.00 | | | | | | | | 96.00 |
| | | | WAGES | | | | | $3,624.00 | | | | | | | | $3,624.00 |
| | | | TOTAL HOURS | | | | | 96.00 | 77.00 | | | | 12.50 | 22.00 | 211.00 | 418.50 |
| | | | TOTAL WAGES | | | | | $3,624.00 | $2,906.75 | | | | $471.88 | $830.50 | $8,116.29 | $15,949.42 |

### Amount Due

| FUNDS | RATES | 5/1/18 | 5/1/19 | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HEALTH & WELFARE | $ per hour | $12.25 | $12.55 | | | | | $1,204.80 | $966.35 | | | | $156.88 | $276.10 | $2,648.05 | $5,252.18 |
| ANNUITY FUND | $ per hour | $4.64 | $5.00 | | | | | $480.00 | $385.00 | | | | $62.50 | $110.00 | $1,055.00 | $2,092.50 |
| APPRENTICE DC21 | $ per hour | $1.16 | $1.20 | | | | | $115.20 | $92.40 | | | | $15.00 | $26.40 | $253.20 | $502.20 |
| INDUSTRY FUND | $ per hour | $0.20 | $0.20 | | | | | $19.20 | $15.40 | | | | $2.50 | $4.40 | $42.20 | $83.70 |
| VACATION FUND | $ per hour | $2.00 | $2.00 | | | | | $192.00 | $154.00 | | | | $25.00 | $44.00 | $422.00 | $837.00 |
| SCHOLARSHIP FUND | $ per hour | $0.10 | $0.10 | | | | | $9.60 | $7.70 | | | | $1.25 | $2.20 | $21.10 | $41.85 |
| BENEVOLENT FUND | $ per hour | $0.05 | $0.05 | | | | | $4.80 | $3.85 | | | | $0.63 | $1.10 | $10.55 | $20.93 |
| HRA FUND | $ per hour | $0.30 | $0.30 | | | | | $28.80 | $23.10 | | | | $3.75 | $6.60 | $63.30 | $125.55 |
| DC21 LABOR MGMT | $ per hour | $0.07 | $0.08 | | | | | $7.68 | $6.16 | | | | $1.00 | $1.76 | $16.88 | $33.48 |
| DW FINISHER TARG | $ per hour | $1.41 | $1.41 | | | | | $135.36 | $108.57 | | | | $17.63 | $31.02 | $297.51 | $589.09 |
| ORGANIZING | $ per hour | $0.07 | $0.07 | | | | | $6.72 | $5.39 | | | | $0.88 | $1.54 | $14.77 | $29.30 |
| PAC FUND | $ per hour | $0.30 | $0.25 | | | | | $24.00 | $19.25 | | | | $3.13 | $5.50 | $52.75 | $104.63 |
| ADMIN DUES / HOUR | $ per hour | $0.96 | $0.98 | | | | | $94.08 | $75.46 | | | | $12.25 | $21.56 | $206.78 | $410.13 |
| DUES CHECK OFF | % of wages | 3.50% | 3.50% | | | | | $126.84 | $101.74 | | | | $16.52 | $29.07 | $284.07 | $558.24 |
| TOTAL AMOUNT DUE | | | | | | | | $2,459.08 | $1,964.37 | | | | $318.92 | $561.25 | $5,388.16 | $10,681.78 |

Updated: January 28, 2020

District Council 21 Employee Benefit Funds

EMPLOYER: Blue Collar Builders, LLC
ADDRESS: 2310 Big Oak Road, Langhorne, PA 19047
CONTACT: Ms. Tony Scipione
PH NUMBER: 267-222-8859

REVIEW PERIOD: November 1, 2017 through December 31, 2019
AUDITOR: Emma Wylie

Reason For Deficiency (RFD):
C - Dues were not remitted on hours paid

## Contributions Due for Journeymen Tapers

2017

| Name | SS Number | RFD | | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Anderson, Joseph | | C | HOURS | | | | | | | | | | | 4.00 | | 4.00 |
| | | | WAGES | | | | | | | | | | | $ - | | $ - |
| Jenson, Dean | | C | HOURS | | | | | | | | | | | 8.00 | | 8.00 |
| | | | WAGES | | | | | | | | | | | $ - | | $ - |
| | | | TOTAL HOURS | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 12.00 | $ - | 12.00 |
| | | | TOTAL WAGES | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

Amount Due

| FUNDS | RATES | 5/1/16 | 5/1/17 | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ADMIN DUES / HOUR | $ per hour | $0.93 | $0.95 | | | | | | | | | | | | | |
| TOTAL AMOUNT DUE | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 11.40 | $ - | 11.40 |
| | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | 11.40 | $ - | 11.40 |

Updated: January 28, 2020

District Council 21 Employee Benefit Funds

EMPLOYER: Blue Collar Builders, LLC
ADDRESS: 2310 Big Oak Road, Langhorne, PA 19047
CONTACT: Ms. Terry Scipione
PH NUMBER: 267-222-8859

REVIEW PERIOD: November 1, 2017 through December 31, 2019
AUDITOR: Emma Wylie

Reason For Deficiency (RFD):
C - Dues were not remitted on hours paid

## Contributions Due for Journeymen Tapers

2019

| Name | SS Number | RFD | | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|------|-----------|-----|---|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-------|
| Burton, Jacob | | C | HOURS | | | | | | | | | | | 4.00 | 4.00 | 8.00 |
| | | | WAGES | | | | | | | | | | | | | $ - |
| Lanning, Kurt | | C | HOURS | | | | | | | | | | | 4.00 | | 4.00 |
| | | | WAGES | | | | | | | | | | | | | $ - |
| Lentz, Kenneth | | C | HOURS | | | | | | | | | | | 4.00 | | 4.00 |
| | | | WAGES | | | | | | | | | | | | | $ - |
| Melvin, George | | C | HOURS | | | | 0.50 | | | | | | | | | 0.50 |
| | | | WAGES | | | | | | | | | | | | | $ - |
| Wherley, John | | C | HOURS | | | | | | | | 12.00 | | | | | 12.00 |
| | | | WAGES | | | | | | | | | | | | | $ - |
| TOTAL HOURS | | | | $ - | $ - | $ - | 0.50 | $ - | $ - | $ - | 12.00 | $ - | $ - | 12.00 | 4.00 | 28.50 |
| TOTAL WAGES | | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

Amount Due

| | | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTAL |
|---|---|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-------|
| | | $ - | $ - | $ - | $ 0.48 | $ - | $ - | $ - | $ 12.12 | $ - | $ - | $ 12.12 | $ 4.04 | $ 28.76 |
| TOTAL AMOUNT DUE | | $ - | $ - | $ - | $ 0.48 | $ - | $ - | $ - | $ 12.12 | $ - | $ - | $ 12.12 | $ 4.04 | $ 28.76 |

| FUNDS | RATES | 5/1/18 | 5/1/19 |
|-------|-------|--------|--------|
| ADMIN DUES / HOUR | $ per hour | $0.96 | $1.01 |

Updated: January 28, 2020

LAW OFFICES

# SPEAR WILDERMAN

*A Professional Corporation*
SUITE 1400, 230 SOUTH BROAD STREET, PHILADELPHIA, PA 19102
TEL (215) 732-0101   FAX (215) 732-7790

WARREN J BORISH†
SAMUEL L SPEAR
JAMES F RUNCKEL
CHARLES T JOYCE*
BENJAMIN EISNER◊
WENDY CHIERICI*
JAMES KATZ*
MARTIN W MILZ*
LOIS GARBER SCHWARTZ*
NICHOLAS J BOTTA*
SYRETTA J MARTIN*
MELISSA A LOVETT
F TIGHE BURNS*
THEODORE P DiMUZIO
CHRISTOPHER R STOCKTON†
SARAH LEAH TARLOW††
CHRISTOPHER G CASSIE*

PA BAR EXCEPT:
† NJ BAR
* PA & NJ BAR
◊ PA, NJ & DC BAR
†† PA & NY BAR

NJ OFFICE
1040 N. KINGS HIGHWAY
SUITE 202
CHERRY HILL, NJ 08034
(856) 482-8799 FAX (856) 482-0343

BRUCE E. ENDY
RETIRED, 2017

IRA SILVERSTEIN
OF COUNSEL

LEONARD SPEAR
1923 – 2003

LOUIS H WILDERMAN
1909 – 1993

September 18, 2019

*Via First-Class Mail & Email <terry@bluecollarbuildersllc.net>*

Blue Collar Builders, LLC
Attn: Terry Scipione
2310 Big Oak Road
Langhorne, PA 19047

> **RE:** **IUPAT District Council No. 21 of Philadelphia Employee Benefit Funds ("Funds") - Delinquent Contributions, Request for Escrow and Audit Compliance – First Notice**

Dear Sir:

Please be advised that this office is co-counsel for the above-referenced Funds.

We have been advised that payment has yet to be made to the Funds by Blue Collar Builders, LLC (the "Company") for the accrued interest and liquidated damages owed by the Company which result from the Company's failure to timely submit remittance reports and/or full contributions for the monthly periods of November 2018 through June 2019, as well as the weekly periods of July 3, 2019 through September 4, 2019, in the amount of **$4,941.73** ($48.75 in interest and $4,892.98 in liquidated damages). While the Funds acknowledge the receipt of payment of known principal amounts owed, this amount must be collected. Also, please submit reports for the monthly period of June 2019 and the weekly periods of July 3, 2019 through September 4, 2019.

Additionally, on or about August 26, 2019, an independent auditor, Novak Francella, LLC (hereinafter, "Novak"), notified you of its request to audit the Company's payroll records on behalf of the Funds for the period of November 1, 2017 to present. Novak has since made numerous attempts to schedule an audit with the Company, to no avail. Please be advised that compliance



EXHIBIT
D

Blue Collar Builders, LLC
September 18, 2019
Page 2

with the Funds' audit requests is an obligation that employers agree to upon entering into a collective bargaining agreement with IUPAT DC21. A copy of Novak correspondence, dated August 26, 2019, is provided with this letter as a reminder of the information the Company is required to provide the auditor to commence with auditing.

Further, as Article 12 of the CBA states, a signatory employer is required to post a security bond or a letter of credit with the Funds for employees for whom it pays benefit contributions. If the signatory employee is unable to provide a bond or letter of credit in the bond amount so designated by the Funds, it must provide to the Funds an escrow amount equal to the sum of $1,450.00 per employee/per week for application to owed contributions in the instance that the signatory employer becomes delinquent. Therefore, please provide escrow to the Funds in the amount of **$4,500.00**.

The Company's failure to remit the reports and/or contributions when due, comply with the audit request and provide escrow constitutes violations of both the collective bargaining agreement and/or federal law. The Employee Retirement Income Security Act of 1974 (ERISA) provides for civil remedies and damages in such a situation.

The Trustees of the Funds have a fiduciary obligation to pursue the Company's audit compliance, appropriate bonding/escrow, and recovery of the delinquent amount owed. Accordingly, please be advised that legal action may be taken unless this matter is resolved within **ten (10) business days** from the date of this letter. *Should the Company fail to cure its delinquencies, comply with the audit **and** provide escrow to the Funds, a complaint may be filed against the Company. The Company shall then be responsible to the Funds for attorney's fees and costs associated with the filing.* We urge the Company to take immediate action by providing escrow for the sum of **$4,500.00**, complying in full with the audit, and correcting arrearages by also making payment to the Funds in the amount of **$4,941.73**.

If you have any questions, please contact me at (215) 732-0101. Thank you.

Sincerely,

Syretta J. Martin, Esquire

Enclosure
cc:    Brian Smith, Delinquency Controller (via e-mail)



## Novak|Francella
LLC | CERTIFIED PUBLIC ACCOUNTANTS

August 26, 2019

Controller
Blue Collar Builders, LLC
2310 Big Oak Road
Langhorne, PA 19047

RE: **District Council No. 21 of Philadelphia Employee Benefit Funds and I.U.P.A.T. Industry Pension Funds**

Dear Sir or Madam:

Novak Francella LLC are the auditors for the Painters District Council No. 21 of Philadelphia Employee Benefit Funds. As part of our normal review of contributions from participating employers, we compare the contribution reports submitted by your company to your payroll and other related records.

**A member of our Firm will be at your office on <u>Thursday, October 3, 2019 at 9:00am</u> to conduct the review.**

## **Please contact me at (610) 668-9400 ext. 109 or mcooper@novakfrancella.com to confirm this appointment.**

Please review the list of documents and records we will require to be available.

1. Quarterly Unemployment Compensation Tax Returns.
2. Federal 941 Quarterly Payroll Tax Returns.
3. Annual W-2s and W-3.
4. Annual 1099s and the 1096.
5. Employees' individual earnings records detailing hours paid; if not available in that form, some record detailing hours paid per employee should be made available.
6. Copies of monthly contribution reports to all fringe benefit funds to which you contribute.
7. Cash disbursement journals and/or Check Register/Check Book.
8. Copies of the collective bargaining agreements.

Our review will be for the period **November 1, 2017 to present date.** We will, therefore, require the above information for that time period.

Sincerely,

*Marta Cooper*

MARTA M. COOPER

NEW YORK | 150 Seventh Avenue, 28th Floor · New York, NY 10123 · 212 259 4262
PHILADELPHIA | One Presidential Blvd, Ste 330 · Bala Cynwyd, PA 19004 | 610 668 9400
WASHINGTON, DC | 7226 Lee DeForest Dr, Ste 201 | Columbia, MD 21046 | 443 832 4000
CONNECTICUT | 255 Route 80 PO Box 698 · Killingworth, Connecticut 06419 | 860 663 1190
BOSTON | Independence Wharf, 470 Atlantic Avenue, 4th Floor | Boston MA 02210 · 617 500 6525

LAW OFFICES

# SPEAR WILDERMAN

*A Professional Corporation*
SUITE 1400, 230 SOUTH BROAD STREET, PHILADELPHIA, PA 19102
TEL (215) 732-0101   FAX (215) 732-7790

WARREN J. BORISH*
SAMUEL L. SPEAR
JAMES F. RUNCKEL
CHARLES T. JOYCE*
BENJAMIN EISNER◊
WENDY CHERICI†
JAMES KATZ*
MARTIN W. MILZ*
LOIS GARBER SCHWARTZ*
NICHOLAS J. BOTTA*
SYRETTA J. MARTIN*
MELISSA A. LOVETT
F TIGHE BURNS*
THEODORE P. DiMUZIO
CHRISTOPHER R. STOCKTON†
SARAH LEAH TARLOW††
CHRISTOPHER G. CASSIE*

PA BAR EXCEPT:
†  NJ BAR
*  PA & NJ BAR
◊  PA, NJ & DC BAR
†† PA & NY BAR

NJ OFFICE
1040 N. KINGS HIGHWAY
SUITE 202
CHERRY HILL, NJ 08034
(856) 482-8799 FAX (856) 482-0343

BRUCE E. ENDY
RETIRED, 2017

IRA SILVERSTEIN
OF COUNSEL

LEONARD SPEAR
1923 – 2003

LOUIS H. WILDERMAN
1909 - 1993

November 12, 2019

*Via First-Class Mail & Email <terry@bluecollarbuildersllc.net>*

Blue Collar Builders, LLC
Attn: Terry Scipione
2310 Big Oak Road
Langhorne, PA 19047

RE:   **IUPAT District Council No. 21 of Philadelphia Employee Benefit Funds ("Funds") - Delinquent Contributions – First Notice**

Dear Sir:

Please be advised that this office is co-counsel for the above-referenced Funds.

We have been advised that Blue Collar Builders, LLC (hereinafter, the "Company") has failed to timely submit remittance reports and/or full contributions for work performed during the monthly periods of November 2018 through June 2019 and the weekly periods of July 2, 2019 through November 3, 2019. As a result, the Company owes an amount of **$6,387.91** to the Funds for untimely reporting and remittances, which includes interest in the amount of $283.37 and liquidated damages in the amount of $6,104.54. Also, the Company must promptly remit its overdue reports for the weekly contribution periods of August 11, 2019 through November 3, 2019 to the Funds Office.

Additionally, the Company failed to timely submit contributions owed for the 312 hours of covered work performed by Mr. John Wiberley during the weekly periods of May 27, 2019 through July 2, 2019. As a result, the estimated delinquent amount owed by the Company to the Funds for Mr. Wiberley's benefit contributions is **$11,646.96.**

Blue Collar Builders, LLC
November 12, 2019
Page 2

Together, the Company owes the Funds the total of <u>$18,034.87.</u>

The Company's failure to remit reports and/or contributions when due constitute violations of the collective bargaining agreement and/or federal law. The Employee Retirement Income Security Act of 1974 (ERISA) provides for civil remedies and damages in such a situation.

The Trustees of the Funds have a fiduciary obligation to pursue full recovery of the delinquent amount owed. Accordingly, please be advised that legal action may be taken unless this matter is resolved within **ten (10) business days** from the date of this letter. *Should the Company fail to cure its delinquencies, a complaint may be filed against the Company. The Company shall then be responsible to the Funds for estimated liquidated damages in the amount of $2,329.39 and attorneys' fees and costs associated with the filing.* We urge the Company to take immediate action by remitting reports and by correcting arrearages by making payment to the Funds in the amount of <u>$18,034.87.</u>

If you have any questions, please contact me at (215) 732-0101. Thank you.

Sincerely,

Syretta J. Martin, Esquire

cc:    Brian Smith, Delinquency Controller (via e-mail)